# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

AMERICAN ECONOMY INSURANCE COMPANY
a/s/o THE FLORAL STUDIO AND THE WHOLE
NINE YARDS                                                    PLAINTIFF

VS.                                    CIVIL ACTION NO.:  09-CV-0125 NSG

ACE UTILITY BORING AND TRENCHING, LLC;
CENTERPOINT ENERGY RESOURCES CORP.,
d/b/a CENTERPOINT ENERGY MISSISSIPPI GAS;
and DEVINEY CONSTRUCTION COMPANY, INC.,
d/b/a DEVINEY UTILITY SERVICES and UNKNOWN
DEFENDANTS 1 - 10                                             DEFENDANTS

## PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT FOR DAMAGES
### *Jury Trial Requested*

COMES NOW, the Plaintiff, American Economy Insurance Company a/s/o The Floral

Studio and The Whole Nine Yards, by and through counsel, and files this Corrected Second

Amended Complaint for Damages against Ace Utility Boring and Trenching, LLC; Deviney

Construction Company, Inc., d/b/a Deviney Utility Services, and Unknown Defendants 1 - 10

and in support of which would show unto the Court the following, to-wit:

## THE PARTIES

1.

The Plaintiff, American Economy Insurance Company a/s/o The Floral Studio and The

Whole Nine Yards ( American ) is a corporation organized under the laws of the State of Indiana

and having its principal place of business located at Safeco Plaza, Suite 2700, Seattle,

Washington 98185.  American is an insurance company licensed to transact business in

Mississippi and engaged in the business of insuring, among other things, real property, including

property located in Neshoba County, Mississippi.



2.

The Defendant, Ace Utility Boring and Trenching, LLC, ( Ace ), is a foreign corporation organized under the laws of the State of Tennessee and doing business in the State of Mississippi with its principal place of business being located at 929 Airways Boulevard , Jackson, Tennessee 38301, where the corporation may be served with process in accordance with the Mississippi Rules of Civil Procedure.

3.

At all times relevant to this Complaint, Defendant Ace Utility was in the business of providing boring and trenching services to the public, including in Neshoba, Mississippi.

4.

The Defendant, Centerpoint Energy Resources Corp. d/b/a Centerpoint Energy Mississippi Gas ( Centerpoint ), is a foreign corporation organized under the laws of the State of Delaware and doing business in the State of Mississippi with its principal place of business being located at 1111 Louisiana Street, Houston, Texas 77002, and whose registered agent for service of process is CT Corporation System located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, where the corporation may be served with process in accordance with the Mississippi Rules of Civil Procedure.

5.

At all times relevant to this Complaint, Defendant Centerpoint was in the business of providing natural gas services to the public, including in Neshoba County, Mississippi.

6.

The Defendant, Deviney Construction Company, Inc. d/b/a Deviney Utility Services

( Deviney ), is a corporation organized under the laws of the State of Mississippi with its principal place of business being located on Springridge Road in Jackson, Mississippi 39212, and whose registered agent for service of process is CT Corporation System located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, where the corporation may be served with process in accordance with the Mississippi Rules of Civil Procedure.

7.

At all times relevant to this Complaint, Defendant Deviney was in the business of providing utility contracting services to the public, including in Neshoba County, Mississippi.

8.

The Unknown Defendants 1 - 10 are potentially liable parties and/or individuals who have yet to be identified but are necessary for the complete adjudication of the issues in the litigation. As and when the parties and/or individuals are identified more specifically, Plaintiff will move to substitute parties.

## JURISDICTION AND VENUE

9.

This Court has jurisdiction over the parties and subject matter of this action and venue is proper in Neshoba County, Mississippi, as the incident giving rise to this litigation occurred in Neshoba County, Mississippi, and the cause of action accrued in Neshoba County, Mississippi.

## FACTS

10.

During the time frame described herein, AT&T employed Deviney Construction, Inc., to

perform certain construction work relating to the groundwork preparation for, and placement of, underground cables in Philadelphia, Neshoba County, Mississippi.

11.

Deviney Construction, Inc., retained Ace Utility to perform the groundwork preparation, specifically to bore of holes for the said underground cable, and Danny Blythe, an employee of Ace Utility, was assigned to bore holes on Holland Avenue in Philadelphia, Mississippi.

12.

On or about September 15, 2007, Danny Blythe, at the time an employee of Ace Utility and acting within the course and scope if his employment with Ace Utility, cut a main gas line located on Holland Avenue.

13.

As a direct result of said main gas line being severed by Ace Utility's employee, and the continued flow of gas to the area after the line was cut, a gas explosion occurred damaging the Building and the personal property contained therein belonging to The Floral Studio and The Whole Nine Yards.

14.

Pursuant to the terms of an insurance policy covering the damages described hereinabove, Plaintiff paid its insured $68,391.01 to cover the cost of repairs and other damages resulting from the explosion.

15.

By reason of the aforementioned payment, pursuant to the terms and conditions of the

insurance policy, and by operation of law, Plaintiff is subrogated to The Floral Studio's rights of recovery to the extent of the payment made.

## COUNT I - NEGLIGENCE OF ACE UTILITY BORING AND TRENCHING, LLC

16.

Plaintiff incorporates by reference the allegations set forth in Paragraph 1 - 13 of this Corrected Second Amended Complaint as though same were more fully set forth at length herein.

17.

Defendant Ace Utility owed the general public, including the insured, a duty to exercise reasonable care in performing construction work, namely in boring holes under Holland Avenue.

18.

Defendant Ace Utility breached its duty by committing one or more of the following negligent acts of commission and/or omission:

a. Failing to exercise reasonable care in boring holes;

b. Failing to properly and with due care avoid cutting any utility lines;

c. Failing to properly inspect the premises above and below the ground prior to beginning work;

d. Failing to identify and warn the insured of any potential risk or problems relating to its construction work;

e. Failing to comply with industry standards;

f. Failing to anticipate that the reasonable consequences of actions would result in damage to the insured's real and personal property; and

g. Otherwise failing to exercise due care as may be disclosed in the course of discovery.

At all times relevant to this incident, Danny Blythe was the agent and employee of Ace Utility acting within the course and scope of his employment and authority such that any and all acts of negligence of Danny Blythe are imputed to Ace Utility.

19.

The loss and damages to the property of the insured was proximately caused or contributed to by the carelessness, recklessness, negligence, gross negligence and/or negligent acts and/or omissions of the Defendants Ace Utility.

20.

As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of the Defendant Ace Utility, Plaintiff has suffered damages in excess of the $68,391.01 paid to its insured.

**COUNT II - NEGLIGENCE OF DEVINEY CONSTRUCTION COMPANY, LLC**

21.

Plaintiff incorporates by reference the allegations set forth in Paragraph 1 - 18 of this Corrected Second Amended Complaint as though same were more fully set forth at length herein.

22.

Defendant Deviney owed the general public, including the insured, a duty to exercise reasonable care in performing utility contracting work, namely in retaining and supervising its subcontractors and its construction sites.

23.

Defendant Deviney breached its duty by committing one or more of the following negligent acts of commission and/or omission:

a. Failing to exercise reasonable care in retaining contractors, subcontractors, workmen, employees, agents and/or representatives;

b. Failing to properly supervise its contractors, subcontractors, workmen, employees, agents and/or representatives;

c. Failing to properly supervise the construction site;

d. Failing to comply with industry standards;

e. Failing to anticipate that the reasonable consequences of actions would result in damage to the insured's real and personal property; and

f. Otherwise failing to exercise due care as may be disclosed in the course of discovery.

24.

The loss and damages to the property of the insured was proximately caused or contributed to by the carelessness, recklessness, negligence, gross negligence and/or negligent acts and/or omissions of the Defendant Deviney.

25.

As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of the Defendant Deviney, Plaintiff has suffered damages in excess of the $68,391.01 paid to its insured.

## COUNT III - NEGLIGENCE OF UNKNOWN DEFENDANTS 1 - 10

### 26.

Plaintiff incorporates by reference the allegations set forth in Paragraph 1 - 23 of this Corrected Second Amended Complaint as though same were more fully set forth at length herein.

### 27.

Unknown Defendants 1 - 10 owed the general public, including the insured, a duty to exercise reasonable care in performing any and all work and precaution related to the activity at the site of the explosion.

### 28.

Unknown Defendants 1 - 10 breached their duty by committing one or more of the following negligent acts of commission and/or omission:

a. Failing to exercise reasonable care in retaining contractors, subcontractors, workmen, employees, agents and/or representatives;

b. Failing to properly supervise its contractors, subcontractors, workmen, employees, agents and/or representatives;

c. Failing to properly supervise the construction site;

d. Failing to comply with industry standards;

e. Failing to anticipate that the reasonable consequences of actions would result in damage to the insured's real and personal property; and

f. Otherwise failing to exercise due care as may be disclosed in the course of discovery.

29.

The loss and damages to the property of the insured was proximately caused or contributed to by the carelessness, recklessness, negligence, gross negligence and/or negligent acts and/or omissions of the Unknown Defendants 1 - 10.

30.

As a direct and proximate result of the foregoing negligent acts of commission and/or omission on the part of the Unknown Defendants 1 - 10, Plaintiff has suffered damages in excess of the $68,391.01 paid to its insured.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants and an award of compensatory damages in an amount to be determined by a jury, consistent with the items set out hereinabove and the evidence and proof presented. Plaintiff further requests the Court award pre and post judgment interest, attorney fees, costs and expenses. Plaintiff requests such other relief as deemed appropriate and available under Mississippi law.

RESPECTFULLY SUBMITTED, this the _____ day of _____, 2010.

American Economy Insurance Company
a/s/o The Floral Studio and The Whole Nine
Yards, Plaintiff


By:_____
Brent E. Southern (MBN 7697)

THE LAW OFFICES
of
**BRENT E. SOUTHERN**
POST OFFICE BOX 13587
JACKSON, MISSISSIPPI 39211

855 South Pear Orchard Road
Orleans Square, Suite 502
Ridgeland, Mississippi 39157

telephone (601) 956-9116
facsimile (601) 956-8835
email: brentsouthern@aol.com

October 4, 2010

Hon. Marcus D. Gordon
P. O. Box 220
Decatur, MS 39327

RE:   American Economy Insurance Co. a/s/o The Floral Studio and The Whole Nine
      Yards vs. Ace Utility Boring and Trenching, LLC; Centerpoint Energy Resources
      Corp. d/b/a Centerpoint Energy Mississippi Gas; and Deviney Construction
      Company, Inc., d/b/a Deviney Utility Services; In the Circuit Court of Neshoba
      County, Mississippi; Civil Action No: 09-CV-0125 NSG

Dear Judge Gordon:

        Enclosed please find the original and one copy of a proposed Order allowing the Plaintiff
to file the Second Amended Complaint in the above styled and numbered civil cause. I believe
this will comply with the Court's instruction and ruling at the recent hearing.

        By copy of this letter, I am providing all counsel with a copy of the Order. If everything
is acceptable, please sign and forward the Order to the Circuit Clerk for filing. I ask that
the "Filed" copy be returned to me in the enclosed envelope. Thereafter, I will file the Second
Amended Complaint and deliver same to all counsel in this case.

        Thank you for your consideration.

                                                        Sincerely,

                                                        Brent E. Southern

BES/
enclosure
cc:    Mr. James G. House, III
       Mr. R. David Kaufman
       Mr. William Hugh Gillon, III

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

AMERICAN ECONOMY INSURANCE COMPANY
a/s/o THE FLORAL STUDIO AND THE WHOLE
NINE YARDS ................................................................ PLAINTIFF

VS.              CIVIL ACTION NO.:   09-CV-0125 NSG

ACE UTILITY BORING AND TRENCHING, LLC;
CENTERPOINT ENERGY RESOURCES CORP.,
d/b/a CENTERPOINT ENERGY MISSISSIPPI GAS;
and DEVINEY CONSTRUCTION COMPANY, INC.,
d/b/a DEVINEY UTILITY SERVICES ................................ DEFENDANTS

## ORDER ON PLAINTIFFS MOTION FOR LEAVE TO FILE SECONDED AMENDED COMPLAINT

THIS DAY, THE COURT having been presented with the Plaintiff's Motion for Leave of Court to File Second Amended Complaint, and having heard arguments from Counsel for all parties and being otherwise advised in the premises, finds that the Motion is well taken and should be granted.

IT IS, THEREFORE, ORDERED THAT Plaintiff shall be entitled to file the Second Amended Complaint in the above numbered civil cause and serve process in accordance with the applicable Mississippi Rules of Civil Procedure.

SO ORDERED this the _____ day of _____, 2010.

_____
Circuit Court Judge

Presented by:

_____
Brent E. Southern (7697)
Attorney for Plaintiff

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

SHIRLEY C. BARNES, MAX CHISOLM,
PEGGY C. THOMAS, and CAROL C. GILMORE                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 10CV016NSG

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.
CENTERPOINT ENERGY RESOURCES, CORP., AND
UNKNOWN DEFENDANTS 1-10                                  DEFENDANTS

## COMPLAINT

Plaintiffs, Shirley C. Barnes, Max Chisolm, Peggy C. Thomas, and Carol C. Gilmore,

by and through their attorney, file this their Complaint against Defendants, Deviney

Construction Company, Inc. (hereinafter "Deviney Construction"); Ace Utility Boring and

Trenching, LLC (hereinafter "Ace Utility"); CenterPoint Energy Pipeline Services, Inc.;

CenterPoint Energy Field Services, Inc.; CenterPoint Energy Resources Corp. (hereinafter

collectively "CenterPoint"); and unknown Defendants 1-10, and in support of the same,

shows as follows:

## PARTIES

1.      Max Chisolm, Peggy Thomas, and Carol Gilmore are all adult residents

citizens of Neshoba County, Mississippi.

2.      Shirley Barnes is an adult resident citizen of Alabama.

3.      Defendant, Deviney Construction Company, Inc. is a Mississippi corporation

which may be served with process by serving its registered agent, CT Corporation System, at

645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

4.      Defendant, Ace Utility Boring and Trenching, LLC, is a Tennessee

corporation with a principal place of business at 929 Airways Boulevard, Jackson,

0203

Tennessee 38301. It may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

5.      Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all Delaware corporations with a principal place of business at 1111 Louisiana Street, Houston, Texas. They may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

6.      Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be submitted when ascertained.

## JURISDICTION AND VENUE

7.      Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

8.      On September 15, 2007, the residence located at 905 Holland Ave., Philadelphia, Mississippi was owned by Vesta Chisolm. A few weeks subsequent to September 15, 2007, Mrs. Chisolm died. Her heirs are the Plaintiffs in this action.

9.      The residence located at 905 Holland Ave. was severally damaged by a gas explosion on September 15, 2007.

10.     On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion.

11.     On or about September 15, 2007, Defendant Ace Utility was performing a boring

0204

job to install telephone cable on Holland Avenue in front of a building located just across the street from the residence in question (i.e. at 912 Holland Avenue). An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line.

12. On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable. Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

13. After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint and notified CenterPoint of the gas leak. Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building located at 912 Holland Avenue.

14. Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak. Both representatives were present when the building exploded.

15. At all times relevant, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

16. At all times relevant, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have known that gas is an extraordinarily dangerous substance.

17. At all times relevant, CenterPoint owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

0205

18. At all times relevant, Deviney and Ace Utility owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or or water or sewer lines.

19. At all times relevant, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

20. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion.

21. Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted and contributed in the explosion.

22. Defendant Deviney owed the general public, including the Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to property identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and//or conduits; (3) a non-delegable duty to property verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to property transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility: (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines,

0206

manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified personnel operating the boring equipment and performing the boring operations.

23. Defendant CenterPoint owed the general public, including the Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

### COUNT I
### NEGLIGENCE

24. Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak in question.

25. Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications, experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and guidelines for the boring work.

26. Defendant Ace Utility was negligent and failed to use the property highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject

0207

explosion.

27. Defendant, CenterPoint, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to plaintiffs;

(b) failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building at 912 Holland Avenue within a reasonable time of receiving notice of the gas leak;

(c) failed to have the proper trained personnel and equipment readily available to prevent the explosion within a reasonable time after learning of the gas leak;

(d) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

28. Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

(d) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

0208

(e) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(f) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures.

29. Defendant Deviney, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(d) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(e) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures;

(f) was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring equipment so that the gas and

0209

Page 9    601-371-1424    Mark Blsup    12:50PM 2010 28 9e

water and/or sewer lines would not be ruptured;

(g)     was negligent in failing to monitor Ace Utility;

(h)     was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

30.     All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

31.     As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages.

## COUNT II
## RES IPSA LOQUITUR

32.     The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

33.     The explosion that caused loss and damage to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III
## GROSS NEGLIGENCE

34.     The Plaintiffs re-allege the allegations set forth in Paragraphs 1-33 as if set out here again in their totality.

37.     The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

0210

## DAMAGES
## COMPENSATORY DAMAGES

38.     As a proximate cause of the acts and omissions of the Defendants, the residence located at 905 Holland Ave. sustained substantial damage. The total monetary damage associated with the structural damage to the building is estimated to be approximately $65,000.00.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of $65,000.00. Plaintiffs also demand a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiffs in an amount to be determined by the trier of fact. Further, Plaintiffs request any and all other relief, which the Court deems appropriate together with all costs assessed herein.

Dated, this the 19th day of May, 2010.

Respectfully submitted,

MAX CHISOLM, PEGGY THOMAS, CAROL GILMORE, and SHIRLEY BARNES

By: _____
Jay M. Kilpatrick

Jay M. Kilpatrick (MB # 100136)
YoungWilliams P.A.
P. O. Box 23059
Jackson, MS 39225-3059
(601)948-6100
(601)355-6136

FILED

MAY 2 0 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

0211

IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

HAROLD BENNETT and CARRIE BENNETT                          PLAINTIFFS

VS.                                    CIVIL ACTION NO. 08-CV-0172-M-G

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.,
CENTERPOINT ENERGY RESOURCES, CORP,
AND UNKNOWN DEFENDANTS 1-10                                DEFENDANTS

## COMPLAINT

## PLAINTIFFS REQUEST TRIAL BY JURY

COMES NOW, Plaintiffs, Harold Bennett and Carrie Bennett, by and through their attorney, and file this their Complaint against Defendants, Deviney Construction Company, Inc. (hereinafter "Deviney Construction"), Ace Utility Boring and Trenching, LLC (hereinafter "Ace Utility"), CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp. (hereinafter collectively "CenterPoint") and unknown Defendants 1-10, and would show unto the Court the following, to-wit:

## PARTIES

1.      Harold Bennett and Carrie Bennett are adult resident citizens of Neshoba County, Mississippi who reside at 10040 Road 389, Philadelphia Mississippi 39350.

2.      Defendant, Deviney Construction Company, Inc., is a domestic corporation organized and existing under the laws of the State of Mississippi, which may be served with process by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

FILED

JUN 2 5 2008

TIME_____

PATTI DUNCAN LEE
CIRCUIT CLERK

0212

3. Defendant, Ace Utility Boring and Trenching, LLC, is a domestic corporation organized and existing under the laws of the State of Tennessee. Defendant Ace is authorized to do business within this State, with a principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

4. Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all foreign corporations organized and existing under the laws of the State of Delaware. Defendants are authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas. Defendants may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

5. Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be submitted when ascertained.

## JURISDICITON AND VENUE

6. This Court has jurisdiction as this action involves claims for monetary damages that occurred within Philadelphia, Neshoba County, Mississippi. This Court also has personal jurisdiction as this action is between non-diverse citizens. Further, the Mississippi Long Arm statute provides personal jurisdiction over foreign corporations that commit a tort against another within the State of Mississippi. The explosion causing damages occurred in Neshoba County, Mississippi. Pursuant to Miss. Code Ann. § 11-11-3, venue is proper before this Court as the

2

actions which produced the injuries in this matter occurred in Philadelphia, Neshoba County, Mississippi.

## STATEMENT OF FACTS

7. The Plaintiffs conducted and operated two businesses, one under (Compro Tax), a tax service business, and the other (Charter West Mortgage) a mortgage broker business all located in a building at 912 Holland Avenue, Philadelphia, Mississippi. Said building was destroyed by a gas explosion on September 15, 2007.

8. On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion.

9. On or about September 15, 2007, Defendant Ace Utility was performing a boring job to install telephone cable on Holland Avenue in front of the building described above. An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line.

10. On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable. Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

11. After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted Defendant CenterPoint and notified CenterPoint of the gas leak. Gas continued to leak

3

0214

for more than three (3) hours which later resulted in an explosion of the building where Plaintiffs' businesses were located.

12. Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak. Both representatives were present when the building exploded. A repair crew from CenterPoint did not arrive at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line were hit.

13. At all times complained of herein, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

14. At all times complained of herein, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have know that gas is an extraordinarily dangerous substance.

15. At all times complained of herein, CenterPoint owed to its customers, the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

16. At all times complained of herein, Deviney and Ace Utility owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or water or sewer lines.

17. At all times complained of herein, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

4

18. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion.

19. Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted and contributed in the explosion.

20. In addition to any other duty, Defendant Deviney owed Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to properly identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (3) a non-delegable duty to properly verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to properly transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility; (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines, manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified personnel operating the boring equipment and performing the boring operations.

21. In addition to any other duty, Defendant CenterPoint owed Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

5

## COUNT 1

## NEGLIGENCE

22. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-26 of their Complaint as if fully stated herein.

23. Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak and negligently failed and/or refused to use the proper and highest degree of skill and care in providing, maintaining, and repairing its gas pipelines.

24. Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications, experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and guidelines for the boring work.

25. Defendant Ace Utility was negligent and failed to use the proper and highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject explosion.

26. Defendant CenterPoint, individually, and/or acting with unknown defendants was negligent and:

6

0217

(a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to Plaintiffs;

(b) failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building occupied by Plaintiffs within a reasonable time of receiving notice of the gas leak;

(c) failed to have the proper trained personnel and equipment to prevent the explosion within a reasonable time after learning of the gas leak;

(d) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

27. Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent and:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

(d) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

7

0218

(f)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

28.     Defendant Deviney, individually, and/or acting with unknown defendants was negligent and:

(a)     failed to train employees regarding emergency procedures for gas leaks;

(b)     failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c)     failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

(d)     failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e)     failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(f)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures;

8

0219

(g)     was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring  equipment so that the gas and water and/or sewer lines would not be ruptured;

(h)     was negligent in failing to monitor Ace Utility;

(i)     was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

(i)     was negligent in failing to provide Ace Utility with proper locations for gas lines, manholes, water and/or sewer lines.

29.     All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

30.     As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages.

## COUNT II

### RES IPSA LOQUITUR

31.     Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-30 of their Complaint as if fully stated herein.

32.     The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

33.     The explosion that caused loss and damages to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

9

0220

## COUNT III

## GROSS NEGLIGENCE

34. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-33 of their Complaint as if fully stated herein.

35. Defendant CenterPoint failed to make repairs or shut off the supply of gas to the building occupied by Plaintiffs' businesses within a reasonable time of receiving notice of the gas leak; failed to take proper precautions; failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

36. Defendant Deviney was negligent and negligently failed and or refused to use the proper and highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verifications thereof to Defendant Ace Utility. Defendant Deviney further failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures. Defendant Deviney failed to to check out and make sure that qualified

10

personnel would be operating the boring equipment so that the gas and water and/or sewer lines would not be ruptured.

37. Defendant Ace Utility failed to train employees regarding emergency procedures for gas leaks; failed to have properly trained personnel operating and supervising the boring equipment procedure; failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes; failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes; failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole; failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

38. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

## DAMAGES

## COMPENSATORY DAMAGES

39. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-38 of their Complaint as if fully stated herein.

40. As a proximate cause of the acts and omissions of the Defendants, Plaintiffs Harold Bennett and Carrie Bennett suffered business and personal losses, including property

11

0222

damages, past, present and future lost wages, lost commissions and lost income, increased expenses and other damages to be proven at the trial of this cause. Plaintiffs also suffered past, present, and future mental anguish and emotional distress/ upset.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of $500,000.00. Plaintiffs also demand a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiffs in an amount to be determined by the trier of fact. Further, Plaintiffs request any and all other relief, which the Court deems appropriate together with all costs assessed herein.

RESPECTFULLY SUBMITTED, this the 25th day of June 2008.

HAROLD BENNETT and CARRIE BENNETT

BY: _Stephen G. Younger_
STEPHEN G. YOUNGER

Stephen G. Younger (MSB#6671)
850 East River Place, Suite 302
Jackson, MS 39202
Tel. 601-353-1571
Fax. 601-353-1573
E-mail: youngerstepheng@bellsouth.net

0223

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

BURRAGE INVESTMENT
COMPANY, L.P., a Mississippi
Limited Partnership

**PLAINTIFF**

VS.

CIVIL ACTION NO. 10-CV-0306-NS-C

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.
CENTERPOINT ENERGY RESOURCES, CORP., AND
UNKNOWN DEFENDANTS 1-10

**FILED**

SEP 1 5 2010

TIME_____

DEFENDANTS SEE
CIRCUIT CLERK

## COMPLAINT

Plaintiff, Burrage Investment Company, L.P., a Mississippi limited partnership, by and through its attorney, files this its Complaint against Defendants, Deviney Construction Company, Inc. (hereinafter "Deviney Construction"); Ace Utility Boring and Trenching, LLC (hereinafter "Ace Utility"); CenterPoint Energy Pipeline Services, Inc.; CenterPoint Energy Field Services, Inc.; CenterPoint Energy Resources Corp. (hereinafter collectively "CenterPoint"); and unknown Defendants 1-10, and in support of the same, shows as follows:

## PARTIES

1. Plaintiff Burrage Investment Company, L.P., is a Mississippi limited partnership doing business in Mississippi.

2. Defendant, Deviney Construction Company, Inc. is a Mississippi corporation which may be served with process by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

3. Defendant, Ace Utility Boring and Trenching, LLC, is a Tennessee corporation with a principal place of business at 929 Airways Boulevard, Jackson,

0224

Tennessee 38301. It may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

4. Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all Delaware corporations with a principal place of business at 1111 Louisiana Street, Houston, Texas. They may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

5. Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be submitted when ascertained.

## JURISDICTION AND VENUE

6. Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

7. Burrage Investment Company, L.P., (hereinafter "BIC") owns a commercial building located on Hospital Road in Philadelphia, Mississippi (the "Building"), which was damaged by a gas explosion on September 15, 2007.

8. BIC utilizes the Building for leases with commercial tenants. The ability to lease the Building was substantially disrupted for months following the explosion, resulting in lost revenues of approximately $50,000.00. Additionally, the Building suffered structural damage, as well as damage to the widows, awnings and other parts of the building. The Plaintiff estimates its total losses to the Building, including damage and lost revenues, to be $75,000.00.

9. On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion.

10. On or about September 15, 2007, Defendant Ace Utility was performing a boring job to install telephone cable on Holland Avenue in front of a building located on at 912 Holland Avenue. An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line.

11. On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

12. After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint and notified CenterPoint of the gas leak. Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building located at 912 Holland Avenue.

13. Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak.

14. At all times relevant, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

15. At all times relevant, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have known that gas is an extraordinarily dangerous substance.

0226

16. At all times relevant, CenterPoint owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

17. At all times relevant, Deviney and Ace Utility owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or or water or sewer lines.

18. At all times relevant, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

19. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion.

20. Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted and contributed in the explosion.

21. Defendant Deviney owed the general public, including the Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to property identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and//or conduits; (3) a non-delegable duty to property verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to property transfer and

communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility: (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines, manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified personnel operating the boring equipment and performing the boring operations.

22. Defendant CenterPoint owed the general public, including the Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

## COUNT I
## NEGLIGENCE

23. Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak in question.

24. Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications, experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and guidelines for the boring work.

0228

25. Defendant Ace Utility was negligent and failed to use the property highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject explosion.

26. Defendant, CenterPoint, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to plaintiffs;

(b) failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building at 912 Holland Avenue within a reasonable time of receiving notice of the gas leak;

(c) failed to have the proper trained personnel and equipment readily available to prevent the explosion within a reasonable time after learning of the gas leak;

(d) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

27. Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

0229

(d) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(f) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures.

28. Defendant Deviney, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(d) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(e) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures;

(f)    was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring equipment so that the gas and water and/or sewer lines would not be ruptured;

(g)    was negligent in failing to monitor Ace Utility;

(h)    was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

29.    All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

30     As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages.

## COUNT II
### RES IPSA LOQUITUR

31.    The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

32.    The explosion that caused loss and damage to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III
### GROSS NEGLIGENCE

33.    The Plaintiff re-alleges the allegations set forth in Paragraphs 1-32 as if set out here again in their totality.

0231

34    The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

## DAMAGES
## COMPENSATORY DAMAGES

35.    As a proximate cause of the acts and omissions of the Defendants, the building owned by BIC located on Hospital Road sustained substantial damage. The Building suffered structural damage in the approximate amount of $25,000. In addition, the Plaintiff experienced a loss in revenues from the lease of the Building, in the approximate amount of $50,000.00. The total monetary damage associated with the property damage to the Building, including lost revenue, was approximately $75,000.00, as a direct and proximate result of the explosion in question.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of approximately $75,000.00. Plaintiff also demands a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiff in an amount to be determined by the trier of fact. Further, Plaintiff requests any and all other relief, which the Court deems appropriate together with all costs assessed herein

Dated, this the 15th day of September, 2010.

Respectfully submitted,

BURRAGE INVESTMENT
COMPANY, L.P., a Mississippi
limited partnership

By: _____
JENIFER B. BRANNING, ESQ

JENIFER B. BRANNING, ESQ. (MB 101529)
JENIFER B. BRANNING, P. A.
423 CENTER AVENUE
PHILADELPHIA, MS 39350
TELEPHONE 601-656-6152
FACSIMILE 601-656-6153
EMAIL jbranning@jbranninglaw.com

FILED

SEP 15 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

0233

KEYLA PEDEN CARNEY, and
KEYLA PEDEN CARNEY d/b/a
THE FLORAL STUDIO                                                    PLAINTIFFS

VS.                                          CIVIL ACTION NO. 10-CV-0301-NS G

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,                    **FILED**
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.                   SEP 15 2010
CENTERPOINT ENERGY RESOURCES, CORP., AND
UNKNOWN DEFENDANTS 1-10                          TIME___DEFENDANTS___
                                                PATTI DUNCAN LEE
                                                  CIRCUIT CLERK

## COMPLAINT

Plaintiffs, Keyla Peden Carney, individually and Keyla Peden Carney d/b/a The

Floral Studio, by and through their attorney, file this its Complaint against Defendants,

Deviney Construction Company, Inc. (hereinafter "Deviney Construction"); Ace Utility

Boring and Trenching, LLC (hereinafter "Ace Utility"); CenterPoint Energy Pipeline

Services, Inc.; CenterPoint Energy Field Services, Inc.; CenterPoint Energy Resources Corp.

(hereinafter collectively "CenterPoint"); and unknown Defendants 1-10, and in support of

the same, shows as follows:

## PARTIES

1. Keyla Peden Carney is an adult resident citizen of Neshoba County,

Mississippi.

2. Keyla Peden Carney operates a sole proprietorship commonly known as The

Floral Studio, which is operated in Neshoba County, Mississippi, and is referred to herein as

Keyla Peden Carney d/b/a The Floral Studio.

0234

3. Defendant, Deviney Construction Company, Inc. is a Mississippi corporation which may be served with process by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

4. Defendant, Ace Utility Boring and Trenching, LLC, is a Tennessee corporation with a principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. It may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all Delaware corporations with a principal place of business at 1111 Louisiana Street, Houston, Texas. They may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

6. Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time The names of these Defendants will be submitted when ascertained.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

8. Keyla Peden Carney owns a commercial building located at 903 Holland Ave. in Philadelphia, Mississippi (the "Building") in which she operates her sole proprietorship known as The Floral Studio (the "Business"). The Building was seriously damaged by a gas explosion on September 15, 2007.

9. The Business consists of a floral studio and gift shop located within the Building and, as a result of the subject explosion, was completely shut down for weeks immediately subsequent to the explosion. This serious and prolonged interruption in the Business resulted in lost income, lost profits, and expenses for clean-up, storage, and other costs. Additionally, there were large quantities of merchandise, inventory, supplies and other items of personal property within the Building that were either completely destroyed or severely damaged. The Plaintiffs were then forced to rent storage facilities, pay workers to assist in clean-up and debris removal, and continue paying employees in order to maintain the staff until the Building was usable.

10. On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion.

11. On or about September 15, 2007, Defendant Ace Utility was performing a boring job to install telephone cable on Holland Avenue in front of a building located on at 912 Holland Avenue. An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line.

12. On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable. Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

13. After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint and notified CenterPoint of the gas leak. Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building located at 912 Holland

0236

Avenue.

14. Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak.

15. At all times relevant, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

16. At all times relevant, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have known that gas is an extraordinarily dangerous substance.

17. At all times relevant, CenterPoint owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

18. At all times relevant, Deviney and Ace Utility owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or or water or sewer lines.

19. At all times relevant, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

20. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion.

21. Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted

0237

and contributed in the explosion.

22. Defendant Deviney owed the general public, including the Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to property identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and//or conduits; (3) a non-delegable duty to property verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to property transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility: (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines, manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified personnel operating the boring equipment and performing the boring operations.

23. Defendant CenterPoint owed the general public, including the Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

## COUNT I
## NEGLIGENCE

24. Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak in question.

25. Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications,

0238

experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and guidelines for the boring work.

26. Defendant Ace Utility was negligent and failed to use the property highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject explosion.

27. Defendant, CenterPoint, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to plaintiffs;

(b) failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building at 912 Holland Avenue within a reasonable time of receiving notice of the gas leak;

(c) failed to have the proper trained personnel and equipment readily available to prevent the explosion within a reasonable time after learning of the gas leak;

(d) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

28      Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a)      failed to train employees regarding emergency procedures for gas leaks;

(b)      failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c)      failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

(d)      failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e)      failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(f)      failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures.

29.      Defendant Deviney, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a)      failed to train employees regarding emergency procedures for gas leaks;

(b)      failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c)      failed to follow the locations and markings as set out by Miss. One Call for avoiding

drilling into pipelines, water and/or sewer manholes;

(d) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(e) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures;

(f) was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring equipment so that the gas and water and/or sewer lines would not be ruptured;

(g) was negligent in failing to monitor Ace Utility;

(h) was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

30. All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings

31. As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages.

## COUNT II
### RES IPSA LOQUITUR

32. The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around

and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

33. The explosion that caused loss and damage to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

**COUNT III**
**GROSS NEGLIGENCE**

34. The Plaintiffs re-allege the allegations set forth in Paragraphs 1-33 as if set out here again in their totality.

35. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

**DAMAGES**
**COMPENSATORY DAMAGES**

36. As a proximate cause of the acts and omissions of the Defendants, the building owned by Keyla Peden Carney at 903 Holland Ave. sustained substantial damage. The damage associated with the structural damage to the Building was approximately $100,000.00. In addition, there was substantial damage to the personal property of Keyla Peden Carney and Keyla Peden Carney d/b/a The Floral Studio including, but not limited to merchandise, inventory, and supplies. The total monetary damage associated with the property damage to the Building and the personal property of the Business was approximately $125,000.00. Additionally, Keyla Peden Carney and Keyla Peden Carney d/b/a The Floral Studio suffered lost income, as well as incurred expenses of clean-up and storage, of approximately $150,000.00, as a direct and proximate result of the explosion in question.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of approximately $275,000.00. Plaintiffs also demand a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiffs in an amount to be determined by the trier of fact. Further, Plaintiffs request any and all other relief, which the Court deems appropriate together with all costs assessed herein.

Dated, this the 15th day of September, 2010.

Respectfully submitted,

KEYLA PEDEN CARNEY, individually
KEYLA PEDEN CARNEY,
d/b/a The Floral Studio

By: _____
JENIFER B. BRANNING, ESQ.

Jenifer B. Branning, Esq. (MB # 101529)
Jenifer B. Branning, P.A.
423 Center Avenue
Philadelphia, Mississippi 39350
Telephone: (601) 656-6152
Facsimile: (601) 656-6153
Email: jbranning@jbranninglaw.com

FILED

SEP 15 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

0243

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI

ARSHEKA Q. DAVIS and
ALEXIS LEWIS, a Minor,
By and Through Her Mother and
Natural Guardian, ARSHEKA Q.DAVIS

**PLAINTIFFS**

VS.

CIVIL ACTION NO. 251-09-29CIV

DEVINEY CONSTRUCTION COMPANY,
INC.; ACE UTILTY BORING AND TRENCHING,
LLC; CENTERPOINT ENERGY RESOURCES CORP.
D/B/A CENTERPOINT ENERGY MISSISSIPPI GAS;
AND FICTITIOUS DEFENDANTS 1-10

**DEFENDANTS**

## C O M P L A I N T

### (JURY TRIAL REQUESTED)

**COMES NOW** the Plaintiffs, ARSHEKA DAVIS and ALEXIS LEWIS, a Minor, By and Through Her Mother and Natural Guardian, ARSHEKA DAVIS, by and through undersigned counsel, and file this, their Complaint against Defendants, DEVINEY CONSTRUCTION COMPANY, INC. (hereinafter referred to as "Deviney"); ACE UTILITY BORING AND TRENCHING, LLC (hereinafter referred to as "Ace"); and CENTERPOINT ENERGY RESOURCES CORP. d/b/a CENTERPOINT ENGERGY MISSISSIPPI GAS (hereinafter referred to as "CenterPoint"); and, Fictitious Defendants 1-10, and for grounds would show unto this Honorable Court the following, to-wit:

### PARTIES

1. Plaintiff, ARSHEKA DAVIS, is an adult resident citizen of Union, Newton County, Mississippi and currently resides at 193 Henry Road, Union, MS 39365.

0244

2. Plaintiff, ALEXIS LEWIS, is a minor resident citizen of Union, Newton County, Mississippi and currently resides with her parents at 193 Henry Road, Union, MS 39365.

3. Defendant, DEVINEY CONSTRUCTION COMPANY, INC. is a domestic corporation organized and existing under the laws of the State of Mississippi, with a principal office address of Post Office Box 6717, Jackson , Mississippi 39282-6717. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

4. Defendant, ACE UTILITY BORING AND TRENCHING, LLC, is a domestic corporation organized and existing under the laws of the State of Tennessee. Defendant is authorized to do business within this State, with a principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant may be served with process of this lawsuit by serving its registered agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendant, CENTERPOINT ENERGY RESOURCES CORP. D/B/A CENTERPOINT ENERGY MISSISSIPPI GAS is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

6. Fictitious Defendants 1-10 are unknown defendants, whether individual or corporate, or other entities whose wrongful conduct caused the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this

0245

time, but are believed to be employees of named Defendants or other entities who were responsible for the damages herein. The names of these Defendants will be substituted by amendment when ascertained.

## JURISDICTION

7. a) This Court has exclusive subject matter jurisdiction as this action involves claims for monetary damages for personal injuries that occurred within the confines of the State of Mississippi and exceed the jurisdictional minimum of this Court, and this action is between non-diverse citizens. Therefore, federal jurisdiction does not apply. b) Further, the Mississippi Long Arm Statute provides personal jurisdiction over foreign corporations that commit a tort, either in whole or in part, against another, within the State of Mississippi. The subject explosion occurred in Philadelphia, Neshoba County, Mississippi.

## VENUE

8. Pursuant to Miss. Code Ann. 11-11-3, venue is proper before this Court as Hinds County is the principle place of business of in-state Defendant, Deviney Construction Company, and hence, venue is proper here.

## STATEMENT OF FACTS

9. At all times complained of herein, Natalie Woodward leased a beauty salon ("Diva Reflections Hair Salon"), which was one of four businesses that occupied a single building on Holland Avenue in Philadelphia, Mississippi. That beauty salon was the only business occupied at the time of the explosion complained of herein. On information and belief, there were ten (10) occupants, including Plaintiffs, Arsheka Davis and Alexis Lewis, in the beauty salon at the time of the subject explosion.

10. At all times complained of herein, Defendant, CenterPoint owned, operated and maintained the pipelines that supplied gas to the beauty salon and which were

0246

involved in and/or which contributed to the subject explosion.

11. On or about September 15, 2007, Ace was performing a boring job to install a telephone cable on Holland Avenue in front of the beauty salon described hereinabove. Shortly thereafter, an operator of Ace hit a gas main damaging the pipeline owned by CenterPoint. Prior to hitting the gas main, the boring bit hit a manhole and/or water or sewer line.

12. On information and belief, Ace was subcontracted by Deviney to install the aforementioned telephone cable. Prior to September 15, 2007, Deviney made a telephone call to the Mississippi One Call Center to locate utilities. However, on information and belief, the gas pipeline was marked but there were no markings present for the water or sewer lines.

13. Ace did not notify any occupants in the beauty salon of the gas main nor manhole and/or water or sewer line being hit. Further, Ace did not evacuate any of the occupants in the beauty salon after hitting the gas main nor the manhole and/or water or sewer line.

14. After hitting the gas main, as well as hitting a manhole and/or water or sewer line, Ace notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint to notify them of the gas leak. Gas continued to leak for more than three (3) hours, which later resulted in an explosion of the building, which was occupied by the beauty salon.

15. A service technician for CenterPoint arrived at the scene prior to the explosion but still failed to warn the occupants of the beauty salon of the gas leak and failed to call for evacuation of the area. The service technician was at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line was hit.

0247

16. At all times complained herein, providers of natural gas, including CenterPoint, knew and/or should have known that gas in an extraordinarily dangerous substance.

17. At all times complained of herein, borers working around and/or near gas pipelines, including Deviney and Ace, knew and/or should have known that gas is an extraordinarily dangerous substance.

18. At all times complained of herein, CenterPoint owed to its customers and the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

19. At all times complained of herein, Deviney and Ace owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near pipelines and manholes and not rupture any gas pipelines, manholes and/or water or sewer lines.

20. At all times complained of herein, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the beauty salon involved in the subject explosion.

21. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint took no immediate and/or urgent action to respond to the gas leak.

22. In addition to any other duty, Deviney owed Plaintiffs: (1) a non-delegable duty to contact the Mississippi One Call Center prior to Ace performing any boring work at the location specified within Plaintiffs' Complaint; (2) a non-delegable duty to properly identify and mark any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; and (3) a non-delegable duty to properly transfer and communicate any and all information.

0248

regarding the markings and/or verification thereof to Ace.

23. In addition to any other duty, Defendants owed Plaintiffs a duty to warn them of any and all dangers and/or risks associated with the gas leak.

24. In addition to any other duty, CenterPoint owed Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safely rules to respond to a report of a gas leak.

## COUNT I

### NEGLIGENCE

25. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-25 of their Complaint as if fully stated herein.

26. CenterPoint was negligent and/or refused to use the highest degree of skill and care in providing and maintaining its gas pipeline, and failed to timely respond to this disaster, failed to warn the general public as well as other acts of negligence.

27. Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Ace, and allowing Ace to use unskilled illegal immigrant workers and/or workers with poor English language skills in performing this hazardous operation as well as other acts of negligence which will be shown at the trial of this matter.

28. Ace was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in boring and/or working around and/or near gas

0249

pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes and/or water or sewer lines. Additionally, Ace was negligent in allowing untrained and poorly skilled workers to do the boring work and for employing illegal immigrants who could not speak or read English well as this lack of English language skills contributed to the confusion after hitting the gas line in question.

29. CenterPoint, individually, and/or acting with unknown defendants:

a. Failed to warn the general public and other acts of negligence which will be proven at the trial of this matter;

b. failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to Plaintiffs, Arsheka Davis and Alexis Lewis;

c. failed to warn Plaintiffs of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

d. failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiffs at the time of the explosion within a reasonable time of receiving notice of the gas leak;

e. failed to take proper precautions to evacuate or advise Plaintiffs to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

f. failed to train employees regarding emergency procedures for gas leaks;

g. failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions;

h. failed to adhere to laws, rules and guidelines set by government and/or

0250

other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks; and

    i.  other acts of negligence to be shown at the trial of this matter.

30. Ace, individually, and/or acting with unknown defendants:

    a.  failed to warn Plaintiffs, Arsheka Davis and Alexis Lewis, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

    b.  failed to take proper precautions to evacuate or advise Plaintiffs to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

    c.  failed to train employees regarding emergency procedures for gas leaks;

    d.  failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions;

    e.  failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during borings procedures;

    f.  employed illegal aliens who were not fluent in English to perform an ultra hazardous duty; and

    g.  other acts of negligence which will be shown at trial.

0251

31. Defendant Deviney, individually, and/or acting with unknown defendants failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during boring procedures, as well as other acts of negligence which will be shown at the trial of this matter.

32. The Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

33. As a direct and proximate cause of the negligent and tortuous conduct of Defendants, the Plaintiffs suffered serious injury.

34. Plaintiffs neither caused nor contributed to the gas explosion described herein.

### Count II

### RES IPSA LOQUITUR

35. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-36 of their Complaint as if fully stated herein.

36. The Explosion described herein was caused by a gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace, subcontracted by Defendant Deviney, was working around and struck to cause a gas leak at the time of the explosion, all of which was in the exclusive control and management of Defendants.

37. a) The explosion that caused injury to the Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants, and therefore, the doctrine of

0252

Rep Ipsa Loquitor must apply. b) There is no fault on the part of the Plaintiff

## COUNT III

### GROSS NEGLIGENCE

38. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-38 of their Complaint as if fully stated herein.

39. Defendant, CenterPoint, failed to warn Plaintiffs, Arsheka Davis and Alexis Lewis, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to make repairs or to turn off the supply of gas to the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to timely respond to an emergency situation; failed to warn of their use of unskilled illegal immigrant workers with poor English language skills for this hazardous operation; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provisions and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks, as well as other acts of negligence and/or gross negligence which will be proven at the trial of this matter.

40. Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including, but not limited to, all electrical, gas, water,

0253

sewer, and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof. Deviney further failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures and hiring unqualified untrained subcontractors who used illegal immigrant workers causing undue risk to the general public; and other acts of negligence and/or gross negligence which will be proven at the trial of this matter.

41. Defendant, Ace, failed to warn Plaintiffs, Arsheka Davis and Alexis Lewis, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to take proper precautions to evacuate or advise Plaintiffs to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines

0254

are not struck or ruptured during boring procedures; failed to employ competent personnel who could read and speak English and were properly trained.

42. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

## DAMAGES

### COMPENSATORY DAMAGES

43. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-43 of her Complaint as if fully stated herein.

44. As a proximate cause of the acts and omissions of the Defendants, Plaintiffs, Arsheka Davis and Alexis Lewis, suffered serious physical injuries; past, present, and future pain and suffering; past, present and future mental anguish; shock; past, present and future emotional upset; negligent infliction of emotional distress; past, present and future medical expenses; and other injuries and damages to be proven at the trial of this cause.

45. Plaintiffs demand actual or compensatory damages in an amount to be determined by the Trier of fact.

### PUNITIVE DAMAGES

46. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-46 of her complaint as if fully stated herein.

47. Pursuant to the Defendants' gross negligence and willful, wanton, and reckless disregard for the life of Plaintiffs, Arsheka Davis and Alexis Lewis, Plaintiffs are entitled to an award of punitive damages to be determined by the Trier of fact.

0255

## RIGHT TO AMEND

48. Pursuant to Rule 15 of the Mississippi Rules of Civil Procedure, Plaintiffs reserve the right to amend this complaint, when appropriate discovery is concluded.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand a judgment against the Defendants, either individually and/or jointly and severally, in an amount as actual or compensatory damages and punitive damages to be determined by the Trier of fact, together with all costs assessed herein. Further, Plaintiffs request any and all other relief which the Court deems appropriate and just under the circumstances.

RESPECTFULLY SUBMITTED this, the 6th day of January, 2009.

ARSHEKA Q. DAVIS and ALEXIS LEWIS,
a Minor, By and Through Her Mother and
Natural Guardian, ARSHEKA Q.DAVIS

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: _____
STEPHEN W. MULLINS

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Boulevard, Suite 102 (39564)
Post Office Box 990
Ocean Springs, MS 39566
(228) 875-3175
(228) 872-4819 (fax)

0256

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

EMC INSURANCE COMPANY and
CONN ENTERPRISES, INC.                                      **PLAINTIFFS**

VS.                                    CIVIL ACTION NO. 09-CV-0363-NS-G

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.,
CENTERPOINT ENERGY RESOURCES, CORP., AND
UNKNOWN DEFENDANTS 1-10                                     **DEFENDANTS**



FILED

DEC 24 2009

BY _____
DEPUTY CLERK

## COMPLAINT

Plaintiffs, EMC Insurance Company and Conn Enterprises, Inc., by and through their attorney, file this their Complaint against Defendants, Deviney Construction Company, Inc. (hereinafter "Deviney Construction"); Ace Utility Boring and Trenching, LLC (hereinafter "Ace Utility"); CenterPoint Energy Pipeline Services, Inc.; CenterPoint Energy Field Services, Inc.; CenterPoint Energy Resources Corp. (hereinafter collectively "CenterPoint"); and unknown Defendants 1-10, and in support of the same, shows as follows:

## PARTIES

1.      EMC Insurance Company is a foreign insurance company which is qualified to do business in Mississippi.

2.      Conn Enterprises, Inc. is a Mississippi Corporation and the owner of a commercial building located at 97 St. Francis Dr., Philadelphia, MS 39350.

3.      Defendant, Deviney Construction Company, Inc. is a Mississippi corporation which may be served with process by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

4.      Defendant, Ace Utility Boring and Trenching, LLC, is a Tennessee corporation with a principal place of business at 929 Airways Boulevard, Jackson,

Tennessee 38301. It may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all Delaware corporations with a principal place of business at 1111 Louisiana Street, Houston, Texas. They may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

6. Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be submitted when ascertained.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

8. Conn Enterprises, Inc. owns a commercial building located at 97 St. Francis Drive in Philadelphia, Mississippi.

9. EMC Insurance Company provided insurance coverage to Conn Enterprises, Inc. in connection with said commercial building. Said building was severally damaged by a gas explosion on September 15, 2007.

10. On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion.

11. On or about September 15, 2007, Defendant Ace Utility was performing a boring

job to install telephone cable on Holland Avenue in front of a building located on at 912 Holland Avenue. An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line.

12. On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable. Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

13. After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint and notified CenterPoint of the gas leak. Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building located at 912 Holland Avenue.

14. Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak. Both representatives were present when the building exploded. A repair crew from CenterPoint did not arrive at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line were hit.

15. At all times relevant, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

16. At all times relevant, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have known that gas is an extraordinarily dangerous substance.

17. At all times relevant, CenterPoint owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

18. At all times relevant, Deviney and Ace Utility owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or or water or sewer lines.

19. At all times relevant, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

20. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion.

21. Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted and contributed in the explosion.

22. Defendant Deviney owed the general public, including the Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to property identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and//or conduits; (3) a non-delegable duty to property verify any and all underground lines, including but not limited to, all electrical, gas,

water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to property transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility; (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines, manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified personnel operating the boring equipment and performing the boring operations.

23. Defendant CenterPoint owed the general public, including the Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

## COUNT I
## NEGLIGENCE

24. Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak in question.

25. Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications, experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and

guidelines for the boring work.

26.     Defendant Ace Utility was negligent and failed to use the property highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject explosion.

27.     Defendant, CenterPoint, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a)     failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to plaintiffs;

(b)     failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building at 912 Holland Avenue within a reasonable time of receiving notice of the gas leak;

(c)     failed to have the proper trained personnel and equipment readily available to prevent the explosion within a reasonable time after learning of the gas leak;

(d)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

28.     Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a)     failed to train employees regarding emergency procedures for gas leaks;

(b)     failed to have properly trained personnel operating and supervising the boring equipment procedure;

0262

(c)     failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

(d)     failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e)     failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(f)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures.

29.     Defendant Deviney, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a)     failed to train employees regarding emergency procedures for gas leaks;

(b)     failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c)     failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(d)     failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(e)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said

machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures;

(f) was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring equipment so that the gas and water and/or sewer lines would not be ruptured;

(g) was negligent in failing to monitor Ace Utility;

(h) was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

30. All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

31. As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages.

## COUNT II
### RES IPSA LOQUITUR

32. The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

33. The explosion that caused loss and damage to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III
## GROSS NEGLIGENCE

34. The Plaintiffs re-allege the allegations set forth in Paragraphs 1-33 as if set out here again in their totality.

37. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

## DAMAGES
## COMPENSATORY DAMAGES

38. As a proximate cause of the acts and omissions of the Defendants, the building owned by Conn Enterprises, Inc. located at 97 St. Francis Drive sustained substantial damage. The total monetary damage associated with the structural damage to the building was in the amount of $9,135.00. EMC is entitled to $6,635.00 of these damages and Conn Enterprises, Inc. is entitled to $2,500.00 of these damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, EMC Insurance Company demands a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of $6,635.00. Plaintiff, Conn Enterprises, Inc., demands a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of $2,500.00. Plaintiffs also demand a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiffs in an amount to be determined by the trier of fact. Further, Plaintiffs request any and all other relief, which the Court deems appropriate together with all costs assessed herein.

Dated, this the 23rd day of December, 2008.

Respectfully submitted,

EMC INSURANCE COMPANY and
CONN ENTERPRISES, INC.

By: _____
Jay M. Kilpatrick

Jay M. Kilpatrick (MB # 100136)
YoungWilliams P.A.
P. O. Box 23059
Jackson, MS  39225-3059
(601)948-6100
(601)355-6136

FILED

DEC 24

CIRCUIT CLERK

0266

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

EMC INSURANCE COMPANY and
JULIUS O'NEAL

**PLAINTIFFS**

VS.

CIVIL ACTION NO. *10-CV-0173-NS-G*

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.
CENTERPOINT ENERGY RESOURCES, CORP., AND
UNKNOWN DEFENDANTS 1-10

**FILED**

MAY 2 8 2010

TIME_____

**DEFENDANTS**LEE
CIRCUIT CLERK

## COMPLAINT

Plaintiffs, EMC Insurance Company and Julius O'Neal, by and through their attorney, file this their Complaint against Defendants, Deviney Construction Company, Inc. (hereinafter "Deviney Construction"); Ace Utility Boring and Trenching, LLC (hereinafter "Ace Utility"); CenterPoint Energy Pipeline Services, Inc.; CenterPoint Energy Field Services, Inc.; CenterPoint Energy Resources Corp. (hereinafter collectively "CenterPoint"); and unknown Defendants 1-10, and in support of the same, shows as follows:

## PARTIES

1. EMC Insurance Company is a foreign insurance company which is qualified to do business in Mississippi.

2. Julius O'Neal is an adult resident citizen of Neshoba County, Mississippi

3. Defendant, Deviney Construction Company, Inc. is a Mississippi corporation which may be served with process by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

4. Defendant, Ace Utility Boring and Trenching, LLC, is a Tennessee corporation with a principal place of business at 929 Airways Boulevard, Jackson,

0267

Tennessee 38301. It may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all Delaware corporations with a principal place of business at 1111 Louisiana Street, Houston, Texas. They may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

6. Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be submitted when ascertained.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

8. Julius O'Neal owns a commercial building located at 1006 Holland Ave. in Philadelphia, Mississippi.

9. EMC Insurance Company provided insurance coverage to Mr. O'Neal in connection with said commercial building. Said building was severally damaged by a gas explosion on September 15, 2007.

10. On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion.

11. On or about September 15, 2007, Defendant Ace Utility was performing a boring

0268

job to install telephone cable on Holland Avenue in front of a building located on at 912 Holland Avenue. An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line.

12. On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable. Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

13. After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint and notified CenterPoint of the gas leak. Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building located at 912 Holland Avenue.

14. Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak.

15. At all times relevant, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

16. At all times relevant, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have known that gas is an extraordinarily dangerous substance.

17. At all times relevant, CenterPoint owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines

18. At all times relevant, Deviney and Ace Utility owed to the public in general,

0269

including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or or water or sewer lines.

19. At all times relevant, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

20. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion.

21. Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted and contributed in the explosion.

22. Defendant Deviney owed the general public, including the Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to property identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and//or conduits; (3) a non-delegable duty to property verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to property transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility: (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines, manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified

personnel operating the boring equipment and performing the boring operations.

23. Defendant CenterPoint owed the general public, including the Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

## COUNT I
## NEGLIGENCE

24. Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak in question.

25. Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications, experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and guidelines for the boring work.

26. Defendant Ace Utility was negligent and failed to use the property highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject explosion.

27. Defendant, CenterPoint, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to plaintiffs;

(b) failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building at 912 Holland Avenue within a reasonable time of receiving notice of the gas leak;

(c) failed to have the proper trained personnel and equipment readily available to prevent the explosion within a reasonable time after learning of the gas leak;

(d) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

28. Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

(d) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

0272

(f) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures.

29. Defendant Deviney, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a) failed to train employees regarding emergency procedures for gas leaks;

(b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c) failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(d) failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(e) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures;

(f) was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring equipment so that the gas and water and/or sewer lines would not be ruptured;

(g) was negligent in failing to monitor Ace Utility;

(h) was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

30. All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

31. As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages.

## COUNT II
## RES IPSA LOQUITUR

32. The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

33. The explosion that caused loss and damage to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III
## GROSS NEGLIGENCE

34. The Plaintiffs re-allege the allegations set forth in Paragraphs 1-33 as if set out here again in their totality.

37. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

## DAMAGES
## COMPENSATORY DAMAGES

38. As a proximate cause of the acts and omissions of the Defendants, the building owned by Mr. O'Neal located at 1006 Holland Ave. sustained substantial damage. The total monetary damage associated with the structural damage to the building was in the amount of $2,246.23. EMC is entitled to $1,246.23 of these damages and Mr. O'Neal is entitled to $1,000.00 of these damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of $2,246.23. Plaintiffs also demand a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiffs in an amount to be determined by the trier of fact. Further, Plaintiffs request any and all other relief, which the Court deems appropriate together with all costs assessed herein.

Dated, this the 26th day of May, 2010.

Respectfully submitted,

EMC INSURANCE COMPANY and
JULIUS O'NEAL



By: _____
Jay M. Kilpatrick

Jay M. Kilpatrick (MB # 100136)
YoungWilliams P.A.
P. O. Box 23059
Jackson, MS 39225-3059
(601)948-6100
(601)355-6136

FILED

MAY 28 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

LEMEIA IRONMOCCASIN

PLAINTIFF

VERSUS

CIVIL ACTION NO. _25I-09-230CIV_

DEVINEY CONSTRUCTION COMPANY, INC.; ACE UTILITY BORING AND TRENCHING, LLC; CENTERPOINT ENERGY RESOURCES, CORP. D/B/A CENTERPOINT ENERGY MISSISSIPPI GAS; AND JOHN DOE DEFENDANTS 1 - 10

DEFENDANTS

**F I L E D**

MAR - 5 2009

BARBARA DUNN, CIRCUIT CLERK

BY_____

_____D.C.

## COMPLAINT

## JURY TRIAL REQUESTED

COMES NOW Plaintiff Lemeia Ironmoccasin, by and through her undersigned attorneys, and in support of this, her Complaint against Devine Construction Company, Inc.; Ace Utility Boring and Trenching, LLC; CenterPoint Energy Resources, Corp. d/b/a/ CenterPoint Energy Mississippi Gas; and, John Doe Defendants 1 through 10, would show respectfully unto this Court the following, to-wit:

## PARTIES

1.      Plaintiff, Lemeia Ironmoccasin, is an adult resident citizen of Philadelphia, Neshoba County, Mississippi, and currently resides at 909 Pecan Avenue, Philadelphia, Mississippi 39350.

2.      Defendant Deviney Construction Company, Inc. (hereinafter referred to as "Deviney") is a domestic corporation organized and existing under the laws of the State of

Page 1 of 15

0276

Mississippi. Defendant Deviney's principal office address is Post Office Box 6717, Jackson, Mississippi 39232-6717. Defendant Deviney may be served with process of this court by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3. Defendant Ace Utility Boring and Trenching, LLC (hereinafter referred to as "Ace") is a foreign corporation organized and existing under the laws of the State of Tennessee. Defendant Ace is authorized to do, and at all times relevant herein was doing, business within the State of Mississippi. Defendant Ace has its principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant Ace may be served with process of this court by serving its registered agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

4. Defendant CenterPoint Energy Resources, Corp., d/b/a CenterPoint Energy Mississippi Gas (hereinafter referred to as "CenterPoint"), is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant CenterPoint is authorized to do, and at all times relevant herein, was doing business within the State of Mississippi. Defendant has a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this court by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

5. John Doe Defendants 1 through 10 are believed to have been employees, managers and/or agents working on behalf of the defendants, and/or other persons, firms or

0277

corporations who may be liable to the plaintiff for the injuries and damages she suffered in the accident which is the subject of this complaint.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction as this action involves claims for monetary damages for personal injuries that occurred within the confines of the State of Mississippi for which the jurisdictional minimum of this court is exceeded.

7. Further, the Mississippi Long Arm Statute, Section 13-3-57 of the Mississippi Code Annotated, as amended, provides personal jurisdiction over foreign corporations that commit a tort, either in whole or part, against another, within the State of Mississippi.

8. Pursuant to Mississippi Code Annotated Section 11-11-3, as amended, venue is proper before this Court as Hinds County is the principle place of business of in-state Defendant Deviney.

## STATEMENT OF FACTS

9. At all times complained of herein, Plaintiff Lemeia Ironmoccasin was an employee Diva Reflections Hair Salon (hereinafter referred to as "Hair Salon"), which was one of four businesses that occupied a single building on Holland Avenue in Philadelphia, Mississippi. The Hair Salon was the only business occupied by people at the time of the explosion complained of herein.

10. On information and belief, there were ten (10) occupants, including Plaintiff, in the Hair Salon at the time of the subject explosion.

Page 3 of 15

0278

11. At all times complained of herein, Defendant CenterPoint owned, operated and maintained the pipelines that supplied gas to the Hair Salon.

12. Said pipelines were involved in and contributed to the subject explosion.

13. Defendant Ace was subcontracted by Defendant Deviney to install an underground telephone cable along the street in front of the building that exploded.

14. Prior to September 15, 2007, Defendant Deviney made a telephone call to the Mississippi One Call Center to locate utility lines, including, but not limited to electrical lines, gas pipelines, manholes and/or sewer and water lines.

15. On information and belief, the gas pipeline was marked but there were no markings present for the sewer or water lines.

16. On or about September 15, 2007, Defendant Ace was boring into the ground along Holland Avenue in front of the Hair Salon in an effort to install an underground telephone cable.

17. Shortly thereafter, an operator of Defendant Ace hit a gas line, damaging the pipeline owned by Defendant CenterPoint.

18. About the same time, the boring bit hit a manhole and/or water or sewer line.

19. After hitting the gas line, manhole and/or sewer or water line(s), Defendant Ace notified the Philadelphia Police Department.

20. The Philadelphia Police Department notified Defendant CenterPoint of the gas leak.

Page 4 of 15

0279

21. The gas leaked for more than three (3) hours before the explosion occurred.

22. The gas leak caused or contributed to the explosion of the building, in which the Hair Salon was located, to explode.

23. Defendant Ace did not notify any occupants in the Hair Salon of the gas line or manhole and/or sewer or water line(s) being hit.

24. Defendant Ace did not evacuate any of the occupants in the Hair Salon after hitting the gas main nor the manhole and/or sewer or water line(s).

25. Upon information and belief, some or all of Defendant Ace's employees or agents who were present at the time the gas and/or other utility lines were ruptured were illegal aliens.

26. Some or all of Defendant Ace's employees who were present at the time the utility lines ruptured did not read or speak the English language and/or had poor English skills.

27. A service technician for Defendant CenterPoint arrived on the scene after the gas pipeline was hit but prior to the resulting explosion.

28. Said CenterPoint technician failed to warn the public, including the occupants of the Hair Salon, of the gas leak.

29. Said CenterPoint technician failed to evacuate the occupants of the Hair Salon.

30. Said CenterPoint technician remained on the scene until after the explosion took place, all the while failing to warn or evacuate the public, including the occupants of

0280

the Hair Salon.

31. A repair crew from Defendant CenterPoint failed to arrive at the location of the subject gas leak for at least three hours after the report of the leak was received by it.

32. Defendant CenterPoint failed to act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safety rules to respond to a report of a gas leak.

33. At all times complained herein, all Defendants knew, and/or should have known, that gas is an extremely dangerous substance for which extraordinary caution must be used when working around, near and/or with.

34. At all times herein complained of, Defendant CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all CenterPoint pipelines which provided gas to the building involved in the explosion.

35. At all times herein complained of, Defendant CenterPoint owed its customers and the general public, including Plaintiff, a duty to use the highest degree of care and caution to provide, repair and maintain safe pipelines.

36. At all times herein complained of, Defendant Deviney and Defendant Ace owed the general public, including Plaintiffs, a duty carefully and safely to work around and/or near gas pipelines, manholes and/or sewer or water line(s) as not to rupture said gas pipelines, manholes and/or sewer or water line(s).

37. In addition to all other duties, Plaintiff Deviney owed Plaintiff: (1) a non-

0281

delegable duty to contact the Mississippi One Call Center Prior to Defendant Ace performing any bore work on Holland Avenue, Philadelphia, Mississippi; (2) a non-delegable duty properly to identify and mark any and all underground lines, including, but not limited to, all electrical, gas, sewer, water and/or other lines and/or conduits; (3) a non-delegable duty properly to verify any and all underground lines, including, but not limited to, all electrical lines, gas pipelines, sewer and water lines, and/or other lines and/or conduits; and, (4) a non-delegable duty properly to transfer and communicate any and all information regarding the marking and/or verification thereof to Defendant Ace.

38.     In addition to other duties, all Defendants owed Plaintiff a duty to warn her of any and all dangers and/or risks associated with the gas leak complained of herein.

39.     In addition to other duties, Defendant CenterPoint owed Plaintiff a duty to use the highest degree of care to respond to any complaint of gas leaks involving the subject gas line.

40.     In addition to other duties, Defendant CenterPoint owed Plaintiff a duty to act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safety rules to respond to a report of a gas leak.

### CLAIMS FOR RELIEF

41.     In support of the following claims for relief, Plaintiff hereby refers to, re-alleges, and incorporates by reference in each of the following "Counts" each and every paragraph of the facts supporting these claims as set forth above.

0282

## COUNT I: NEGLIGENCE

42. This is an action for negligence, with an amount in controversy exceeding the minimum jurisdiction of this Court, exclusive of interest and costs.

43. Defendant CenterPoint, individually, and/or acting in concert with Defendants John Doe 1 through 10, was negligent by:

    a.    failing timely to respond to the gas leak when notified as they knew or should have known the imminent and foreseeable danger to the public, including Plaintiff;

    b.    failing to warn the general public and Plaintiff of the dangers and/or risks associated with natural gas and/or the gas leak(s) complained of herein;

    c.    failing properly to install, maintain, control, operate, inspect, repair and/or monitor its gas pipeline on Holland Avenue which provided gas to the building that exploded and caused injury and damage to Plaintiff;

    d.    failing to make necessary repairs to pipelines or to cease the supply of natural gas to the building located on Holland Avenue in Philadelphia, Mississippi, within a reasonable time of receiving notice of the gas leak;

    e.    failing to take proper precautions to evacuate Plaintiff and other occupants of the building located on Holland Avenue;

    f.    failing to train CenterPoint employees regarding emergency procedures for gas leaks;

    g.    failing to maintain an effective system of warning the public, including

0283

Plaintiff, of the known dangers and risks of natural gas, including, but not limited to natural gas leaks and explosions;

     h.     failing and/or refused to use the highest degree of care and skill in providing and maintaining CenterPoint gas pipelines; and,

     i.     failing to adhere to guidelines, laws, procedures and rules set by government and/or other agencies and/or administrative bodies of the proper means by which to deal with natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and the proper response by those who supply natural gas to notice of gas leaks.

44.     Defendant Deviney, individually, and/or acting in concert with John Doe Defendants 1 through 10, was negligent by:

     a.     failing and/or refused to use the highest degree of care, diligence and skill in identifying, marking and verifying any and all underground lines, including, but not limited to, all electrical lines, gas, sewer, water and/or other lines and/or conduits;

     b.     failing and/or refused to transfer information regarding the location of any and all underground lines, including, but not limited to, all electrical lines, gas, sewer, water and/or other lines and/or conduits to Defendant Ace;

     c.     allowing Defendant Ace to use unskilled, illegal immigrant workers and/or workers with poor English language skills in performing the hazardous operation of boring near electrical lines, gas pipelines, sewers, water lines, and/or other lines and/or conduits;

0284

d. failing to adhere to guidelines, laws, procedures and rules set by government and/or other agencies and/or administrative bodies of the proper means by which to deal with natural gas instrumentalities, including, but not limited to, the safe operation of boring equipment and/or other tools and instruments used to work near natural gas pipelines;

e. failing to adhere to guidelines, laws, procedures and rules set by government and/or other agencies and/or administrative bodies of the proper means by which to deal with natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring that when gas pipelines, manholes and/or sewer or water lines are struck or ruptured while bore work is being performed, proper safety precautions are adhered to;

f. failing to cause its employees and/or subcontractors to be tested for the presence of alcohol and drugs in a timely fashion following the incident complained of herein; and,

g. contracting, sub-contracting and/or employing Defendant Ace for work to be performed in the State of Mississippi, at a time when Defendant Diveney knew, or should have known, that Ace was not authorized to conduct business with the Mississippi Secretary of State.

45. Defendant Ace, individually, and/or acting in concert with John Doe Defendants 1 through 10, was negligent by:

a. failing to warn Plaintiff and/or others present of the dangers and/or risks

0285

associated with natural gas and/or gas leak(s);

b. failing to take proper precautions to evacuate and/or advise Plaintiffs and/or others present to evacuate the building upon notification of a gas leak;

c. failing to train employees regarding emergency procedures for gas leaks;

d. failing to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of natural gas, including, but not limited to, natural gas leaks and explosions;

e. failing to adhere to guidelines, laws, procedures and rules set by government and/or other agencies and/or administrative bodies of the proper means by which to deal with natural gas instrumentalities, including, but not limited to, the safe operation of boring equipment and/or other tools and instruments used to work near natural gas pipelines;

f. failing to adhere to guidelines, laws, procedures and rules set by government and/or other agencies and/or administrative bodies of the proper means by which to deal with natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring that when gas pipelines, manholes and/or sewer or water lines are struck or ruptured while bore work is being performed, proper safety precautions are adhered to;

g. failing and/or refused to use the highest degree of care, diligence and skill in boring and/or working around and/or near gas pipelines, manholes and/or sewer or water lines;

0286

h.  rupturing the subject gas line;

i.  employing unskilled, illegal immigrant workers and/or workers with poor English language skills in performing the hazardous operation of boring near electrical lines, gas pipelines, sewers, water lines, and/or other lines and/or conduits;

j.  failing to cause its employees to be tested for the presence of alcohol and drugs in a timely fashion following the incident complained of herein; and,

k.  conducting business in the State of Mississippi at a time when it was not authorized by the Mississippi Secretary of State to do so.

46.  All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

47.  The negligent and tortuous conduct of all Defendants is the direct and proximate cause of Plaintiff's damages and injuries.

48.  Plaintiff neither caused nor contributed to the explosion complained of herein.

## COUNT II: RES IPSA LOQUITUR

49.  The explosion complained of herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint. Defendant Deviney subcontracted the job of boring and installing communication lines to Defendant Ace. Defendant Ace employees struck the gas pipeline, causing natural gas to leak from the pipeline, ultimately resulting in the explosion complained of herein. Defendant CenterPoint, Defendant Deviney and Defendant Ace were in exclusive control of the pipeline and machines which were used to

Page 12 of 15

0287

bore down into the ground and which struck the pipeline, causing the gas leak and resulting explosion. The injuries and damages suffered by the plaintiff are not such which would occur, during the ordinary course of things, if proper care had been exercised by the defendants. The plaintiff's damages and injuries resulted from the defendants' want of care and by no fault of the plaintiff.

## COUNT III: GROSS NEGLIGENCE

50. The acts of commission and omissions of all Defendants, as set forth herein, constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiff, justifying an award of punitive damages against all Defendants.

## COUNT VI: DAMAGES

## COMPENSATORY DAMAGES

51. As a direct and proximate cause of the acts of commission and omissions of all Defendants, Plaintiff has suffered:

a.  serious physical injuries;

b.  past, present and future pain and suffering;

c.  past, present and future mental anguish;

d.  shock;

e.  past, present and future emotional distress;

f.  negligent infliction of emotional distress;

g.  past, present and future medical expenses;

0288

h.     lost wages; and,

i.     other damages and injuries to be proven at the trial of this case.

52.     Plaintiff demands compensatory damages in an amount to be determined by the trier of fact.

## PUNITIVE DAMAGES

53.     As a direct and proximate cause of all Defendants' gross negligence and willful, wanton and reckless disregard for the life of Plaintiff, she is entitled to an award of punitive damages in an amount to be determined by the fact finder.

## RIGHT TO AMEND

54.     Pursuant to Rule 15 of the Mississippi Rules of Civil Procedure, Plaintiff reserves the right to amend her Complaint, if and when appropriate discovery is concluded.

WHEREFORE, PREMISES CONSIDERED, Plaintiff sues and demands judgment against all Defendants for actual and compensatory damages in an amount sufficient to compensate Plaintiff for all damages and injuries she suffered and continues to suffer as a result of all Defendants' acts of commission and omissions, plus consequential damages including attorneys' fees and expenses incurred in the prosecution of this claim, plus pre-judgment interest and post-judgment interest in the amount allowable by law, but not less than eight percent (8%).

Plaintiff further requests that punitive or exemplary damages be assessed against all Defendants in an amount sufficient to punish them for their wrongful conduct, and to deter

0289

like conduct in the future, and to serve as an example and a warning to others, so as to deter Defendants and other companies and corporations from engaging in similar conduct, or to prevent continuation of said conduct by Defendants and others.

Respectfully submitted,

LEMEIA IRONMOCCASIN, Plaintiff

By: _____
Daniel W. Kitchens, One of Plaintiff's Attorneys

Attorneys for Plaintiff Lemeia Ironmoccasin:

Daniel W. Kitchens, Miss. Bar No. 101239
Kitchens Law Firm, P. A.
Post Office Box 799
Crystal Springs, Mississippi 39059-0799
Telephone:    601-892-3067
Facsimile:    601-892-3057

Samuel F. Creasey, Miss. Bar No. 99555
The Crawley Law Offices
P. O. Drawer 13849
Jackson, MS 39236-3849
Telephone:    601-956-5373
Facsimile:    601-956-5360

0290

CASHANTA JOHNSON, a Minor,
By and Through Her Father and
Natural Guardian, DAVID JOHNSON        PLAINTIFFS

VS.        CIVIL ACTION NO. 251-08-864CIV

DEVINEY CONSTRUCTION COMPANY,
INC.; DEVINEY UTILITY SERVICES;
ACE UTILTY BORING AND TRENCHING,
LLC; CENTERPOINT ENERGY PIPELINE
SERVICES, INC.; CENTERPOINT ENERGY FIELD
SERVICES, INC.; CENTERPOINT ENERGY
RESOURCES, CORP.; AND FICTITIOUS
DEFENDANTS 1-10        DEFENDANTS



FILED
OCT 2 9 2008
BARBARA DUNN, CIRCUIT CLERK
BY_____ D.C.

## COMPLAINT

### (JURY TRIAL REQUESTED)

**COMES NOW** the Plaintiff, CASHANTA JOHNSON, a Minor, By and Through Her Father and Natural Guardian, DAVID JOHNSON, by and through her attorneys of record, and file this, her Complaint against Defendants, DEVINEY CONSTRUCTION COMPANY, INC. and DEVINEY UTILITY SERVICES (hereinafter referred to collectively as "Deviney"); ACE UTILITY BORING AND TRENCHING, LLC (hereinafter referred to as "Ace"); CENTERPOINT ENERGY PIPELINE SERVICES, INC.; CENTERPOINT ENERGY FIELED SERVICES, INC.; CENTERPOINT ENERGY RESOURCES, CORP. (hereinafter referred to collectively "CenterPoint"); and, Fictitious Defendants 1-10, and for grounds would show unto this Honorable Court the following, to-wit:

### PARTIES

1. Plaintiff, CASHANTA JOHNSON, is a minor resident citizen of Union, Newton County, Mississippi and currently resides with her parents at 327-B Conehatta Road, Union, MS 39365.

0291

2. Defendants, DEVINEY CONSTRUCTION COMPANY, INC. and DEVINEY UTILITIES SERVICE, are domestic corporations organized and existing under the laws of the State of Mississippi, with a principal office address of Post Office Box 6717, Jackson , Mississippi 39282-6717. Defendants may be served with process of this lawsuit by serving their registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3. Defendant, ACE UTILITY BORING AND TRENCHING, LLC, is a domestic corporation organized and existing under the laws of the State of Tennessee. Defendant is authorized to do business within this State, with a principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant may be served with process of this lawsuit by serving its registered agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

4. Defendant, CENTERPOINT ENERGY PIPELINE SERVICES, INC., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation, at 645 Lakeland East Drive, Suite 10 1, Flowood, Mississippi 39232.

5. Defendant, CENTERPOINT ENERGY FIELD SERVICES, INC., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation, at 645 Lakeland East Drive, Suite 10 1, Flowood, Mississippi 39232.

0292

6. Defendant, CENTERPOINT ENERGY RESOURCES, CORP., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

7. Fictitious Defendants 1-10 are unknown defendants, whether individual or corporate, or other entities whose wrongful conduct caused the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but are believed to be employees of named Defendants or other entities who were responsible for the damages herein. The names of these Defendants will be substituted by amendment when ascertained.

## JURISDICTION

8. This Court has exclusive subject matter jurisdiction as this action involves claims for monetary damages for personal injuries that occurred within the confines of the State of Mississippi and exceed the jurisdictional minimum of this Court. This Court also has personal jurisdiction as this action is between non-diverse citizens. Further, the Mississippi Long Arm Statute provides personal jurisdiction over foreign corporations that commit a tort, either in whole or in part, against another, within the State of Mississippi. The subject explosion occurred in Philadelphia, Neshoba County, Mississippi.

## VENUE

9. Pursuant to Miss. Code Ann. 11-11-3, venue is proper before this Court as Hinds County is the principle place of business of in-state Defendants, Deviney Utility Services and Deviney Construction Company, and hence, venue is proper here.

3

0293

## STATEMENT OF FACTS

10. At all times complained of herein, CaShanta Johnson leased a beauty salon ("Diva Reflections Hair Salon"), which was one of four businesses that occupied a single building on Holland Avenue in Philadelphia, Mississippi. That beauty salon was the only business occupied at the time of the explosion complained of herein. On information and belief, there were ten (10) occupants, including Plaintiff, Cashanta Johnson, in the beauty salon at the time of the subject explosion.

11. At all times complained of herein, Defendant, CenterPoint Energy, Inc., owned, operated and maintained the pipelines that supplied gas to the beauty salon and which were involved in and/or which contributed to the subject explosion.

12. On or about September 15, 2007, Ace was performing a boring job to install a telephone cable on Holland Avenue in front of the beauty salon described hereinabove. Shortly thereafter, an operator of Ace hit a gas main damaging the pipeline owned by CenterPoint. Prior to hitting the gas main, the boring bit hit a manhole and/or water or sewer line.

13. On information and belief, Ace was subcontracted by Deviney to install the aforementioned telephone cable. Prior to September 15, 2007, Deviney made a telephone call to the Mississippi One Call Center to locate utilities. However, on information and belief, the gas pipeline was marked but there were no markings present for the water or sewer lines.

14. Ace did not notify any occupants in the beauty salon of the gas main nor manhole and/or water or sewer line being hit. Further, Ace did not evacuate any of the occupants in the beauty salon after hitting the gas main nor the manhole and/or water or sewer line.

0294

15. After hitting the gas main, as well as hitting a manhole and/or water or sewer line, Ace notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint to notify them of the gas leak. Gas continued to leak for more than three (3) hours, which later resulted in an explosion of the building, which was occupied by the beauty salon.

16. A service technician for CenterPoint arrived at the scene prior to the explosion but still failed to warn the occupants of the beauty salon of the gas leak and failed to call for evacuation of the area. The service technician was at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line was hit.

17. At all times complained herein, providers of natural gas, including CenterPoint, knew and/or should have known that gas in an extraordinarily dangerous substance.

18. At all times complained of herein, borers working around and/or near gas pipelines, including Deviney and Ace, knew and/or should have known that gas is an extraordinarily dangerous substance.

19. At all times complained of herein, CenterPoint owed to its customers and the public in general, including Plaintiff, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

20. At all times complained of herein, Deviney and Ace owed to the public in general, including Plaintiff, a duty to use the highest degree of care to safely bore and/or work around and/or near pipelines and manholes and not rupture any gas pipelines, manholes and/or water or sewer lines.

21. At all times complained of herein, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of

5

0295

all of its pipelines, including, but not limited to, the pipelines which provided gas to the beauty salon involved in the subject explosion.

22. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint took no immediate and/or urgent action to respond to the gas leak.

23. In addition to any other duty, Deviney owed Plaintiff: (1) a non-delegable duty to contact the Mississippi One Call Center prior to Ace performing any boring work at the location specified within Plaintiff's Complaint; (2) a non-delegable duty to properly identify and mark any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; and (3) a non-delegable duty to properly transfer and communicate any and all information regarding the markings and/or verification thereof to Ace.

24. In addition to any other duty, Defendants owed Plaintiff a duty to warn them of any and all dangers and/or risks associated with the gas leak.

25. In addition to any other duty, CenterPoint owed Plaintiff a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safely rules to respond to a report of a gas leak.

## COUNT I

### NEGLIGENCE

26. Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1-25 of their Complaint as if fully stated herein.

27. CenterPoint was negligent and/or refused to use the highest degree of skill and care in providing and maintaining its gas pipeline and failed to timely respond to this disaster.

6

28. Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Ace, and allowing Ace to use unskilled illegal immigrant workers and/or workers with poor English language skills in performing this hazardous operation, as well as other acts of negligence which will be shown at the trial of this matter.

29. Ace was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in boring and/or working around and/or near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes and/or water or sewer lines. Additionally, Ace was negligent in allowing untrained and poorly skilled workers to do the boring work and for employing illegal immigrants who could not speak or read English well as this lack of English language skills contributed to the confusion after hitting the gas line in question.

30. CenterPoint, individually, and/or acting with unknown defendants:

a. failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to Plaintiff, CaShanta Johnson:

b. failed to warn Plaintiff of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

c. failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiff at the time of the explosion within a reasonable time of receiving notice of the gas leak;

7

0297

d. failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

e. failed to train employees regarding emergency procedures for gas leaks;

f. failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions;

g. failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks; and

h. other acts of negligence to be shown at the trial of this matter.

31. Ace, individually, and/or acting with unknown defendants:

a. failed to warn Plaintiff, CaShanta Johnson, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

b. failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

c. failed to train employees regarding emergency procedures for gas leaks;

d. failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions;

8

0298

e. failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during borings procedures;

f. employed illegal aliens who were not fluent in the English language for this ultra hazardous duty; and

g. other acts of negligence which will be shown at trial.

32. The Deviney Defendants individually, and/or acting with unknown defendants, failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during boring procedures, as well as other acts of negligence which will be shown at the trial of this matter.

33. The Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

34. As a direct and proximate cause of the negligent and tortuous conduct of Defendants, the Plaintiffs suffered serious injury.

35. Plaintiffs neither caused nor contributed to the gas explosion described herein.

<u>Count II</u>

RES IPSA LOQUITUR

9

36. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-35 of their Complaint as if fully stated herein.

37. The Explosion described herein was caused by a gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace, subcontracted by Defendant Deviney, was working around and struck to cause a gas leak at the time of the explosion, all of which was in the exclusive control and management of Defendants.

38. The explosion that caused injury to the Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III

### GROSS NEGLIGENCE

39. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-38 of their Complaint as if fully stated herein.

40. Defendant, CenterPoint, failed to warn Plaintiff, CaShanta Johnson, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to make repairs or to turn off the supply of gas to the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to timely respond to an emergency situation; failed to warn of their use of unskilled illegal immigrant workers with poor English language skills for this hazardous operation; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and

10

0300

guidelines for the safe provisions and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks, as well as other acts of negligence and/or gross negligence which will be proven at the trial of this matter.

41. The Deviney Defendants were negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including, but not limited to, all electrical, gas, water, sewer, and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof. Deviney further failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures and hiring unqualified untrained subcontractors who used illegal immigrant workers causing undue risk to the general public; and other acts of negligence and/or gross negligence which will be proven at the trial of this matter.

42. Defendant, Ace, failed to warn Plaintiff, CaShanta Johnson, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective

11

0301

system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures; failed to employ competent personnel who could read and speak English and were legal residents who were properly trained.

43. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiff, justifying an award of punitive damages against the Defendants.

## DAMAGES

### COMPENSATORY DAMAGES

44. Plaintiff hereby re-alleges and incorporate by reference Paragraphs 1-43 of her Complaint as if fully stated herein.

45. As a proximate cause of the acts and omissions of the Defendants, Plaintiff, CaShanta Johnson, suffered serious physical injuries; past, present, and future pain and suffering; past, present and future mental anguish; shock; past, present and future emotional upset; negligent infliction of emotional distress; past, present and future medical expenses; and other injuries and damages to be proven at the trial of this cause.

0302

46. Plaintiff demands actual or compensatory damages in an amount to be determined by the Trier of fact.

## PUNITIVE DAMAGES

47. Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1-46 of her complaint as if fully stated herein.

48. Pursuant to the Defendants' gross negligence and willful, wanton, and reckless disregard for the life of Plaintiff, CaShanta Johnson, Plaintiff is entitled to an award of punitive damages to be determined by the Trier of fact.

## RIGHT TO AMEND

49. Pursuant to Rule 15 of the Mississippi Rules of Civil Procedure, Plaintiff reserves the right to amend this complaint.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands a judgment against the Defendants, either individually and/or jointly and severally, in an amount as actual or compensatory damages and punitive damages to be determined by the Trier of fact, together with all costs assessed herein. Further, Plaintiff requests any and all other relief which the Court deems appropriate and just under the circumstances.

RESPECTFULLY SUBMITTED this, the 23rd day of October, 2008.

CaSHANTA JOHNSON, a Minor, By and
Through Her Father and Natural
Guardian, DAVID JOHNSON

By and Through Her Attorneys,
LUCKEY & MULLINS, PLLC

BY: _____
STEPHEN W. MULLINS

13

0303

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Boulevard, Suite 102 (39564)
Post Office Box 990
Ocean Springs, MS 39566
(228) 875-3175
(228) 872-4819 (fax)

14

0304

## IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

| | |
|---|---|
| J. MONTY LANG and MONTY LANG, INC. f/n/a J. MONTY LANG DDS, P.A. | **PLAINTIFFS** |

**VS.**                                    CIVIL ACTION NO. 10-CV-0305-NS-C

DEVINEY CONSTRUCTION COMPANY, INC.,
ACE UTILITY BORING AND TRENCHING, LLC,
CENTERPOINT ENERGY PIPELINE SERVICES, INC.,
CENTERPOINT ENERGY FIELD SERVICES, INC.
CENTERPOINT ENERGY RESOURCES, CORP., AND
UNKNOWN DEFENDANTS 1-10                    **DEFENDANTS**

### COMPLAINT

Plaintiffs, J. Monty Lang and Monty Lang, Inc. f/n/a J. Monty Lang DDS, P.A., by and through their attorney, file this its Complaint against Defendants, Deviney Construction Company, Inc. (hereinafter "Deviney Construction"); Ace Utility Boring and Trenching, LLC (hereinafter "Ace Utility"); CenterPoint Energy Pipeline Services, Inc.; CenterPoint Energy Field Services, Inc.; CenterPoint Energy Resources Corp. (hereinafter collectively "CenterPoint"); and unknown Defendants 1-10, and in support of the same, shows as follows:

### PARTIES

1. J. Monty Lang is an adult resident citizen of Neshoba County, Mississippi.

2. Monty Lang, Inc. f/n/a J. Monty Lang DDS, P.A. is a Mississippi Corp. doing business in Mississippi

3. Defendant, Deviney Construction Company, Inc. is a Mississippi corporation which may be served with process by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

4. Defendant, Ace Utility Boring and Trenching, LLC, is a Tennessee corporation with a principal place of business at 929 Airways Boulevard, Jackson,

0305

Tennessee 38301. It may be served with process by serving its registered agent, John W. Moore at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendants, CenterPoint Energy Pipeline Services, Inc., CenterPoint Energy Field Services, Inc., CenterPoint Energy Resources, Corp., are all Delaware corporations with a principal place of business at 1111 Louisiana Street, Houston, Texas. They may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi.

6 Defendants 1-10 are unknown defendants, whose actions, conduct, negligence caused or contributed to cause the damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be submitted when ascertained.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this Court

## STATEMENT OF FACTS

8. J Monty Lang owns a commercial building located at 913 Holland Ave. in Philadelphia, Mississippi. Said building was severally damaged by a gas explosion on September 15, 2007.

9 Lang, Inc f/n/a J. Monty Lang DDS, P.A. operates a dental practice within said commercial building located at 913 Holland Ave The dental practice was substantially disrupted for weeks following the explosion resulting in lost income of approximately $100,000.00 and lost profits. Additionally, the dental practice owns substantial personal property which was either destroyed or substantially damaged as a result of the explosion in question.

10    On information and belief, Defendants CenterPoint, owned, operated and maintained the pipelines that supplied gas to the building and which were involved in and/or contributed to the subject explosion

11.    On or about September 15, 2007, Defendant Ace Utility was performing a boring job to install telephone cable on Holland Avenue in front of a building located on at 912 Holland Avenue An operator of Defendant Ace Utility hit and damaged a gas pipeline owned by Defendant CenterPoint. Prior to hitting the gas pipeline, the operator for Ace Utility hit a manhole and/or water or sewer line,

12    On information and belief, Defendant Ace Utility was subcontracted by Defendant Deviney to install the telephone cable. Further, on information and belief prior to the boring Deviney contacted Mississippi One Call to locate the utilities and that the said gas pipeline was marked.

13.    After hitting the gas pipeline and manhole and/or water or sewer line, Defendant Ace Utility notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint and notified CenterPoint of the gas leak, Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building located at 912 Holland Avenue.

14.    Two service technicians for Defendant CenterPoint arrived at the scene prior to the explosion but failed to stop the gas leak.

15.    At all times relevant, providers of the natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance

16.    At all times relevant, borers working around and/or near the gas pipeline, including Deviney and Ace Utility, knew and/or should have known that gas is an extraordinarily dangerous substance.

0307

17. At all times relevant, CenterPoint owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

18 At all times relevant, Deviney and Ace Utility owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or or water or sewer lines

19 At all times relevant, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the building involved in the subject explosion.

20. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint did not take the proper and necessary action to respond to the gas leak in order to prevent the explosion

21 Defendant CenterPoint failed to have the proper repair crew/personnel and equipment at the scene to stop the gas leak. This negligence and failure by CenterPoint resulted and contributed in the explosion.

22. Defendant Deviney owed the general public, including the Plaintiffs: (1) a non-delegable duty to contact Mississippi One Call prior to Defendant Ace performing any boring work at the location and time specified in this complaint; (2) a non-delegable duty to property identify and mark or have marked any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and//or conduits; (3) a non-delegable duty to property verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (4) a non-delegable duty to property transfer and

communicate any and all information regarding the markings and/or verification thereof to Defendant Ace Utility: (5) a non-delegable duty to oversee the work performed by Ace Utility to make sure that it performed the boring in such a manner so as not to hit any gas pipelines, manholes and/or water or sewer lines; (6) a non-delegable duty to have properly qualified personnel operating the boring equipment and performing the boring operations.

23      Defendant CenterPoint owed the general public, including the Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines by CenterPoint and other pipeline safety rules and regulations involving the response to a gas leak.

**COUNT I**
**NEGLIGENCE**

24.      Defendant CenterPoint was negligent in failing to properly respond and repair the gas leak in question

25.      Defendant Deviney was negligent in failing to properly insure that the boring work was done in a manner so as not to hit the gas pipeline and water and/or sewer line. Deviney was negligent in hiring Ace Utility and failed to properly check out and/or inspect the qualifications, experience, and legality of the personnel that were doing the particular boring work. Defendant Deviney was negligent and/or negligently failed to use the proper and highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, manholes, water and sewer lines and/or conduits, and failed to transfer and communicate any and all such information regarding the markings and/or locations to Defendant Ace. Deviney was negligent in failing to set out and communicate proper rules, procedures, and guidelines for the boring work.

26. Defendant Ace Utility was negligent and failed to use the property highest degree of skill and care in boring and working around and near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes, water and sewer lines, causing the subject explosion.

27. Defendant, CenterPoint, individually, and/or acting with unknown defendants was negligent in at least the following respects:

   (a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to plaintiffs;

   (b) failed to make repairs, failed to expunge the gas from the building, and failed to turn off the supply of gas to the building at 912 Holland Avenue within a reasonable time of receiving notice of the gas leak;

   (c) failed to have the proper trained personnel and equipment readily available to prevent the explosion within a reasonable time after learning of the gas leak;

   (d) failed to adhere to the laws, rules and guidelines set by governmental and other agencies, and administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including but not limited to, monitoring of gas pipelines and response to gas leaks;

28. Defendant Ace Utility, individually, and/or acting with unknown defendants was negligent in at least the following respects:

   (a) failed to train employees regarding emergency procedures for gas leaks;

   (b) failed to have properly trained personnel operating and supervising the boring equipment procedure;

   (c) failed to follow proper procedures in locating underground pipelines, water and/or sewer manholes;

0310

(d)     failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(e)     failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(f)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures.

29.     Defendant Deviney, individually, and/or acting with unknown defendants was negligent in at least the following respects:

(a)     failed to train employees regarding emergency procedures for gas leaks;

(b)     failed to have properly trained personnel operating and supervising the boring equipment procedure;

(c)     failed to follow the locations and markings as set out by Miss. One Call for avoiding drilling into pipelines, water and/or sewer manholes;

(d)     failed to follow industry guidelines and customary standards after first hitting the water and/or sewer manhole;

(e)     failed to adhere to the laws, rules and guidelines set by governmental and other agencies, administrative bodies, and the customary practice in the boring industry, prescribing procedures and guidelines for the safe handling of boring and said machinery/equipment and/or working around and/or near gas instrumentalities, including but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or sewer lines are not struck or ruptured during boring procedures;

(f)     was negligent in the hiring of Ace Utility and failed to check out and make sure that qualified personnel would be operating the boring equipment so that the gas and water and/or sewer lines would not be ruptured;

(g)     was negligent in failing to monitor Ace Utility;

(h)     was negligent and failed to make sure that proper procedures were in place to avoid the rupture of gas and water and/or sewer lines;

30.     All Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

31.     As a direct and proximate result of the negligent and tortuous conduct of the Defendants, the Plaintiffs suffered damages

## COUNT II
### RES IPSA LOQUITUR

32.     The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace Utility was working around and struck by Ace Utility causing a gas leak which resulted in the explosion, all of which was in the exclusive control and management of all Defendants.

33.     The explosion that caused loss and damage to Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III
### GROSS NEGLIGENCE

34.     The Plaintiffs re-allege the allegations set forth in Paragraphs 1-33 as if set out here again in their totality.

35. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

## DAMAGES
### COMPENSATORY DAMAGES

36. As a proximate cause of the acts and omissions of the Defendants, the building owned by J. Monty Lang located at 913 Holland Ave. sustained substantial damage. The damages associated with the structural damage to the building was approximately $100,000. In addition, there was substantial damage to the personal property of J. Monty Lang and/or Monty Lang, Inc. f/n/a J. Monty Lang DDS, P.A. The total monetary damage associated with the property damage to the building and its contents was approximately $150,000.00. Additionally, Monty Lang, Inc. f/n/a J. Monty Lang DDS, P.A. sustained lost income of approximately $100,000.00 as a direct and proximate result of the explosion in question.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment for actual or compensatory damages against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, in a minimum of approximately $250,000.00. Plaintiffs also demand a judgment for punitive damages against the Defendants, jointly and severally, for gross negligence and willful, wanton, and reckless disregard for Plaintiffs in an amount to be determined by the trier of fact Further, Plaintiffs request any and all other relief, which the Court deems appropriate together with all costs assessed herein.

Dated, this the 14th day of September, 2010.

Respectfully submitted,

J. MONTY LANG and MONTY LANG,
INC. f/n/a J. MONTY LANG, DDS, P.A.

By: _____
      Jay M. Kilpatrick

Jay M. Kilpatrick (MB # 100136)
YoungWilliams P.A.
P. O. Box 23059
Jackson, MS 39225-3059
(601)948-6100
(601)355-6136

FILED

SEP 15 2010

TIME _____
PATTI DUNCAN LEE
CIRCUIT CLERK

0314

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

LEXINGTON INSURANCE COMPANY,
as subrogee of HEALTH MANAGEMENT
ASSOCIATES, INC.
a Foreign Corporation,
and HEALTH MANAGEMENT
ASSOCIATES, INC.
a Foreign Corporation                                 **PLAINTIFFS**

vs.                                                **CIVIL ACTION NO.:**

ACE UTILITY BORING AND
TRENCHING, LLC,
a Foreign Corporation,
and
DEVINEY CONSTRUCTION
COMPANY, INC.
a Mississippi Corporation,
and
CENTERPOINT ENERGY
RESOURCES CORPORATION
d/b/a CENTERPOINT ENERGY
MISSISSIPPI GAS
a Foreign Corporation,                                  **DEFENDANTS**

## COMPLAINT

Plaintiffs, LEXINGTON INSURANCE COMPANY, as subrogee of Health Management Associates, Inc., hereinafter referred to as "Lexington," and HEALTH MANAGEMENT ASSOCIATES, INC., hereinafter referred to as "HMA," by and through its undersigned counsel, and pursuant to the Mississippi Rules of Civil Procedure, hereby files its Complaint against Defendants, ACE UTILITY BORING AND TRENCHING, LLC., hereinafter referred to as "ACE", DEVINEY CONSTRUCTION COMPANY, INC., hereinafter referred to as "Deviney," and CENTERPOINT ENERGY RESOURCES CORPORATION, d/b/a CENTERPOINT ENERGY MISSISSIPPI GAS, hereinafter referred to as "Centerpoint," and avers as follows:

## GENERAL ALLEGATIONS

1. This is an action for damages in an amount greater than the minimum jurisdictional limits of this Court, exclusive of interest and costs, pursuant to Miss. Code Ann. § 9-7-81 (2010).

2. All jurisdictional requirements have been satisfied with regard to the bringing of this action in the Circuit Court of Neshoba County, Mississippi.

3. Venue is proper in this matter pursuant to Miss. Code Ann. §11-11-3 (2010) as a substantial act or omission occurred, or a substantial event that caused the injury occurred in Neshoba County, Mississippi.

4. At all times material to this action, Lexington was a foreign insurance company authorized to do business in the State of Mississippi, with its principal place of business located in Boston, Massachusetts.

5. At all times material to this action, Health Management Associates, Inc. was a foreign corporation with its principal place of business located in Lansing, Michigan.

6. At all times material to this action, Lexington insured the business properties of Health Management Associates, Inc., including the property located at 915 Holland Avenue in Philadelphia, Mississippi, pursuant to the insurance policy attached hereto as Exhibit "A".

7. At all times material to this action, ACE was a foreign corporation performing boring activities within Neshoba County, with its principal place of business located at 929 Airways Boulevard in Jackson, Tennessee.

8. At all times material to this action, Deviney was a Mississipi corporation with its principal place of business located in Jackson, Mississippi.

9. At all times material to this action, Centerpoint was a foreign corporation with its principal place of business located in Houston, Texas.

10. At all times material to this action, Deviney was the general contractor responsible

for the installation of underground telephone cables, which required the inherently dangerous activity of underground boring activities in the area of an underground gas line to be performed at or near the property located at 915 Holland Avenue in Philadelphia, Mississippi.

11. On September 15, 2007, ACE was performing boring activities in Neshoba County on behalf of Deviney near the property owned by Health Management Associates, Inc., and located at 915 Holland Avenue in Philadelphia, Mississippi.

12. During the boring activities being performed by ACE, on behalf of Deviney, an underground gas line and sewer line were damaged by ACE.

13. As a result of the damage to the underground gas line and sewer line caused by ACE, gas was able to enter the sewer lines, which accumulated in the building located at 915 Holland Avenue in Philadelphia, Mississippi, and caused an explosion at that property.

14. As a direct and proximate result of the damages caused by the explosion at the property located at 915 Holland Avenue in Philadelphia, Mississippi, Lexington was obligated to, and did in fact, compensate Health Management Associates, Inc. for the damages incurred pursuant to the insurance policy attached hereto as Exhibit "A."

15. As a result of the payments made by Lexington pursuant to the insurance policy attached hereto as Exhibit "A," Lexington is now subrogated to the legal rights of Health Management Associates, Inc. to the extent of such payments.

16. As a result of the damages sustained to the property located at 915 Holland Avenue in Philadelphia, Mississippi, HMA sustained damages in the form of its deductible in the amount of Two Hundred Fifty Thousand Dollars and 00/100 Cents ($250,000.00), which represents the amount of the damages that is being sought by HMA in this matter.

17. All conditions precedent to the bringing of this action have occurred, have been met

or have been waived.

## COUNT I - NEGLIGENCE AGAINST ACE (BY LEXINGTON AND HMA)

18. Plaintiffs incorporate and re-allege paragraphs one (1) through seventeen (17) as though fully set forth herein.

19. As a licensed boring contractor, ACE owed a duty to innocent third party property owners, like Health Management Associates, Inc., to perform its boring activities in a workmanlike manner, and in accordance with industry standards so that underground utilities, like the gas and sewer lines, would not be damaged as a result of the boring activities performed by ACE, and result in damage to the property of innocent third party property owners.

20. ACE breached its duty owed to innocent third party property owners by failing to perform its boring activities in a workmanlike manner, and in accordance with industry standards so that underground utilities, like the gas and sewer lines, would not be damaged as a result of the boring activities performed by ACE, which would result in damage to the property of innocent third party property owners.

21. As a direct and proximate result of ACE's breach of the duty owed to innocent third party property owners, like Health Management Associates, Inc., to perform its boring activities in a workmanlike manner, and in accordance with industry standards so that underground utilities, like the gas and sewer lines, would not be damaged, an explosion occurred at the property located at 915 Holland Avenue in Philadelphia, Mississippi, which resulted in significant damage to the subject property.

22. It was, or reasonably should have been, foreseeable to ACE that if it did not perform its boring activities in a workmanlike manner, and in accordance with industry standards, that underground utilities, like the gas and sewer line, would be damaged, and the property of innocent

third party property owners, like Health Management Associates, Inc., would be damaged as it was on September 15, 2007.

23. As a result of the damages sustained to the property located at 915 Holland Avenue in Philadelphia, Mississippi, Lexington was obligated to, and did in fact, pay Health Management Associates, Inc. for the damages incurred pursuant to the insurance policy attached hereto as Exhibit "A."

24. As a result of the payments issued by Lexington pursuant to the insurance policy attached hereto as Exhibit "A," Lexington is subrogated to the legal rights of Health Management Associates, Inc., to the extent of such payments.

25. As a result of the damages sustained to the property located at 915 Holland Avenue in Philadelphia, Mississippi, HMA sustained damages in the form of its deductible in the amount of Two Hundred Fifty Thousand Dollars and 00/100 Cents ($250,000.00), which represents the amount of the damages that is being sought by HMA in this matter.

WHEREFORE, Plaintiffs, Lexington Insurance Company, as subrogee of Health Management Associates, Inc. and Health Management Associates, Inc., by and through their undersigned counsel, respectfully demand judgment against ACE Utility Boring and Trenching, LLC., in excess of the jurisdictional limits, pre-judgment interest, post-judgment interest, costs and any other relief this Court deems proper.

## COUNT II - NEGLIGENCE AGAINST DEVINEY (BY LEXINGTON AND HMA)

26. Plaintiffs incorporate and re-allege paragraphs one (1) through seventeen (17) as though fully set forth herein.

27. As the general contractor responsible for the installation of underground telephone cables, which required underground boring activities, Deviney owed a non-delegable duty to

0319

innocent third party property owners, like Health Management Associates, Inc., to ensure that the inherently dangerous activity of underground boring in the area of underground gas lines were performed in a workmanlike manner, and in accordance with industry standards so that the property of innocent third party property would not be damaged.

28. Deviney breached its non-delegable duty owed to innocent third party property owners, like Health Management Associates, Inc., when it failed to ensure that the inherently dangerous activity of underground boring in the area of underground gas lines were performed in a workmanlike manner, and in accordance with industry standards so that the property of innocent third party property

29. As a direct and proximate result of Deviney's breach of its duty owed to innocent third party property owners, like Health Management Associates, Inc., to ensure that the inherently dangerous activity of underground boring in the area of underground gas lines were performed in a workmanlike manner, and in accordance with industry standards so that the property of innocent third party property, an explosion occurred at the property located at 915 Holland Avenue in Philadelphia, Mississippi, which resulted in significant damage to the subject property.

30. It was, or reasonably should have been, foreseeable to Deviney that if it did not ensure that the inherently dangerous activity of underground boring in the area of underground gas lines were performed in a workmanlike manner, and in accordance with industry standards, then the property of innocent third party property owners, like Health Management Associates, would be damaged as it was on September 15, 2007.

31. As a result of the damages sustained to the property located at 915 Holland Avenue in Philadelphia, Mississippi, Lexington was obligated to, and did in fact, pay Health Management Associates, Inc. for the damages incurred pursuant to the insurance policy attached hereto as Exhibit

"A."

32.    As a result of the payments issued by Lexington pursuant to the insurance policy attached hereto as Exhibit "A," Lexington is subrogated to the legal rights of Health Management Associates, Inc. to the extent of such payments.

33.    As a result of the damages sustained to the property located at 915 Holland Avenue in Philadelphia, Mississippi, HMA sustained damages in the form of its deductible in the amount of Two Hundred Fifty Thousand Dollars and 00/100 Cents ($250,000.00), which represents the amount of the damages that is being sought by HMA in this matter.

WHEREFORE, Plaintiffs, Lexington Insurance Company, as subrogee of Health Management Associates, LLC, and Health Management Associates, Inc., by and through their undersigned counsel, respectfully demand judgment against Deviney Construction Company, Inc., in excess of the jurisdictional limits, pre-judgment interest, post-judgment interest, costs and any other relief this Court deems proper.

## COUNT III – NEGLIGENCE AGAINST CENTERPOINT (BY HMA ONLY)

34.    Plaintiffs incorporate and re-allege paragraphs one (1) through seventeen (17) as though fully set forth herein.

35.    As the utility company/owner of the gas line, Centerpoint owed a duty to innocent third party property owners, like Health Management Associates, Inc., to undertake all reasonable and necessary actions to stop all gas leaks, including performing all reasonable and necessary repairs to the gas line in a timely manner, workmanlike manner, and in accordance with industry standards so that the gas leak would not result in damage to the property of innocent third party property owners, like HMA.

36.    Centerpoint breached its duty owed to innocent third party property owners, like

HMA, when it failed to undertake all reasonable and necessary actions to stop all gas leaks, including performing all reasonable and necessary repairs to the gas line in a timely manner, workmanlike manner, and in accordance with industry standards so that the gas leak would not result in damage to the property of innocent third party property owners

37. As a direct and proximate result of Centerpoint's breach of the duty owed to innocent third party property owners, like Health Management Associates, Inc., to undertake all reasonable and necessary actions to stop all gas leaks, including performing all reasonable and necessary repairs to the gas line in a timely manner, workmanlike manner, and in accordance with industry standards so that the gas leak would not result in damage to the property of innocent third party property owners, an explosion occurred at the property located at 915 Holland Avenue in Philadelphia, Mississippi, which resulted in significant damage to the subject property.

38. It was, or reasonably should have been, foreseeable to Centerpoint that if it did not undertake all reasonable and necessary actions to stop all gas leaks, including performing all reasonable and necessary repairs to the gas line in a timely manner, workmanlike manner, and in accordance with industry standards so that the gas leak would not result in damage to the property of innocent third party property owners, the property of innocent third party property owners, like Health Management Associates, Inc., would be damaged as it was on September 15, 2007.

39. As a result of the damages sustained to the property located at 915 Holland Avenue in Philadelphia, Mississippi, HMA sustained damages in the form of its deductible in the amount of Two Hundred Fifty Thousand Dollars and 00/100 Cents ($250,000.00), which represents the amount of the damages that is being sought by HMA in this matter.

WHEREFORE, Plaintiff, Health Management Associates, Inc., by and through its undersigned counsel, respectfully demands judgment against Centerpoint Energy Resources

Corporation, d/b/a Centerpoint Energy Mississippi Gas, in excess of the jurisdictional limits, pre-judgment interest, post-judgment interest, costs and any other relief this Court deems proper.

Respectfully submitted,

LEXINGTON INSURANCE COMPANY, as subrogee of Health Management Associates, Inc.; and HEALTH MANAGEMENT ASSOCIATES, INC.

By: _____
OF COUNSEL

JEFFREY G. PIERCE - BAR # 99645
LAW OFFICES OF JEFFREY G. PIERCE, PLLC
2210A Mill Street Ext.
Lucedale, Mississippi 39452
jgpierce@yahoo.com
Tel.:(601) 766-9105
Fax: (601) 707-7637

Date: 06/21/07                                Policy Number: 7478516

Underwriter Name: BRADLEY WINFIELD

Underwriter Region: NEW YORK

Underwriter Branch: NEW YORK

Underwriter Telephone: (212)770-7000



EXHIBIT

"A"

lx0185
doc015    *Archive Copy*                                          0324

ENDORSEMENT # INTERNAL

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

Additional Premium of $415,806 for HSB Spot-Re Coding.

LEXDOC021
LX0404

*Archive Copy*

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

0325

Date: 06/21/07

Underwriter Name: BRADLEY WINFIELD

Underwriter Region: NEW YORK

Underwriter Branch: NEW YORK

Underwriter Telephone: (212)770-7000

# CREDIT MEMO

COOPER GAY RISK SERVICES INC
88 PINE ST
FL 26TH
NEW YORK                    NY 10005-1801

RISK SPECIALISTS CO OF NY, INC
80 PINE STREET
4TH FLOOR
NEW YORK                    NY 10005

DATE: 06/21/07

| INSURED | COMPANY | POLICY NO. | TRANSACTION EFFECTIVE DATE MO.- D- YR. | EXPIRATION DATE MO.- D- YR. | | GROSS PREMIUM |
|---------|---------|------------|------------------|-----------------|---|---------------|
| IEALTH MANAGEMENT ASSOCIATES, i811 PELICAN BAY BOULEVARD | LEXINGTON | 7478516 | 06/01/07 | 06/01/08 | – | $415,806.00 |
| | | | COMMISSION | 13.50 | – | $56,133.81 |
| APLES          FL 34108 | | | NET PREMIUM | | – | $359,672.19 |

ESCRIPTION: ENDORSEMENT

RECT INQUIRIES TO:                                    TOTAL PREMIUM          –    $359,672.19

RISK SPECIALISTS CO OF NY, INC
P.O. BOX 10777

NEWARK NJ 07193-0777

# NOTE THE BROKER NAMED HEREON IS RESPONSIBLE FOR THE COLLECTION AND PAYMENT OF ALL SURPLUS LINES TAXES AND FEES.

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

Return Premium of $415,806 for HSB Spot-Re Coding.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

*Archive Copy*

0328

Date: 06/21/07

Policy Number: 7478516

Underwriter Name: BRADLEY WINFIELD

Underwriter Region: NEW YORK

Underwriter Branch: NEW YORK

Underwriter Telephone: (212)770-7000

Named Insured: HEALTH MANAGEMENT ASSOCIATES, INC.

Policy No: 7478516                                    Effective Date: 06/01/2007

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PRFIRS | 01/91 | | FIRE SCHEDULE |
| PRPDEC | 01/91 | | PROPERTY DEC |
| PR9015 | 01/91 | | POLLUTION CONTAMINATION FORM |
| PR9019 | 01/94 | | STANDARD PROPERTY CONDITIONS |
| Y69813 | 02/98 | | COMB. PROP/B&M MILLENNIUM END. |
| LX9512 | 08/02 | | MOLD/FUNGUS EXCLUSION |
| PR9514 | 09/02 | | PROPERTY ENDORSEMENT |
| PR9559 | 11/02 | | WATER DAMAGE EXCL INTERIOR BLD |
| PR9513 | 09/01 | | WAR RISK & TERRORIST EXCLUSION |
| PR9885 | 11/05 | | COVERAGE TERRITORY ENDORSEMENT |
| PR9566 | 11/02 | | EQUIPMENT BREAKDOWN END |
| PR9567 | 11/02 | | EQUIPMENT BREAKDOWN SCHEDULE |
| PR9014 | 08/06 | | OCCURRENCE LIMIT OF LIABILITY |
| | 08/06 | PR9015 | POLLUTION CONTAMINATION FORM |
| | | BROKS/MANS | BROKERS' MANUSCRIPT FORM |
| | | 001 | TIER 1 COUNTIES |

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

## LEXINGTON INSURANCE COMPANY
Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

### COMMERCIAL PROPERTY POLICY
### DECLARATIONS

POLICY NUMBER:   7478516                              RENEWAL OF:   7478035

ITEM 1.  Named Insured:   HEALTH MANAGEMENT ASSOCIATES, INC.

Address:   5811 PELICAN BAY BOULEVARD

NAPLES                    FL 34108

ITEM 2.  Policy Period:
From 06/01/07                          To 06/01/08
at 12:01 A.M. Standard Time at the address of the named insured shown above.

ITEM 3.  Limit of Insurance:
100% PART OF $50,000,000 PER OCCURRENCE, WHICH IS IN TURN X/S OF DEDUCTIBLES
AS OUTLINED WITHIN THE BINDER DATED 05/30/2007.

Total Premium        $4,900,000    Minimum Earned Premium      $1,225,000

ITEM 4.  Perils:
ALL RISK OF DIRECT PHYSICAL LOSS OR DAMAGE, INCLUDING EARTHQUAKE, FLOOD AND
BOILER & MACHINERY AND AS FURTHER DEFINED IN THE POLICY FORM.

ITEM 5.  Description of Property Covered:                          Coinsurance
REAL AND PERSONAL PROPERTY AND BUSINESS INTERRUPTION AND AS          NIL
FURTHER DEFINED IN THE POLICY.

ITEM 6.  Mortgagee Clause: Loss, if any shall be payable to:

ITEM 7.  Forms Attached:

See attached forms schedule

0332

PRPDEC(Ed.01/91)
LX1119
*Archive Copy*

Authorized Representative OR
Countersignature (In states where applicable)

# LEXINGTON INSURANCE COMPANY

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.

Attn: Claim Department

Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

Attn: Legal Department

Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

*Archive Copy*

FIRE

## Schedule of Covered Locations

Policy Number:   7478516

Issued to:   HEALTH MANAGEMENT ASSOCIATES, INC.

| Description of Premises | Limit | Percent of Coins |
|---|---|---|
| AS PER THOSE SUBMITTED ON APRIL 25TH, 2007 AND ON FILE WITH THE COMPANY. | $50,000,000 | |

# POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

1.  Property Not Covered

    This policy does not cover land, land values or water.

2.  Pollution and Contamination Exclusion.

    This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

    Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

    CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

    This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

3.  Asbestos Exclusions

    This policy does not cover -

    a)  Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system.

    b)  Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

    c)  Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

    The coverage afforded does not apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

4.  Debris Removal Exclusion

    The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

    The Company will not pay the expense to:

    a)  Extract contaminants or pollutants from the debris; or

    b)  Extract contaminants or pollutants from land or water; or

    c)  Remove, restore or replace contaminated or polluted land or water; or

1 of 2

d)  Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5.  Authorities Exclusion

Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

PR9015(Ed.01/91)   *Archive Copy*

LX1093

0336

## LEXINGTON INSURANCE COMPANY
### Standard Property Conditions

This endorsement effective 06/01/07 , forms a part of Policy Number 7478516

issued to HEALTH MANAGEMENT ASSOCIATES, INC.                    by

Lexington Insurance Company                    (hereinafter called "the Company").

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

### MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the Insured, a minimum premium of          $1,225,000 shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

### POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of          $250,000 shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

     $250,000          . deductible applying to .PER. OCCURRENCE, EXCEPT.;
                       deductible applying to
                       deductible applying to
                       deductible applying to
                       deductible applying to

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

### CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION: This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than     90 days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

### SERVICE OF SUIT CLAUSE

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 100 Summer Street, Boston, Massachusetts, 02110-2103, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision

PR9019 (Ed.01/94)    *Archive Copy*                                        0337
LX1101

of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

### NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

### SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

### REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

### PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at 100 Summer Street, Boston, Massachusetts 02110-2103.

### GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.



# ABCDEFGHIJK     ABCDEFGHIJK
**Secretary**        **President**

*Archive Copy*

PR9019 (Ed.01/94)
LX1101

0338

ENDORSEMENT

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## COMBINED PROPERTY/BOILER & MACHINERY MILLENNIUM ENDORSEMENT

This policy is hereby amended as follows:

A. The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1. correctly recognize any date as its true calendar date;

2. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

3. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B. It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow, sudden and accidental breakdown of an object, including mechanical and electrical breakdown.

All other terms, conditions and exclusions of this policy remain unchanged.

0339

69813 (2/98)    *I    Archive Copy*

AUTHORIZED REPRESENTATIVE
OR Countersignature (In states where applicable)

ENDORSEMENT


This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY


**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MOLD / FUNGUS EXCLUSION**


In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

(a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

(b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

(c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.


All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.


_____
**Authorized Representative OR
Countersignature (In states where applicable)**

*Archive Copy*

LX9512 (08/02)

0340

ENDORSEMENT

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## PROPERTY ENDORSEMENT

It is noted and agreed that this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1.  Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

2.  Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3.  Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms, conditions and exclusions of this policy remain unchanged.

0341

Authorized Representative OR
Countersignature (In states where applicable)

*Archive Copy*

PR9514 (09/02)

# ENDORSEMENT

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WATER DAMAGE EXCLUSION - INTERIOR OF BUILDING

In consideration of the premium charged, it is agreed that, notwithstanding any provisions to the contrary in the policy to which this Endorsement is attached, the coverage afforded by the policy is restricted as follows:

The Company shall not be liable for any loss or damage to covered property caused by, arising out of, contributed to, or resulting from rain, snow, sleet or ice, all whether wind driven or not, entering the interior of any building or structure undergoing construction or renovation unless the exterior of such building or structure, including but not limited to the roof and outside walls, is complete, and then only if said exterior of the building first sustains physical damage by a covered loss through which the rain, snow, sleet, or ice enters.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

0342

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

*Archive Copy*

PR9559 (11/02)

ENDORSEMENT

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## WAR RISK AND TERRORIST EXCLUSION

It is hereby understood and agreed, that notwithstanding any other war risk or terrorist exclusion that may be in the policy or any clause limiting or attempting to limit the application of any endorsements to the policy, this policy is amended as follows:

The policy does not cover loss or damage to property—caused by, resulting from, contributed-to or aggravated by any of the following perils, whether such loss or damage is accidental or intentional, intended or unintended, direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any perils insured by the policy:

(1) war, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack:

    (a) by government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

    (b) by military, naval or air forces; or

    (c) by an agent of any such government, power, authority or force.

(2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental;

(3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction;

(4) any act of one or more persons, whether known or unknown and whether or not agents of a sovereign power, for Terrorist purposes;

(5) hijacking or any unlawful seizure or wrongful exercise or control of any mode of transportation, including but not limited to aircraft, watercraft, truck(s), train(s) or automobile(s), including any attempted seizure of control, made by any person or persons, for Terrorist purposes.

Such loss or damage is excluded regardless of any other cause, event or intervention that contributes concurrently or in any sequence to the loss or damage.

Terrorist purpose means the use or threatened use of any unlawful means, including the use of force or violence against any person(s) or property (ies), for the actual or apparent purpose of intimidating, coercing, punishing or affecting society or some portion of society or government.

All other terms, conditions and exclusions of the policy remain unchanged.

**Authorized Representative OR
Countersignature (In states where applicable)**

*Archive Copy*

PR9513 (09/01)

0343

ENDORSEMENT

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## COVERAGE TERRITORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

*Archive Copy*

PR9885 (11/05)

0344

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## EQUIPMENT BREAKDOWN ENDORSEMENT
(Boiler and Machinery)

(1) This policy covers loss caused by or resulting from an "accident" to "covered equipment.". "Accident" means direct physical loss as follows:

(a) mechanical breakdown, including rupture or bursting caused by centrifugal force;
(b) artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;
(c) explosion of steam boilers, steam pipes, steam engines or steam turbines owned or operated by or under the control of the Insured;
(d) loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or
(e) loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

"Accident" does not include destruction, disruption, distortion or corruption of any computer data, coding, program or software.

(2) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.

(a) Expediting Expense
The Company shall be liable for the reasonable extra cost to make temporary repairs and to expedite permanent repairs or permanent replacement of damaged covered property. The Company's total liability for Expediting Expense resulting from an "accident" to "covered equipment", is the amount shown in the Equipment Breakdown Schedule.

(b) Hazardous Substances
The Company shall be liable for the additional cost to repair or replace covered property because of contamination by a hazardous substance. This includes the additional expenses to clean up or dispose of such property. Hazardous substance means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency. Additional costs mean those beyond that which would have been required had no hazardous substance been involved.
The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and loss under Spoilage coverage, is $100,000, unless otherwise shown in the Equipment Breakdown Schedule. Any coverage under the policy for decontamination or pollution cleanup does not apply to this endorsement. Exclusion R.(1) of the form to which this endorsement is attached does not apply to this Hazardous Substances coverage.

(c) Spoilage
The Company shall be liable for:
(i) the Insured's loss of "perishable goods" due to spoilage;
(ii) the Insured's loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

*Archive Copy*

(iii) necessary expenses incurred to reduce the amount of loss under this coverage. The Company shall be liable for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(iv) the Insured's loss of "perishable goods" due to spoilage caused by an "accident" to equipment that is owned by a utility, landlord, or other supplier with whom the Insured has a contract for provision of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam. This coverage applies only to loss that occurs in buildings owned by the Insured.

If the Insured is unable to replace the "perishable goods" before its anticipated sale, payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses that otherwise would have been incurred. Otherwise payment will be determined in accordance with the Valuation provision of the policy. The Company's total liability for loss or damage under this coverage is the amount shown in the Equipment Breakdown Schedule.

(d) Computer Equipment

The Company shall be liable for loss or damage caused by or resulting from an "accident" to "computer equipment." The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, and loss of Rental Value is the amount shown in the Equipment Breakdown Schedule. Computers used primarily to control or operate "covered equipment" are not subject to this limit.

The coverage provided by this provision shall be primary to any coverage provided in the form to which this endorsement is attached for "accident" to "computer equipment." In no event shall liability for loss to "computer equipment" under this endorsement and the form to which it is attached exceed the sublimit(s) stated in the Sublimits of Liability section of the form to which this endorsement is attached.

(e) Data Restoration

The Company shall be liable for the cost to research, replace and restore data, including programs and operating systems, that is lost or corrupted due to an "accident." The Company's total liability for loss or damage under this coverage is $100,000 unless otherwise shown in the Equipment Breakdown Schedule.

(f) CFC Refrigerants

The Company shall be liable for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:
(i) Repair the damaged property and replace any lost CFC refrigerant;
(ii) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or
(iii) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved. The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and loss under Spoilage coverage, is the amount shown in the Equipment Breakdown Schedule.

(3) BUSINESS INTERRUPTION / EXTRA EXPENSE / RENTAL VALUE

Coverage for Business Interruption, Extra Expense and / or Rental Value provided herein shall apply as respects the Business Interruption, Extra Expense and Rental Value clauses, and any Additional Provisions applicable to Business Interruption, Extra Expense and Rental Value, of the policy to which this endorsement is attached, solely as a result of loss caused by or resulting from an "accident" to "covered equipment" as defined herein.

The Business Interruption, Extra Expense, Rental Value provisions, and any Additional Provisions applicable to Business Interruption, Extra Expense and Rental Value, of the policy to which this endorsement is attached are amended as follows:

*Archive Copy*

2

0346

(a) If so indicated in the Equipment Breakdown Schedule, Contingent Business Interruption does not apply to Equipment Breakdown coverage or applies only up to the limit specified on the Equipment Breakdown Schedule.

(b) As respects Equipment Breakdown coverage only, the Period of Restoration provision is amended to read as follows:

Period of restoration means the period of time that:
(i) Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and
(ii) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, plus the number of days, if any, indicated in the Equipment Breakdown Schedule for Extended Period of Restoration.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:
(i) Regulates the construction, use or repair, or requires the tearing down, of any property; or
(ii) Requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "contaminants" or "pollutants" as defined in Section 9. Perils Excluded, Paragraph Q.

The expiration date of this policy will not cut short the period of restoration.

(4) ADDITIONAL PERILS EXCLUDED

The following exclusions are in addition to those in the policy attached hereto.

(a) With respect to coverage provided by this endorsement, the Company shall not be liable for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere; any other explosion (except for explosion of steam boilers, steam piping, steam engines or steam turbines); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse; or molten material.

(b) With respect to Business Interruption, Extra Expense and Rental Value coverages, the Company shall not be liable for any delay in resuming operations due to the need to reconstruct or reinput data or programs on "media."

(c) The Company shall not be liable for loss or damage caused by or resulting from:
(i) a hydrostatic, pneumatic, or gas pressure test of any boiler or pressure vessel; or an insulation breakdown test of any type of electrical equipment;
(ii) failure to use all reasonable means to protect "perishable goods" from damage following an "accident";
(iii) any defect, virus, loss of data or other situation within "media." But if loss or damage from an "accident" results, the Company shall be liable for that resulting damage.

(5) DEDUCTIBLES

Only as regards Equipment Breakdown Coverage, the DEDUCTIBLES provision is deleted and replaced with the following: Unless the Schedule indicates that the deductible is combined for all coverages, multiple deductibles may apply to any "one accident." If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," the highest deductibles for each coverage will apply.

(a) Direct and Indirect Coverages
Unless otherwise shown in the Equipment Breakdown Schedule, the Direct Coverages Deductibles apply to all loss or damage covered by this endorsement, with the exception of those coverages subject to the Indirect Coverages Deductibles. Unless more specifically indicated in the Equipment Breakdown Schedule, the Indirect Coverages Deductibles apply to Business Interruption, Extra Expense and Rental Value.

PR9566 (11/02)

(b) Application of Deductibles
   (i) Dollar Deductibles
     The Company shall not be liable for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the applicable Deductible shown in the Equipment Breakdown Schedule. The Company shall then pay the amount of loss or damage in excess of the applicable deductible, up to the applicable LIMIT OF LIABILITY

   (ii) Time Deductible
     If a time deductible is shown in the Equipment Breakdown Schedule, the Company shall not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

   (iii) Multiple of Average Daily Value (ADV)
     If a deductible is expressed as a number times ADV, that amount will be calculated as follows:
     The ADV (Average Daily Value) will be the net profit (or loss) and expenses as described in the policy attached hereto that would have been earned or incurred had no "accident" occurred during the period of interruption of business divided by the number of working days in that period. No reduction shall be made for the net profit (or loss) and expenses not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to all locations included in the valuation of the loss.
     The number indicated in the Equipment Breakdown Schedule shall be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

   (iv) Percentage of Loss Deductibles
     If a deductible is expressed as a percentage of loss, the Company shall not be liable for the indicated percentage of the gross amount of loss or damage (prior to any applicable deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

## (6) DEFINITIONS

(a) "Boilers and Vessels" means:
   (i) Any boiler, including attached steam, condensate and feedwater piping; and
   (ii) Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in the Equipment Breakdown Schedule.

(b) "Computer equipment" means covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.

(c) "Covered equipment" means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy. None of the following is "covered equipment":
   (i) structure, foundation, cabinet, compartment or air supported structure or building;
   (ii) insulating or refractory material;
   (iii) sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;
   (iv) water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
   (v) vehicle, aircraft, floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel;
   (vi) dragline, excavation or construction equipment; or
   (vii) equipment manufactured by the Insured for sale.

(d) "Media" means all forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.

*Archive Copy*

4

0348

(e) "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

(f) "Perishable Goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

(g) "Production Machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.
This term does not appear elsewhere in this endorsement, but may appear in the Equipment Breakdown Schedule.

(h) "Service Interruption" means the Extension of Coverage provided in the form to which this endorsement is attached for interruption of business conducted by the Insured resulting from loss or damage to public utility plants, transformers or switching stations, substations furnishing heat, light, power, water, telephone or gas to the Insured's premises, but within one statute mile of the premises.

## (7) SUSPENSION

When any "covered equipment" is found to be in, or exposed to a dangerous condition, any representative of the Company may immediately suspend the insurance against loss from an "accident" to said "covered equipment" by mailing or delivering a written notice of suspension to the Insured at the address as shown in the Declarations, or at the address where the "covered equipment" is located. Once suspended in this way, the insurance can be reinstated only by endorsement for that property. If so suspended, the Insured will get a pro rata refund of premium. But the suspension will be effective even if a refund has not been offered or made.

## (8) COINSURANCE

If indicated in the Equipment Breakdown Schedule, specified coverages may be subject to coinsurance. The Company shall not pay for the full amount of the loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, the Company shall determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. Then the applicable Deductible will be subtracted. The resulting amount, or the applicable limit, is the most the Company shall pay. The remainder of the loss will not be paid.

*Archive Copy*

**Authorized Representative OR
Countersignature (In states where applicable)**

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## EQUIPMENT BREAKDOWN SCHEDULE

*The Company shall not be liable for more than the Equipment Breakdown Limit for loss or damage arising from any "one accident".*
*These coverages apply to all locations covered on the policy, unless otherwise specified. Wherever the term "Company" is used in the Equipment Breakdown Endorsement and the form to which it is attached, it shall also mean "Insurer."*

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $ 50,000,000 |
| Sublimits of Liability (sublimits are within, and do not increase, the Equipment Breakdown Limit stated above): | |
| Expediting Expense | $ 25,000,000 |
| Hazardous Substances | $ 1,000,000 |
| Spoilage | $ 2,500,000 |
| Computer Equipment | $ |
| Data Restoration | $ 5,000,000 |
| CFC Refrigerants | $ |
| Business Interruption | $ Included |
| Extra Expense | $ 25,000,000 |
| Rental Value | $ Included in Business Interruption |
| Contingent Business Interruption: Suppliers and/or Receivers of the Insured's Goods or Services | $ 25,000,000 |
| "Service Interruption" | $ 25,000,000 |

| Deductibles | |
|---|---|
| Combined, All Coverages | $ 250,000 |

*If a Combined, All Coverages deductible is not entered above, the following deductibles are applicable:*

| | | |
|---|---|---|
| Direct Coverages | $ | |
| Indirect Coverages | $ | : or hours; or times ADV. |
| Spoilage (if no entry, see Direct Coverages) | $ | : or % of loss, $ minimum. |

*Archive Copy*

Extended Period of Restoration: 180 days

Unless the interruption exceeds 24 hours, we will not pay for any loss under "Service Interruption" coverage.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

*Archive Copy*

PR9567 (11/02)

0351

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

It is agreed that the following special terms and conditions apply to this policy:

1. The limit of liability or Amount of Insurance shown on the face of this policy, or endorsed on this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

   The term "occurrence" shall mean, any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism and malicious mischief, or terrorism, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which may not be earlier than the time when the first loss to covered property occurs.

2. The premium for this policy is based upon the Statement of Values provided to the Insurer(s) by or on behalf of the Insured and kept on file by the Insurer(s). In the event of loss under the policy, the liability of the Insurer(s) shall be limited to the least of the following:

   a.) The actual adjusted amount of loss, less applicable deductible(s);

   b.) As respects each location insured by this Policy, One Hundred (100%) percent of the total combined stated values for all categories of covered property (e.g. building, contents) and other covered exposures (e.g., business income, extra expense, rental loss), shown for that location on the latest statement of values or other documentation on file with the insurer.

   c.) Any other Limit of Liability or Sublimit of Insurance or Amount of Insurance specifically stated in this policy to apply to any particular insured loss or coverage or location.

ENDORSEMENT # PR9015

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

POLLUTION, CONTAMINATION, DEBRIS REMOVAL
EXCLUSION ENDORSEMENT

1.    Property Not Covered

This policy does not cover land, land values or water.

2.    Pollution and Contamination Exclusion.

This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

Archive Copy

LEXDOC021
LX0404

Authorized Representative OR
Countersignature (In states where applicable)

0353

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.:  7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY


3.    Asbestos, Dioxin or Polychlorinated Biphenols Exclusions

This policy does not cover -

    a)    Asbestos, dioxin or polychlorinated biphenols (hereinafter
all
    referred to as "Materials") removal from any good,  product  or
    structure unless the asbestos is itself damaged by fire,
lightning,
    aircraft impact, explosion, riot, civil commotion, smoke,
vehicle
    impact, windstorm or hail, vandalism, malicious mischief,
leakage or
    accidental discharge from automatic fire protective system.

    b)    Demolition or increased cost of reconstruction, repair,
debris
    removal or loss of use necessitated by the enforcement of any
law or
    ordinance regulating such Materials;


    c)    Any governmental direction or request declaring that  such
    Materials  present in or part of or utilized  on  any  undamaged
    portion of the insured's property can no longer be used for  the
    purpose  for  which  it was intended or installed  and  must  be
    removed or modified.

The  exception to exclusion 3(a), above,  does not apply  to  payment
for the investigation or defense of any loss, damage or any undamaged
portion  of  the  insured's property can no longer be  used  for  the
purpose for which it was intended

4.    Debris Removal Exclusion

The  Company  will pay the expense within the sum insured  to  remove
debris  of insured property damaged or destroyed by an insured  peril
during the policy term.


*Archive Copy*

Authorized Representative OR
Countersignature (In states where applicable)

LEXDOC021
LX0404

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.:  7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

The Company will not pay the expense to:

a)    Extract contaminants or pollutants from the debris; or

b)    Extract contaminants or pollutants from land or water; or

c)    Remove, restore or replace contaminated or polluted land or water; or

d)    Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5.    Authorities Exclusion

Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

PR9015 (08/06)
LX1093

ENDORSEMENT # 001

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.: 7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

All reference herein to "Tier I", "Tier I Windstorm" or similar "Tier I" references, shall be defined as all locations situated within Tier I States or Counties as specified below:

TIER 1 COUNTIES

Alabama:  Baldwin, Mobile;

Florida:       Entire State of Florida;

Hawaii:       Entire State of Hawaii;

Georgia:  Bryan, Camden, Chatham, Glynn, Liberty, McIntosh;

Louisiana:    Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Mary, St. Bernard, St. Tammany, Terrebonne, Vermilion;

Mississippi:  Hancock, Harrison, Jackson;

North Carolina:    Beaufort, Brunswick, Carteret, Craven, Dare, Hyde, New Hanover, Onslow, Pamlico, Pender;

South Carolina:    Beaufort, Berkley, Charleston, Colleton, Georgetown, Horry, Jasper;

Texas:     Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris (Including the Whole City of Houston), Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, SanPatricio, Victoria, Willacy;

Virginia: Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Suffold, Surry, Virginia Beach, Westmoreland, York;

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404              *Archive Copy*

0356

This endorsement, effective 12:01 AM 06/01/2007

Forms a part of policy no.:  7478516

Issued to: HEALTH MANAGEMENT ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

All Other Terms and Conditions Remain Unchanged.

LEXDOC021
LX0404

```
 ##  #   #    ### ##  ## ###    ####      ####     ## ##
  ## ## # #    ##    ##    #      #   #   #    #   ## #
  #  #  # #    #     #    ######  ######  #    #
  #  #  # #    #     #    #       #       #    #
  #  #  # #   ##     #    #       #       #    #
 ### ## #    ### #  ## ###     #####    #####    ### ###
               #
             ####
```

Job : 456
Date: 8/20/2010
Time: 11:22:27 AM

Date: 06/21/07                                    Policy Number: 7478516

Underwriter Name: BRADLEY WINFIELD

Underwriter Region: NEW YORK

Underwriter Branch: NEW YORK

Underwriter Telephone: (212)770-7000

# LEXINGTON INSURANCE COMPANY
100 Summer Street, Boston, Massachusetts 02110-2103

## BINDER

1. INSURED: HEALTH MANAGEMENT ASSOCIATES, INC.

2. ADDRESS:
5811 PELICAN BAY BOULEVARD

NAPLES      FL 34108

| IMPORTANT |
| --- |
| THIS INSURANCE CANNOT BE CANCELLED FLAT. EARNED PREMIUM MUST BE PAID FOR THE TIME INSURANCE HAS BEEN IN FORCE. |

| 3. | BINDER NUMBER | RENEWAL OF | EFFECTIVE DATE | EXPIRATION DATE |
| --- | --- | --- | --- | --- |
| | 7478516 | 7478035 | 06/01/07 | 06/01/08 |

4.  AMOUNT OF INSURANCE:  100% PART OF $50,000,000 PER OCCURRENCE, WHICH IS IN TURN X/S OF DEDUCTIBLES.

5.  PREMIUM:    $4,900,000  PROPERTY ANNUAL LAYER PREMIUM PLUS

6.  COVERING ON: REAL AND PERSONAL PROPERTY AND BUSINESS INTERRUPTION AND AS FURTHER DEFINED IN THE POLICY.

7.  LOCATION:   AS PER THOSE SUBMITTED ON APRIL 25TH, 2007 & ON FILE WITH THE COMPANY.

8.  TO INDEMNIFY AGAINST LOSS BY: ALL RISK OF DIRECT PHYSICAL LOSS OR DAMAGE, INCL. EQ., FL.,& B&M &  AS FURTHER DEF. IN THE POL. FORM

9.  TERMS AND CONDITIONS:
   A. TOTAL PREMIUM DUE WITHIN THIRTY DAYS OF THE EFFECTIVE DATE OF COVERAGE.
   B. DEDUCTIBLE  $250,000 PER OCCURRENCE, EXCEPT:

   C.       AS PER BINDER DATED 05/29/2007.

10.  INSURED WITH:  LEXINGTON INSURANCE COMPANY
BOUND WITH GEORGE R. STRATTS

This binder is a statement concerning the above insurance as of the date of the issuance of this binder. This binder is subject to policy conditions of any policy(ies) which may be issued by Company and shall be automatically c ancelled and superceded by such policy or policies upon issuance.

Cancellation: This binder may be cancelled by either the insured or Company by written notice to the other.

In the event of cancellation, the earned premium will be computed short rate if cancelled by the insured unless stated in Item 9 above as subject to minimum earned premium, and pro rata if cancelled by Company. If the premium is not paid within the time specified in Item 9 above, the insurance evidenced by this binder shall automatically terminate at the end of the time specified for payment of total premium to Company. Any such automatic termination shall not affect the minimum earned premium provisions of this binder.

BROKER: COOPER GAY RISK SERVICES INC

ADDRESS:  88  PINE ST
         FL 26TH
         NEW YORK         NY 10005-1801

Dated at  NEW YORK         NY
this        day of

**Authorized Representative OR Countersignature (In states where applicable)**

LEXINGTON INSURANCE COMPANY
100 SUMMER STREET
BOSTON                    MA         02110-2103

ADDENDUM

POLICY # 7478516                                          EXPIRY #   7478035

INSURED:   HEALTH MANAGEMENT ASSOCIATES, INC.

ADDRESS:   5811 PELICAN BAY BOULEVARD

           NAPLES                FL    34108

TERM:  012/006              EFFECTIVE:  06/01/07      EXPIRY: 06/01/08

PREMIUM:        $4,900,000

MINIMUM:        $1,225,000       ADJUSTMENT TERMS:   NOT APPLICABLE

ISSUED ON:   06/21/07 AT:   80 PINE STREET            NEW YORK

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

DOC041 (ED. 06/94)  *Archive Copy*
LX6251

0361

# INDEX

Job : 457
Date: 8/20/2010
Time: 11:22:41 AM

Date: 08/20/07                                    Policy Number: 7478516

Underwriter Name: BRADLEY WINFIELD
Underwriter Region: NEW YORK
Underwriter Branch: NEW YORK
Underwriter Telephone: (212)770-7000

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY                                          PLAINTIFF

VS.                                    CIVIL ACTION NO.: _____

ACE UTILITY BORING AND TRENCHING, LLC
DEVINEY CONSTRUCTION COMPANY, INC.,
CENTERPOINT ENTERGY GAS RESOURCES CORPORATION D/B/A
CENTERPOINT ENTERGY MISSISSIPPI GAS
AND JOHN DOES 1 THROUGH 10                                 DEFENDANTS

## COMPLAINT

COMES NOW Plaintiff, Mississippi Farm Bureau Casualty Insurance Company (hereinafter "Farm Bureau") by and through its counsel of record, Deaton & Daniel, P.A., and files its Complaint against Defendants, Ace Utility Boring and Trenching (hereinafter sometimes referred to as "Ace"), CenterPoint Entergy Gas Resources Corporation d/b/a CenterPoint Entergy Mississippi Gas (hereinafter sometimes referred to as "CenterPoint"), Deviney Construction Company, Inc. (hereinafter sometimes referred to "Deviney"), and John Does 1 through 10, and for grounds in support thereof would show unto the Court as follows:

## PARTIES

### I.

Farm Bureau is a domestic insurance corporation qualified and licensed to do business in the State of Mississippi, at all times material or relevant to this cause of action.

**II.**

Defendant Ace Utility Boring and Trenching, LLC is a foreign Limited Liability Corporation incorporated in Tennessee, who may be served with process on behalf of said company by service on its attorney pursuant to Rule 5 of the Mississippi Rules of Civil Procedure.

**III.**

Defendant CenterPoint Entergy Gas Resources Corporation d/b/a CenterPoint Entergy Mississippi Gas is a foreign business corporation incorporated in Delaware, and qualified and registered to do business in the State of Mississippi, who may be served with process through its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101 Flowood, Mississippi, or in any other such manner as allowed by the Mississippi Rules of Civil Procedure.

**IV.**

Defendant Deviney Construction Company, Inc. is a domestic business corporation who is qualified and registered to do business in the State of Mississippi, and may be served with process through its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101 Flowood, Mississippi, 39232 or in any other such manner as allowed by the Mississippi Rules of Civil Procedure.

2

0365

## V.

John Does 1 through 10 are any individuals, businesses, corporation, and/or entities whose identities and/or residence is unknown to Plaintiff and may be responsible through theories of operation, ownership, master/servant control, vicarious liability or otherwise to Farm Bureau for any monies paid out by Farm Bureau for and on behalf of the damages suffered by its insured's. The identities of Defendants John Does 1 through 10, as well as their acts of negligence or wrongdoing, are unknown and cannot be reasonably ascertained at this time.

## JURISDICTION AND VENUE

## VI.

This cause of action occurred or accrued in Neshoba County, Mississippi, and the damages sought fall within the jurisdictional limits of this Court. Therefore, jurisdiction and venue of this action are proper in this Court.

## FACTS

## VII.

Prior to the occurrence hereinafter described, there was in force and effect a certain policy of insurance, being policy number DPA61772, issued by Farm Bureau naming "Vesta Chisolm" as its insured. The property insured by the above-referenced policy is located at 905 Holland Avenue, Philadelphia, Mississippi. By issuing this policy, the Plaintiff undertook and obligated itself

3

0366

to provide certain insurance coverage as specifically provided in said policy.

## VIII.

Prior to the occurrence hereinafter described, there was in force and effect a certain policy of insurance, being policy number B0930257, issued by Farm Bureau naming "Edna Tinsley" as its insured. The property insured by the above-referenced policy is located at 220 Hospital Road, Philadelphia, Mississippi. By issuing this policy, the Plaintiff undertook and obligated itself to provide certain insurance coverage as specifically provided in said policy.

## IX.

Prior to the occurrence hereinafter described, there was in force and effect a certain policy of insurance, being policy number HOJ58630, issued by Farm Bureau naming "Janet Perry" as its insured. The property insured by the above-referenced policy is located at 518 Dallas Street, Philadelphia, Mississippi. By issuing this policy, the Plaintiff undertook and obligated itself to provide certain insurance coverage as specifically provided in said policy.

## X.

Prior to the occurrence hereinafter described, there was in force and effect a certain policy of insurance, being policy number HO896348, issued by Farm Bureau naming "Abby Payne" as its

4

0367

insured. The property insured by the above-referenced policy is located at 516 Dallas Street, Philadelphia, Mississippi. By issuing this policy, the Plaintiff undertook and obligated itself to provide certain insurance coverage as specifically provided in said policy.

## XI.

On or about September 15, 2007, a natural gas line exploded at a medical complex in Philadelphia, Mississippi. As a result of this explosion, the Plaintiff's insureds Vesta Chisolm, Edna Tinsley, Janet Perry and Abby Payne sustained certain damages to their property. These properties where located in close proximity to the subject gas explosion. This incident occurred as a result of Ace, who while in the course and scope of its employment with Deviney, negligently ruptured a gas line while performing boring trenching, or other work for Deviney. This line was maintained by CenterPoint. As a result of the ruptured gas line, natural gas leaked into the sewer system thus causing the subject explosion. CenterPoint was made aware of said leaking natural gas, but did not adequately or timely respond to repair the dangerous leaking gas line. As a result of the leaking gas line and subsequent explosion, the Plaintiff's insured's property was damaged.

## XII.

As a direct and proximate result of the subject explosion, Vesta Chislom suffered property damage in the amount of

5

0368

$35,925.99; Edna Tinsley suffered property damage in the amount of $11,440.33, Janet Perry suffered property damage in the amount of $8,068.33, and Abby Paine suffered property damage in the amount of $1,072.32. Pursuant to the contracts entered into between the Plaintiff, Farm Bureau, and Vesta Chislom, Edna Tinsley, Janet Perry, and Abby Paine, Farm Bureau was obligated to pay $56,506.97 in property damage on behalf of its insureds as a proximate consequence of the negligence and wrongful acts of the Defendants. As part of its policy of insurance with its insureds, and Mississippi case law regarding subrogation, Farm Bureau is subrogated for payments it has made to its insured as a result of the negligence of the Defendants.

## XIII.

Defendants, Ace Utility, CenterPoint, Deviney and John Does 1-10 were negligent at the time and place of the subject accident. More particularly, the negligence of the Defendants includes but is not limited to the following:

1. In preparation for the boring and trenching work performed by Ace during the course and scope of its employment with Deviney, CenterPoint failed to properly mark said natural gas lines to insure that they were not damaged by said boring and trenching work;

2. Defendant CenterPoint was negligent in failing to adequately and timely respond to complaints of said

6

0369

natural gas leak despite its duty to do so, which allowed the natural gas to leak into the sewer system which ultimately caused the explosion and resulting damage;

3. Defendant CenterPoint was negligent in maintaining and designing the subject gas line;

4. Defendant Ace, while in the course and scope of employment with Deviney, was negligent in its boring and trenching operation as it failed to adequately monitor and insure that the line that was being bored would not strike an underground gas line;

5. Defendant Ace, while in the course and scope of employment with Deviney, was negligent in its failure to adequately and timely notify the appropriate party or parties to repair the ruptured and leaking natural gas line, which ultimately led to the explosion;

6. Defendant Ace, while in the course and scope of employment with Deviney, negligently performed trenching and boring work causing its equipment to come into contact with the subject natural gas lines, which lead to the explosion and subsequent damage to the Farm Bureau insured's property. Furthermore, Deviney, is responsible for the acts of Ace under the theory of respondeat superior;

7

0370

7. Defendant Deviney hired Defendant Ace Utility to perform trenching and boring services at the site of the explosion, and failed to maintain the premises where the trenching was being performed in a safe manner;

8. Defendant Deviney hired Defendant Ace Utility to perform trenching and boring services at the site of the explosion, and failed to supervise Ace in its trenching and boring activities;

9. Defendant Deviney breached its duty to insure that the subject gas lines had been properly marked by the appropriate entities prior to beginning trenching or boring activities; and

10. Other acts of negligence on the part of all Defendants to be shown during discovery and at the trial of this case.

The foregoing acts of negligence were the proximate cause of the damages to the building insured by the Plaintiff.

**DAMAGES**

**XIV.**

That as a direct and proximate result of the aforesaid negligent acts of Defendants Ace Utility, CenterPoint, Deviney and John Does 1-10, as hereinabove set forth, Plaintiff, Mississippi Farm Bureau Casualty Insurance Company, made payments totaling $56,506.97, pursuant to its contract of insurance with

8

0371

Vesta Chislom, Edna Tinsley, Janet Perry, and Abby Paine, to remedy the damages caused by the negligent and wrongful acts of all Defendants, jointly and severally, including but not limited to Ace Utility, CenterPoint, Deviney and John Does 1-10. To the extent of said payments, Plaintiff, Mississippi Farm Bureau Casualty Insurance Company, became entitled to be, and has become, subrogated to all rights and causes of actions of its insureds, Vesta Chislom, Edna Tinsley, Janet Perry, and Abby Paine, pursuant to the aforesaid contract of insurance.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands judgment of and from Defendants, Ace Utility, CenterPoint, Deviney and John Does 1-10, jointly and severally, in the sum of at least $56,506.97, plus pre-judgment interest, post-judgment interest, all costs expended herein, and attorneys' fees.

THIS the 30th day of August, 2010.

Respectfully submitted,

MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY

By: _David F. Berry IV_____
JOE S. DEATON, III, MSB #8839
DAVID F. BERRY, IV, MSB #102990
ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

DEATON & DANIEL, P.A.
P. O. Box 320099
Flowood, Mississippi 39232
Telephone: (601) 988-0000
Facsimile: (601) 988-0001

9

0372

IN THE CIRCUIT COURT OF NESHOBA COUNTY
STATE OF MISSISSIPPI

JESSE MOORE AND GLADYS MOORE                        PLAINTIFFS

VS.                                    CIVIL ACTION NO.: 10-CV-0294-NS-G

DEVINEY CONSTRUCTION COMPANY,
ACE UTILITY BORING AND TRENCHING, LLC
AND JOHN DOE DEFENDANTS 1-10                        DEFENDANTS

## COMPLAINT

COMES NOW, Jesse and Gladys Moore, Plaintiffs in the above described and

through their attorneys of record and files this their complaint against Deviney Construction

Company, Inc., Ace Utility Boring and Trenching, LLC and John Doe Defendants 1-10 and

in support thereof would respectfully show unto this Court as follows, to-wit:

PARTIES

1      The parties to this action are as follows:

    a.      Plaintiffs, Jesse Moore (hereinafter referred to as "Jesse") and Gladys
Moore (hereinafter referred to as "Gladys") are both adult resident
citizens of Neshoba County, Mississippi and who reside more
particularly at 10510 Road 155, Philadelphia, Mississippi, 39350.

    b.      Defendant, Deviney Construction Company, Inc. (hereinafter referred
to as "Deviney") is a corporation authorized to do business in the
State of Mississippi, whose principal office address is P.O Box 6717,
Jackson, Mississippi and who may be served with process by and
through its Registered Agent, CT Corporation System, at 645
Lakeland Drive East, Suite 101, Flowood, Mississippi 39232

    c       Defendant, Ace Utility Boring and Trenching, LLC (hereinafter referred
to as "Ace") is a foreign corporation doing business in and registered
in the State of Tennessee  At the time the cause of action occurred,
Ace was not qualified to conduct business in the State of Mississippi.

    d       John Doe Defendants 1-10 are individuals whose identity is unknown
to the Plaintiffs but whose wrongful conduct may have caused in part
the damages to the Plaintiffs.  Upon learning the identity of such,
Plaintiffs will amend to address this or these individuals.

FILED

SEP 10 2010

TIME
PATTI DUNCAN LEE
CIRCUIT CLERK

0373

<u>JURISDICTION AND VENUE</u>

2. Jurisdiction and venue in this matter lies with the Neshoba County Circuit Court, pursuant to <u>Mississippi Code Annotated</u> § 9-7-81 and venue is proper in Neshoba County because the acts and injuries occurred, in whole or in part, in Neshoba County.

<u>STATEMENT OF FACTS</u>

3. On September 15, 2007, Deviney was given authority by AT&T of Mississippi to bury a utility line near the East right-of-way of Holland Avenue. At the hand and direction of Deviney, Ace commenced its boring operation near a building located at 566 Holland Avenue. While performing the boring of this utility, Ace struck several utilities and a gas line. The gas line was owned and operated by CenterPoint. After the buried utilities and gas line were struck by Ace, gas escaped the metal gas line into the breached sewer lines and entered into the building at 566 Holland Avenue. Three (3) hours after the breach, the gas which entered in the building at issue ignited causing a horrific explosion. The explosion severely damages the vehicle owned by Jesse and Gladys.

<u>CLAIMS AGAINST DEVINEY AND ACE</u>

4. Because of the negligent acts of Deviney and Ace in breaching a marked gas line and other utilities, Jesse and Gladys' vehicle was severely damaged.

5. Deviney and Ace owed Jesse and Gladys a duty to conduct their boring operation with the highest degree of skill and care

6. Despite such duty owed, Deviney and Ace failed to so such and caused a horrific event

7. Deviney and Ace's breach of duty is the direct and proximate cause of the explosion and injury to Jesse and Gladys.

8    Further, Deviney and Ace failed to properly train, retain and supervise its employees which caused the injury to Jesse and Gladys and further negligently hired such employees

DAMAGES

9.   Jesse and Gladys lost the value of their vehicle, use of their vehicle, expenses and costs to obtain a replacement vehicle and attorney's fees in recovering their loss.

10   Jesse and Gladys' injuries include, but one not limited to, the loss of a Ford Escort, loss of use of said vehicle, expenses and costs in obtaining a replacement vehicle and attorney's fees incurred in obtaining relief for their loss

11   Jesse and Gladys are entitled to punitive damages because of the acts and omission of Deviney and Ace and refusal of Deviney and Ace to compensate them

WHEREFORE PREMISES considered, Jesse and Gladys Moore pray for relief in the form of money damages in an amount determined appropriate by this Court and for any other general and specific relief so deemed appropriate by this Court

Respectfully submitted, this the 10 day of September, 2010

JESSE MOORE AND GLADYS MOORE

By: _____
WADE WHITE, Attorney for Jesse Moore and Gladys Moore

FILED

SEP 10 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

WADE WHITE, Attorney
JORDAN & WHITE, ATTORNEYS PLLC
P O Drawer 459
Philadelphia, MS 39350
Telephone: (601) 656-2451
Facsimile: (601) 656-2458
wadewhite@bellsouth.net
MS State Bar No. 101580

IN THE CIRCUIT COURT OF NESHOBA COUNTY
STATE OF MISSISSIPPI

JESSICA MOORE                                    PLAINTIFF

V.                                               CAUSE NO.: 10-CV-0295-NS-G

DEVINEY CONSTRUCTION COMPANY., INC.;
ACE UTILITY BORING AND TRENCHING, LLC;
CENTERPOINT ENERGY RESOURCES CORP.,
d/b/a CENTERPOINT ENERGY MISSISSIPPI
GAS; and DOE DEFENDANTS 1-10                      DEFENDANTS

## COMPLAINT

COMES NOW, Jessica Moore, the Plaintiff in the above-styled and numbered cause,

by and through her attorneys of record and files this her Complaint against **Deviney**

**Construction Company, Inc.** (hereinafter "Deviney"); **Ace Utility Boring and Trenching,**

**LLC** (hereinafter "Ace"); **Centerpoint Energy Resources Corp. d/b/a Centerpoint**

**Energy Mississippi Gas** (hereinafter collectively "Centerpoint"); and **Doe Defendants 1-10,**

and in support therefore would respectfully show unto the Court the following, to-wit:

**PARTIES**

1.      Plaintiff, Jessica Moore (hereinafter referred to as "Jessica"), is an adult

resident citizen of the City of Jackson, Hinds County, Mississippi. At the time of the incident

that gave rise to the cause of action in this matter, Jessica was a resident of Neshoba County,

Mississippi.

# FILED

SEP 1 0 2010

Page -1-        TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

0377

2.    The Defendant Deviney Construction Co. Inc. (hereinafter referred to as "Deviney") is a domestic corporation organized and exiting under the laws of the State of Mississippi. Deviney's principal office address is Post Office Box 6717, Jackson, Mississippi 39282-6717. Diviney may be served with the process of the this Court by serving its Registered Agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, City of Flowood, Rankin County, Mississippi 39232.

3    The Defendant, Ace Utility Boring & Technology, LLC (hereinafter referred to as "Ace"), is a foreign corporation organized and exiting under the laws of the State of Tennessee but was at the time of the incident giving rise to the cause of action in this matter an unregistered foreign corporation, operating and conducting business in the State of Mississippi without the authority to do such. Ace's principal place of business is located at 929 Airways Boulevard, Jackson, Tennessee 38301 Ace may be served with the process of this Court by service upon its Registered Agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

4.    The Defendant, Centerpoint Energy Resources Corp., doing business as Centerpoint Energy Mississippi Gas (hereinafter referred to as "Centerpoint"), is a foreign corporation organized and existing under the laws of the State of Delaware. Centerpoint is authorized to do, and at all times relevant herein, was doing business within the State of Mississippi. Centerpoint's principal place of business is located at 111 Louisiana Street, Houston, Texas 77002 and may be served with the process of this Court by serving its

0378

Registered Agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, City of Flowood, Rankin County, Mississippi 39232.

5.	Doe Defendants 1-10 are presently unknown to the Plaintiff, whose wrongful conduct may have caused in part the injuries and damages to the Plaintiff, all of whose true and correct names are unknown to the Plaintiff at this time. However, the names of the Doe Defendants will be substituted by amendment when ascertained.

**JURISDICTION**

6.	This Court has subject matter jurisdiction of this action pursuant to the provisions of MCA § 9-7-81 by virtue of the fact that the amount in controversy exceeds $200.00, and this action arises under the Constitution and laws of this State, which are not exclusively cognizable in some other Court.

7.	This Court has *in personam* jurisdiction of the Defendants by virtue of the following facts and laws:

(1)	Deviney subjected itself to the *in personam* jurisdiction of this Court by virtue of the facts that it is a domestic corporation of the State of Mississippi, is qualified to do, and is doing business in the State of Mississippi, with its principal office address being Post Office Box 6717, Jackson, Mississippi 38982, and has appointed as its Registered Agent therein, CT Corporation System upon which valid service of this Complaint can be made at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232;

Page -3-

(2) Ace subjected itself to the *in personam* jurisdiction of this Court by virtue of the fact that it committed a tort in whole or in part in this state against a resident of this state and who was doing business or performing any character of work or service in this state and is therefore, pursuant to MCA § 13-3-57, by such acts deemed to be doing business in Mississippi, and shall thereby be subjected to the jurisdictions of this state.

(3) Centerpoint subjected itself to the *in personam* jurisdiction of this Court by virtue of the facts that it is qualified to do and is doing business in the State of Mississippi, and has appointed as its registered agent therein for service of process, CT Corporation System at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## VENUE

8. This Court has venue of this action pursuant to MCA § 11-11-3 (1)(a)(i), in that a substantial alleged act or omission occurred and/or where a substantial event that caused the injury occurred in Neshoba County, Mississippi.

## UNDERLYING FACTS

9. Jessica was a customer in the Diva Reflections Hair Salon (hereinafter referred to as "hair salon"), which was one of four businesses that occupied a single building on

0380

Holland Avenue in Philadelphia, Mississippi. The hair salon was the only business occupied by people at the time of the explosion complained of herein. At the time of the explosion at issue, Jessica was in the hair salon.

10. At all times complained of herein, Centerpoint owned, operated and maintained gas pipelines that supplied gas to the hair salon and other homes and businesses near 566 Holland Avenue in the City of Philadelphia, Neshoba County, Mississippi.

11. At some time subsequent to September 15, 2007, Deviney engaged Ace to install an underground communication line in close proximity to Centerpoint's underground steel gas lines in an area near 566 Holland Avenue in the City of Philadelphia, Neshoba County, Mississippi.

12. Between 7:00 and 7:30 a.m. on September 15, 2007, near 566 Holland Avenue in the City of Philadelphia, Neshoba County, Mississippi, Deviney and Ace's construction crews began a boring job to install a telephone cable for AT&T, along the east side of Holland Avenue. The general direction of their boring direction was from South to North. During the process of the boring by Deviney and Ace, the Centerpoint gas main was struck at approximately 8:15 to 8:20 a.m., breaching the two and three-eighths (2-3/8) inch steel cased main owned and operated by Centerpoint.

13. After the gas line was damaged, an Ace employee attempted to contact Centerpoint to report the damage at approximately 8:28 a.m. and again at 8:30 a.m. The same Ace employee then contacted the Philadelphia Police Department and reported that the

Page -5-

0381

gas line had been struck and requested that Centerpoint be notified. During this time, the Ace employee and other members of the Ave boring crew remained at the boring job on South Holland Avenue. At approximately 8:38 a.m. the local Centerpoint employee was contacted by the Philadelphia Police Department and at approximately 8:45 a.m the Centerpoint call center located in or near Houston, Texas was contacted and notified of the gas leak. At approximately 9:18 a.m the local Centerpoint employee arrived at the scene where the gas line had been breached The scene was investigated by the local Centerpoint employee, Ace employees, local police officers and local fire department personnel. A repair crew of Centerpoint was requested to repair the gas leak at approximately 9:35 a.m. The repair crew left Laurel, Mississippi in route to Philadelphia at approximately 11:00 a.m. The Centerpoint employee informed the police and fire personnel that the repair crew would make the repairs to the gas breach and advised the police and fire department to leave the scene. Police and fire personnel left the scene at approximately 10:05 to 10:15 a.m.

14. Prior to the police and fire personnel being advised to leave the scene, gas was detected in the sewer system of the building at 566 Holland Avenue and Centerpoint employees advised police and fire personnel NOT to evacuate the area, which included the building at 566 Holland Avenue. At or about 11:38 to 11:40 a.m., the building at 566 Holland Avenue exploded causing mass destruction.

15. Jessica and others were in the building at 566 Holland Avenue when it exploded.

Page -6-

0382

16. As a direct and proximate result of the explosion, Jessica sustained serious and permanent damages, all as set forth herein after.

## NEGLIGENCE OF DEVINEY AND ACE

17. Jessica hereby realleges and incorporates by reference paragraphs 1-16 of her Complaint.

18. Deviney was grossly negligent in failing or refusing to use the highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further acted negligently in failing to advise Ace of any and all information regarding the markings and/or verification of the underground gas pipeline of Centerpoint Additionally, Deviney and Ace failed to employ, train and supervise personnel to use a reasonable degree of care to conduct the boring operators that caused the gas line to be struck and breached.

19. On September 15, 2007, Ace was engaged in the boring into the ground along Holland Avenue in front of the hair salon in an effort to install a underground cable in close proximity to the Centerpoint underground two inch steel gas line. Shortly thereafter, Ace hit the gas line damaging the pipeline owned by Centerpoint and other utilities that were buried. Ace was negligent by failing to or refusing to use the highest degree of skill and care in boring and/or working around the near the underground gas line of Centerpoint and

0383

grossly negligently ruptured Centerpoint's gas line during the process of boring around and near the Centerpoint gas line.

## NEGLIGENCE OF CENTERPOINT

20. Centerpoint was guilty of gross negligence in connection with its duty to exercise the highest degree of skill and care in guarding its underground gas line from explosions and thereby subjected innocent persons, including Jessica, to injuries as a result of the following grossly negligent acts:

(a) It failed to timely respond to the gas leak when it knew that a gas leak would pose a known, imminent and foreseeable danger to the persons in the hair salon, including Jessica;

(b) It failed to warn Jessica of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

(c) It caused Jessica and others to remain in a dangerous environment by failing to evacuate them from the area when it had actual knowledge that gas was entering into the building she and others were in and, further, directed police and fire personnel not to evacuate Jessica and others.

(d) It failed to make repairs or to turn off the supply of gas to the building occupied by Jessica at the time of the explosion within a reasonable time of receiving notice of the gas leak and replaced man hole covers which allowed

Page -8-

0384

gas to continue into the building;

(e) It failed to take proper precautions to evacuate or advise Jessica to evacuate the building she was occupying at the time of the explosion until inspection or corrective measure could occur after timely notification of the gas leak;

(f) It failed to train its employees regarding emergency procedure for gas leaks;

(g) It failed to maintain an effective system to warn the public, including Jessica, of the known damages and risks of gas, including, but not limited to, natural gas leaks and explosions; and

(h) It failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaints of gas leaks.

## CONCURRENT NEGLIGENCE OF ALL DEFENDANTS

21. Deviney, Ace and Centerpoint collectively committed gross negligence as set forth herein resulting in the gas explosion and the injuries and damages sustained by Jessica.

0385

CAUSATION

22. As a direct and proximate result of the acts of omission, commission, and gross concurrent negligence of the Defendants, Jessica sustained serious permanent injuries and out-of-pocket expenses.

DAMAGES

**Compensatory Damages**

23. As a direct and proximate result of the concurrent acts of omission and commission of the Defendants, as set forth above, Jessica sustained the following injuries and damages as a result of the explosion which occurred on September 15, 2007:

(a) While seated in a hair salon in the morning hours of September 15, 2007, she suddenly and without warning experienced a powerful explosion when natural gas, which had escaped through the sewer line into the building, and ignited causing her to be struck by multiple pieces of flying debris, wood slivers, raw materials and other multiple dangerous objects whistling around and bouncing off of her. She was violently thrown out through the building. She barley escaped the building through many hazards. After she had regained control she was able to make her way to the Neshoba County Hospital located near the explosion.

(b) In addition to the immediate shock and injuries sustained by the Plaintiff, she suffered direct injuries to her head, hearing and other parts of her

Page -10-

0386

body from the explosion. Following the explosion, she suffered significant psychiatric and psychological problems which continued to get worse and have now reached the severity level. The psychiatric and psychological problems which she sustained has threatened her ability to continue in her vocation as a teacher, to drive herself, to move about in various activities and settings in the local community, and to be able to leave her home in order to perform different activities, particularly entering into large buildings.

(c)     Beginning with the explosion Jessica was subjected to on September 15, 2007 to date, she has continued to suffer from panic attacks and has been diagnosed with (1) panic disorder; (2) post traumatic stress disorder; and (3) depression.

(d)     She has suffered, suffers, and will continue to suffer pain and mental anguish for the remainder of her natural life.

(e)     She was forced to seek medical care and attention for the treatment of the injuries sustained by her and has incurred expenses for necessary and reasonable health care services up to the present date in an amount in excess of $13,000.00. She avers on information and belief, that she will be forced to incur future and future medical expenses for the treatment of the injuries sustained by her in the explosion of September 15, 2007, for the balance of her natural life.

Page -11-

0387

(f)     At the time of the occurrence complained of, Jessica was 24 years of age, gainfully employed and had a life expectancy of 53.9 years according to the *Vital Statistics of the United States 2007*. As a direct and proximate result of the injuries sustained by her, her earning capacity has been permanently impaired and she has been caused to lose income from the date of said occurrence up to the present time in excess of $3,966.00 and is informed, and therefore avers on information and belief that she will be caused to lose future and further income for the balance of her work-life expectancy of 34.4 years

(g)     Based upon Jessica's diagnosed injuries, she will continue to incur future and further expenses for treatment of her injuries for her life expectancy. Based upon the amount of medical bills incurred for the last two (2) years, Jessica's annual costs totals $6,539.00. Her life expectancy thereafter is 51 years, assuming that she will be required to expend at least $6,539.00 per year for her total medical bills would be $333,490.00.

(h)     Jessica was caused to incur mileage expenses and will incur mileage expenses in the future for travels for medical treatments estimated to be $7,500.00.

(i)     Jessica will continue to suffer pain, discomfort, panic disorder, major depressive disorder, post traumatic stress disorder, and traumatic brain injury with hearing loss, all as result of the negligence of the Defendants.

Page -12-

0388

(j)    Jessica has sustained severe pain and mental suffering as a result of the aforesaid occurrence and therefore her ability to enjoy the normal and regular pursuits of an active life have been permanently and seriously impaired

### EXEMPLARY DAMAGES

24.    The concurrent acts of Deviney, Ace, and Centerpoint in maintaining and/or confining the natural gas in a dangerous condition at a time when it knew or should have known by the exercise of reasonable diligence that the escape of the gas into the building in which the Plaintiff was situated and to warn the Plaintiff of the danger when the Defendants knew or should have known by the exercise of reasonable diligence that once the underground gas pipeline was ruptured it would likely cause injuries to Jessica, all of which evidenced a complete and total disregard for the safety and well being of Jessica and amounted to willful and wanton conduct and/or gross negligence on the part of each Defendants.

25.    Jessica is therefore entitled to an award of punitive damages of and from Deviney, Ace, and Centerpoint for the purpose of punishing the egregious conduct of each of the Defendants and in preventing similar conduct by said Defendants and others similarly situated in the future.

0389

## AD DAMNUM

**WHEREFORE,** Jessica Moore now brings this her action against Deviney Construction Company, Inc., Ace Utility Boring and Trenching, LLC, and Centerpoint Energy Resources Corp. d/b/a Centerpoint Energy Mississippi Gas, and Doe Defendants 1-10, and demands judgment of and against said Defendants for the damages sustained by Jessica Moore, to include:

1. Compensatory damages in an amount in excess of $75,000.00, exclusive of interest and costs sufficient to provide reasonable compensation to Jessica Moore;

2. Punitive damages in an amount sufficient to punish the egregious conduct of each of the Defendants and to deter similar conduct in the future by each of the Defendants and others similarly situated; and

3. All coss of Court herein expended.

WILLIAM LISTON, ESQ. (MB #1277)
LISTON/LANCASTER, PLLC
Post Office Box 645
Winona, Mississippi 38967
Telephone: 662-283-2132
Facsimile: 662-283-3742
Email: bliston@listonlancaster.com

**ATTORNEY FOR JESSICA MOORE**

FILED

SEP 1 0 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

0390

OF COUNSEL

LISTON/LANCASTER, PLLC
Post Office Box 645
Winona, Mississippi 38967
Telephone: 662-283-2132
Facsimile: 662-283-3742
Email: bliston@listonlancaster.com

0391

# IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,
as subrogee of PRINCE HOLDING
COMPANY, INC., PRINCE HOLDING
COMPANY, INC., individually,
NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,
as subrogee of DIXIE OIL COMPANY of ALABAMA,
and DIXIE OIL COMPANY of ALABAMA,
individually,

Plaintiffs,

v.

ACE UTILITIES BORING &
TRENCHING, LLC, and
DEVINEY CONSTRUCTION,

Defendants.

CV-2010- CV-0303-NS-C

**FILED**

SEP 14 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

## COMPLAINT

COME NOW the plaintiffs Nationwide Agribusiness Insurance Company, ("Nationwide Agribusiness"), as subrogee of Prince Holding Company, Inc. ("Prince"), Nationwide Agribusiness Insurance Company, as subrogee of Dixie Oil Company of Alabama, ("Dixie"), Prince Holding Company, Inc. and Dixie Oil Company of Alabama and files this Complaint against the Defendants in this cause. The Plaintiffs would show unto this Court as follows, to wit:

## PARTIES

1. Plaintiff Nationwide Agribusiness Insurance Company is an Ohio corporation doing business in Neshoba County, Mississippi.

2. Plaintiff Prince Holding Company, Inc. is a Mississippi corporation with its principal place of business located in Philadelphia, Mississippi.

3. Plaintiff Dixie Oil Company of Alabama is a Mississippi corporation with its principal place of business located in Meridian, Mississippi.

4. Defendant Ace Utilities Boring & Trenching, LLC, ("Ace") is a Tennessee corporation doing business in Neshoba County, Mississippi.

0392

5. Defendant Deviney Construction ("Deviney") is a Mississippi corporation with its principal place of business located in Jackson, Mississippi.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to Miss Code Ann Section 9-7-81. Venue is proper in this Court pursuant to Miss. Code Ann. Section 11-11-3.

## FACTUAL BACKGROUND

7. On or about September 15, 2007, the named defendants were drilling near natural gas lines in Neshoba County, Mississippi when they caused a break in said lines

8. As a result of the break in the gas lines, gas seeped into an adjacent sewer line and an explosion occurred.

9 As a result of the explosion, real property owned by plaintiffs Prince and Dixie was damaged. The damaged property owned by Prince is located at 150 Hospital Road, Philadelphia, Ms. The damaged property owned by Dixie is located at 918 and 920 Holland Avenue, Philadelphia, Ms.

10 Pursuant to its contract of insurance with Prince and Dixie, Nationwide Aribibusiness paid $28,117.44 for the damage to the Dixie property, and $6,982.07 for the damage to the Prince property In addition, Prince and Dixie each were required to pay $5,000 deductibles towards the above described payment for the damage

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

The plaintiffs adopt and incorporate by reference as if expressly set forth herein all of the material allegations and averments contained above and further states:

11. Defendants Ace and Deviney negligently performed underground drilling without undertaking adequate safety measures and caused damage to the Prince and Dixie property.

12. As a proximate result of Ace's and Deviney's negligence, plaintiff Nationwide Agribusiness was caused to suffer damages in that it incurred repair expenses for the damages caused by the actions of the defendants.

## AD DAMNUM

WHEREFORE, PREMISES CONSIDERED, the plaintiffs pray for judgment against the Defendants in the amounts as follows:

$28,117 44 for the damaged caused to the property owned by Dixie Oil Company of Alabama; and

$6,982 07 for the damaged caused to the property owned by Prince Holding Company, Inc.

Respectfully submitted, this the 14th day of September, 2010

Vincent J. Bodin (MS Bar # 10616)
Attorney for Plaintiffs
Law Office J. Michael Crouch
3800 Colonnade Pkwy., Ste. 475
Birmingham, Alabama 35243
(205) 970-5995
(205) 970-4986 FAX
E-mail:bodinv@nationwide com

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

ALICE L. PINKSTON;
ALICE S. PINKSTON, a Minor,
By and Through Her Mother and
Natural Guardian, ALICE L. PINKSTON;
SHA'NEQUA PINKSTON, a Minor,
By and Through Her Mother and
Natural Guardian, ALICE L. PINKSTON; and
OMARRI HOLLIDAY, a Minor,
By and Through Her Grandmother and
Natural Guardian, ALICE L. PINKSTON

**FILED**

JAN - 9 2009

BARBARA DUNN, CIRCUIT CLERK

_____ D.C.

BY_____

                                   **PLAINTIFFS**

CIVIL ACTION NO. 251-09-40CIV

VS.

DEVINEY CONSTRUCTION COMPANY,
INC.; ACE UTILTY BORING AND TRENCHING,
LLC; CENTERPOINT ENERGY
RESOURCES, CORP. D/B/A CENTERPOINT
ENERGY MISSISSIPPI GAS;
AND FICTITIOUS                             **DEFENDANTS**
DEFENDANTS 1-10

### C O M P L A I N T

### [JURY TRIAL REQUESTED]

COME NOW the Plaintiffs, ALICE L. PINKSTON; ALICE S. PINKSTON, a Minor, By and Through Her Mother and Natural Guardian, ALICE L. PINKSTON; SHA'NEQUA PINKSTON, a Minor, By and Through Her Mother and Natural Guardian, ALICE L. PINKSTON; and OMARRI HOLLIDAY, a Minor, By and Through Her Grandmother and Natural Guardian, ALICE L. PINKSTON, and by and through their attorneys of record, and file this, their Complaint against Defendants, DEVINEY CONSTRUCTION COMPANY, INC. (hereinafter referred to as "Deviney"); ACE UTILITY BORING AND

TRENCHING, LLC (hereinafter referred to as "Ace"); CENTERPOINT ENERGY RESOURCES, CORP. d/b/a CENTERPOINT ENERGY MISSISSIPPI GAS (hereinafter referred to as "CenterPoint"); and, Fictitious Defendants 1-10, and for grounds would show unto this Honorable Court the following, to-wit:

## PARTIES

1. Plaintiff, ALICE L. PINKSTON, is an adult resident citizen of Union, Newton County, Mississippi and currently resides at 20454 Highway 489, Union, MS 39365.

2. Plaintiff, ALICE S. PINKSTON, is a minor resident citizen of Union, Newton County, Mississippi and currently resides with her mother at 20454 Highway 489, Union, MS 39365.

3. Plaintiff, SHA'NEQUA PINKSTON, is a minor resident citizen of Union, Newton County, Mississippi and currently resides with her mother at 20454 Highway 489, Union, MS 39365.

4. Plaintiff, OMARRI HOLLIDAY, is a minor resident citizen of Union, Newton County, Mississippi and currently resides with her grandmother at 20454 Highway 489, Union, MS 39365.

5. Defendant, DEVINEY CONSTRUCTION COMPANY, INC. is a domestic corporation organized and existing under the laws of the State of Mississippi, with a principal office address of Post Office Box 6717, Jackson, Mississippi 39282-6717. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

6. Defendant, ACE UTILITY BORING AND TRENCHING, LLC, is a domestic corporation organized and existing under the laws of the State of Tennessee. 'Defendant is authorized to do business within this State, with a principal place of

0396

business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant may be served with process of this lawsuit by serving its registered agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

7. Defendant, CENTERPOINT ENERGY RESOURCES, CORP. D/B/A CENTERPOINT ENERGY MISSISSIPPI GAS, is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

8. Fictitious Defendants 1-10 are unknown defendants, whether individual or corporate, or other entities whose wrongful conduct caused the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but are believed to be employees of named Defendants or other entities who were responsible for the damages herein. The names of these Defendants will be substituted by amendment when ascertained.

### JURISDICTION

9. a) This Court has exclusive subject matter jurisdiction as this action involves claims for monetary damages for personal injuries that occurred within the confines of the State of Mississippi and exceed the jurisdictional minimum of this Court, and this action is between non-diverse citizens. b) Further, the Mississippi Long Arm Statute provides personal jurisdiction over foreign corporations that commit a tort, either in whole or in part, against another, within the State of Mississippi. The subject explosion occurred in Philadelphia, Neshoba County, Mississippi.

## VENUE

10. Pursuant to Miss. Code Ann. 11-11-3, venue is proper before this Court as Hinds County is the principle place of business of in-state Defendant; Deviney Utility Services and Deviney Construction Company, and hence, venue is proper here.

## STATEMENT OF FACTS

11. At all times complained of herein, Plaintiffs were customers in a beauty salon ("Diva Reflections Hair Salon"), which was one of four businesses that occupied a single building on Holland Avenue in Philadelphia, Mississippi. That beauty salon was the only business occupied at the time of the explosion complained of herein. On information and belief, there were ten (10) occupants, including Plaintiffs, Alice L. Pinkston, Alice S. Pinkston, Sha'Nequa Pinkston and Omarri Holliday, in the beauty salon at the time of the subject explosion.

12. At all times complained of herein, Defendant, CenterPoint, owned, operated and maintained the pipelines that supplied gas to the beauty salon and which were involved in and/or which contributed to the subject explosion.

13. On or about September 15, 2007, Ace was performing a boring job to install a telephone cable on Holland Avenue in front of the beauty salon described hereinabove. Shortly thereafter, an operator of Ace hit a gas main damaging the pipeline owned by CenterPoint. Prior to hitting the gas main, the boring bit hit a manhole and/or water or sewer line.

14. On information and belief, Ace was subcontracted by Deviney to install the aforementioned telephone cable. Prior to September 15, 2007, Deviney made a telephone call to the Mississippi One Call Center to locate utilities. However, on information and belief, the gas pipeline was marked but there were no markings

0398

present for the water or sewer lines.

15. Ace did not notify any occupants in the beauty salon of the gas main nor manhole and/or water or sewer line being hit. Further, Ace did not evacuate any of the occupants in the beauty salon after hitting the gas main nor the manhole and/or water or sewer line.

16. After hitting the gas main, as well as hitting a manhole and/or water or sewer line, Ace notified the Philadelphia Police Department. The Philadelphia Police Department contacted CenterPoint to notify them of the gas leak. Gas continued to leak for more than three (3) hours, which later resulted in an explosion of the building, which was occupied by the beauty salon.

17. A service technician for CenterPoint arrived at the scene prior to the explosion but still failed to warn the occupants of the beauty salon of the gas leak and failed to call for evacuation of the area. The service technician was at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line was hit.

18. At all times complained herein, providers of natural gas, including CenterPoint, knew and/or should have known that gas in an extraordinarily dangerous substance.

19. At all times complained of herein, borers working around and/or near gas pipelines, including Deviney and Ace, knew and/or should have known that gas is an extraordinarily dangerous substance.

20. At all times complained of herein, CenterPoint owed to its customers and the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

21. At all times complained of herein, Deviney and Ace owed to the public in

general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near pipelines and manholes and not rupture any gas pipelines, manholes and/or water or sewer lines.

22. At all times complained of herein, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the beauty salon involved in the subject explosion.

23. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint took no immediate and/or urgent action to respond to the gas leak.

24. In addition to any other duty, Deviney owed Plaintiffs: (1) a non-delegable duty to contact the Mississippi One Call Center prior to Ace performing any boring work at the location specified within Plaintiffs' Complaint; (2) a non-delegable duty to properly identify and mark any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; and (3) a non-delegable duty to properly transfer and communicate any and all information regarding the markings and/or verification thereof to Ace.

25. In addition to any other duty, Defendants owed Plaintiffs a duty to warn them of any and all dangers and/or risks associated with the gas leak.

26. In addition to any other duty, CenterPoint owed Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safely rules to respond to a report of a gas leak.

0400

## COUNT I

### NEGLIGENCE

27. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-26 of their Complaint as if fully stated herein.

28. CenterPoint was negligent and/or refused to use the highest degree of skill and care in providing and maintaining its gas pipeline, and failed to timely respond to this disaster, and failed to warn the general public, as well as others act of negligence.

29. Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Ace, and allowing Ace to use unskilled illegal immigrant workers and/or workers with poor English language skills in performing this hazardous operation as well as other acts of negligence which will be shown at the trial of this matter.

30. Ace was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in boring and/or working around and/or near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes and/or water or sewer lines. Additionally, Ace was negligent in allowing untrained and poorly skilled workers to do the boring work and for employing illegal immigrants who could not speak or read English well as this lack of English language skills contributed to the confusion after hitting the gas line in question.

31. CenterPoint, individually, and/or acting with unknown defendants:

 a. failed to warn the general public, and all others act of negligence which will be proven at the trial of this matter.

0401

b. failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to Plaintiffs, Alice L. Pinkston, Alice S. Pinkston, Sha'Nequa Pinkston and Omarri Holliday;

c. failed to warn Plaintiffs of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

d. failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiffs at the time of the explosion within a reasonable time of receiving notice of the gas leak;

e. failed to take proper precautions to evacuate or advise Plaintiffs to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

f. failed to train employees regarding emergency procedures for gas leaks;

g. failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions;

h. failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks; and

i. other acts of negligence to be shown at the trial of this matter.

32. Ace, individually, and/or acting with unknown defendants:

a. failed to warn Plaintiffs, Alice L. Pinkston, Alice S. Pinkston, Sha'Nequa

0402

Pinkston and Omarri Holliday, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

b. failed to take proper precautions to evacuate or advise Plaintiffs to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

c. failed to train employees regarding emergency procedures for gas leaks;

d. failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and

e. failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during borings procedures;

f. employed illegal aliens who were not fluent in English to perform an ultra hazardous duty; and

g. other acts of negligence which will be shown at trial.

33. Defendant, Deviney, individually, and/or acting with unknown defendants failed to adhere to laws, rules and guidelines set by government and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or

0403

ruptured during boring procedures, as well as other acts of negligence which will be shown at the trial of this matter.

34. The Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

35. As a direct and proximate cause of the negligent and tortuous conduct of Defendants, the Plaintiffs suffered serious injury.

36. Plaintiffs neither caused nor contributed to the gas explosion described herein.

## Count II

### RES IPSA LOQUITUR

37. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-36 of their Complaint as if fully stated herein.

38. The Explosion described herein was caused by a gas leaking from the pipeline owned by Defendant, CenterPoint, and in which Defendant, Ace, subcontracted by Defendant, Deviney, was working around and struck to cause a gas leak at the time of the explosion, all of which was in the exclusive control and management of Defendants.

39. The explosion that caused injury to the Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants, and therefore, the doctrine of Res Ipsa Loquitor must apply. b) There is no fault on the part of the Plaintiff.

## COUNT III

### GROSS NEGLIGENCE

40. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-39 of their Complaint as if fully stated herein.

41. Defendant, CenterPoint, failed to warn Plaintiffs, Alice L. Pinkston, Alice S.

Pinkston, Sha'Nequa Pinkston and Omarri Holliday, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to make repairs or to turn off the supply of gas to the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to timely respond to an emergency situation; failed to warn of their use of unskilled illegal immigrant workers with poor English language skills for this hazardous operation; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provisions and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks, as well as other acts of negligence and/or gross negligence which will be proven at the trial of this matter.

42. Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking, and verifying any and all underground lines, including, but not limited to, all electrical, gas, water, sewer, and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof. Deviney further failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or

sewer lines are not struck or ruptured during boring procedures and hiring unqualified untrained subcontractors who used illegal immigrant workers causing undue risk to the general public; and other acts of negligence and/or gross negligence which will be proven at the trial of this matter.

43. Defendant, Ace, failed to warn Plaintiffs, Alice L. Pinkston, Alice S. Pinkston, Sha'Nequa Pinkston and Omarri Holliday, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to take proper precautions to evacuate or advise Plaintiffs to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiffs, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures; failed to employ competent personnel who could read and speak English and were properly trained.

44. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiffs, justifying an award of punitive damages against the Defendants.

**DAMAGES**

**COMPENSATORY DAMAGES**

45. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-44 of her

Complaint as if fully stated herein.

46. As a proximate cause of the acts and omissions of the Defendants, Plaintiffs, Alice L. Pinkston, Alice S. Pinkston, Sha'Nequa Pinkston and Omarri Holliday, suffered serious physical injuries; past, present, and future pain and suffering; past, present and future mental anguish; shock; past, present and future emotional upset; negligent infliction of emotional distress; past, present and future medical expenses; and other injuries and damages to be proven at the trial of this cause.

47. Plaintiffs demand actual or compensatory damages in an amount to be determined by the Trier of fact.

## PUNITIVE DAMAGES

48. Plaintiffs hereby re-allege and incorporate by reference Paragraphs 1-47 of her complaint as if fully stated herein.

49. Pursuant to the Defendants' gross negligence and willful, wanton, and reckless disregard for the life of Plaintiffs, Alice L. Pinkston, Alice S. Pinkston, Sha'Nequa Pinkston and Omarri Holliday, Plaintiffs are entitled to an award of punitive damages to be determined by the Trier of fact.

## RIGHT TO AMEND

50. Pursuant to Rule 15 of the Mississippi Rules of Civil Procedure, Plaintiffs reserve the right to amend this complaint, when appropriate discovery is concluded.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand a judgment against the Defendants, either individually and/or jointly and severally, in an amount as actual or compensatory damages and punitive damages to be determined by the Trier of fact, together with all costs assessed herein. Further, Plaintiffs request any and all other relief which the Court deems appropriate and just under the

0407

circumstances.

    RESPECTFULLY SUBMITTED this, the 8th day of January, 2009.

ALICE L. PINKSTON, et al., Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: _____
             STEPHEN W. MULLINS

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Boulevard, Suite 102  (39564)
Post Office Box 990
Ocean Springs, MS  39566
(228) 875-3175
(228) 872-4819  (fax)

0408

IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI
AT PHILADELPHIA

SHELTER INSURANCE COMPANIES
a/s/o JEAN MARSHALL,
        Plaintiff,

NO: 10 CU 0267 NSG

v

JURY DEMANDED

ACE UTILITY BORING & TRENCHING, LLC;
DEVINEY CONSTRUCTION COMPANY, INC.;
CENTERPOINT ENERGY PIPELINE SERVICES, INC.;
CENTERPOINT ENERGY FIELD SERVICES, INC.;
CERNTERPOINT ENERGY RESOURCES, CORP.; and
JOHN DOES 1-10
        Defendant,

COMPLAINT FOR MONEY DAMAGES

Comes now the Plaintiff and for its Complaint asserts as follows:

## I. PARTIES

1. Shelter Insurance Companies (Shelter) is a Missouri corporation that is authorized to do business in Mississippi. Shelter enjoys certain contractual relationships with Jean Marshall, who resides at 517 Dallas Street, Philadelphia, MS 39350-2103

2. Ace Utility Boring & Trenching, LLC (Ace) is a Tennessee Limited Liability Corporation, who can be served with service of process through its registered agent John W. Moore who is located at 929 Airways Blvd, Jackson, TN 38301

3. Center Point Energy Pipeline Services, Inc.; Center Point Energy Field Services, Inc.; and Center Point Energy Resources, Corp. (collectively hereinafter referred to as "Center Point.") are Delaware Corporations with their principal places of business in Houston, Texas. Center Point may be served through their agent for service of process CT Corporation System located at 645

0409

Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

4. Deviney Construction Company, Inc. (hereinafter referred to as "Deviney") is a Mississippi Corporation that may be served through its agent for service of process CT Corporation System located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## II JURISDICTION AND VENUE

5 For the relief sought herein. Plaintiffs subject themselves to the jurisdiction and venue of this court.

6. This Court has personal jurisdiction over all parties named herein and jurisdiction over the subject matter of this complaint *See*, Art VI, § 156 of the Miss Const 1890 and/or *Miss. Code Ann* § 9-7-81 (Supp. 2000)

7. Further, venue is proper in Neshoba County, Mississippi, pursuant to *Miss Code Ann.* § 11-11-3 (Supp 2004) as this is where a substantial act or omission occurred that led to the damages to the Plaintiff.

## III FACTS

8 On or about September 15, 2007, a main gas line near Jean Marshall's residence exploded

9. This explosion caused damage to Marshall's residence in the amount of $2,479 54

10 Because of this damage, Shelter paid Marshall $2,479.54 to repair her residence pursuant to the contract between Shelter and Marshall

11 At the time of the explosion. Ace, as a subcontractor for the general contractor Deviney, was involved in a trenching operation that cut a gas line owned and maintained by Center Point.

## IV. CAUSES OF ACTION

12. Ace owed Marshall a duty to conduct its trenching operation in a reasonable manner.

0410

13  Ace breached this duty and because of Ace's negligence Marshall suffered damages.

14.  Deviney, through Ace's above mentioned actions, is also negligent under a theory of respondeat superior/vicarious liability.

15.  Furthermore, Deviney owed Marshall a duty to hire a qualified subcontractor.

16  Deviney breached this Duty by hiring Ace and because of Deviney's negligence Marshall suffered damages.

17.  Center Point owed Marshall a duty to reasonably mark its gas pipeline and to maintain it in a safe and proper condition

18  Center Point breached this duty and because of Center Point's negligence Marshall suffered Damages

19  Because of the negligence of Center Point, Ace, and Deviney, Shelter had to pay Marshall $2,479 54 to repair her residence; therefore, Defendants owe Shelter $2,479 54.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that:

a.  Process be issued;

b  Defendants respond in the time allowed by law;

c  Plaintiff be awarded judgment against Defendant for $2,479 54; and

d  For all other applicable relief

RESPECTFULLY SUBMITTED

McDONALD KUHN, PLLC

By: _____
James L. Cresswell, Jr (#102374)
119 South Main Street
Suite 400
Memphis, TN 38103
(901) 526-0606

0411

IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

State Farm Mutual Automobile Ins Co,
as subrogee of NESHOBA BAPTIST ASSOCIATION
        Plaintiff,

VS        CASE NO. _10-CV-0830-NS-C_

ACE UTILITY BORING & TRENCHING, LLC &
DEVINEY CONSTRUCTION COMPANY, INC. &
CENTER POINT ENERGY, INC.
        Defendant,



FILED

JUL 1 2 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

## COMPLAINT

COMES NOW the Plaintiff and files this their complaint against the Defendants, ACE

UTILITY BORING & TRENCHING, LLC & DEVINEY CONSTRUCTION COMPANY,

INC., & CENTER POINT ENERGY, INC. and would show unto this Honorable Court the

following, to wit:

1. The Plaintiff, State Farm Mutual Automobile Ins Co, a corporation organized under

    the laws of a state other than the State of Mississippi but is qualified to do business

    in the State of Mississippi.

2. The Defendant, ACE UTILITY BORING & TRENCHING, LLC is a corporation

    doing buisness in Jackson, Tennessee.

3. The Defendant, DEVINEY CONSTRUCTION COMPANY, INC. is a corporation

    doing business in Flowood, Mississippi.

4. The Defendant, CENTER POINT ENERGY, INC. is a corporation doing business in

    Flowood, Mississippi.

5. Jurisdiction is proper in that the cause of action occurred in NESHOBA, Mississippi.

6. The Plaintiff would show unto this Court that on or about September 15, 2007 while

0412

the equipment owned and/or operated by the Defendant was being operated by ACE UTILITY BORING & TRENCHING, LLC & as the agent, servant and/or employee of DEVINEY CONSTRUCTION COMPANY, INC. in the City of Philadelphia, NESHOBA County, Mississippi the Defendants negligently caused or allowed the equipment they were operating to rupture a gas line or otherwise cause an explosion damaging the real property insured by the Plaintiff. The Defendants were negligent in failing to keep proper look out, failing to train, supervise and control the employees, failing to maintain control in the operation of the equipment, failing to maintain proper distance, failing to properly prepare for the work, failing to conduct due dilligence before hiring contractors and subcontractors, failing to properly mark and give notice of the potential hazard and caused the damages to the real property insured by the Plaintiff, and/or other actions which may be shown during the trial of this matter. The Defendant, DEVINEY CONSTRUCTION COMPANY, INC. negligently entrusted certain duties and obligations to ACE UTILITY BORING & TRENCHING, LLC.

6. As a proximate consequence of said negligence of the Defendants, the Plaintiff was caused to pay the following injuries and damages, pursuant to a contract of insurance, to-wit: Plaintiff was caused to pay for damages caused by the Defendant's negligence, and is now subrogated to the interest of this matter. Plaintiff's insured has an uncompensated deductible which State Farm claims as trustee of its insured. The Plaintiff's insured had property that was greatly bent, broken, crushed, smashed, dented, burned and/or otherwise made less valuable.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the amount of

$8,283.79, attorney's fees, costs of court and any other relief which this Honorable Court may deem just.

Respectfully submitted,

J. Paul Clinton
STOKES & CLINTON, PC
1000 Downtowner Blvd.
P.O. Box 991801
Mobile, AL 36691
Tel: 800.476.8287
Mississippi Bar No: 9269

FILED

JUL 1 2 2010

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

0414

IN THE CIRCUIT COURT OF NESHOBA COUNTY, MISSISSIPPI

EUNEIKA WELLS, A MINOR,
BY AND THROUGH HER MOTHER
AND NEXT FRIEND, RHONDA RUSH                         **PLAINTIFFS**

CAUSE NO.: 08-CV-0015-NS-C

VS.

DEVINEY CONSTRUCTION COMPANY,
INC.; ACE UTILITY BORING AND TRENCHING,
LLC; CENTERPOINT ENERGY PIPELINE
SERVICES, INC.; CENTERPOINT ENERGY FIELD
SERVICES, INC.; CENTERPOINT ENERGY
RESOURCES, CORP.; AND UNKNOWN
DEFENDANTS 1-10

**FILED**

MAR 28 2008

TIME_____ DEFENDANTS
PATTI DUNCAN LEE
CIRCUIT CLERK

## COMPLAINT

### PLAINTIFFS DEMAND TRIAL BY JURY

**COME NOW**, Plaintiffs, hereinabove, by and through their attorneys of record, and file this

their Complaint against Defendants, DEVINEY CONSTRUCTION COMPANY, INC. (hereinafter

"Defendant Deviney"); ACE UTILITY BORING AND TRENCHING, LLC (hereinafter "Defendant

Ace"); CENTERPOINT ENERGY PIPELINE SERVICES, INC.; CENTERPOINT ENERGY

FIELD SERVICES, INC.; CENTERPOINT ENERGY RESOURCES, CORP. (hereinafter

collectively " Defendant CenterPoint"); and, unknown Defendants 1-10, and for grounds would

show unto this Honorable Court the following, to-wit:

### PARTIES

1.  Rhonda Rush, the natural mother of Euneika Wells, a minor child, is an adult

resident citizen of Philadelphia, Neshoba County, Mississippi, whose current resident address is 256

Border Street, Philadelphia, MS 39350.

2.  Euneika Wells, whose date of birth is December 13, 1990, is a minor child and

0415

currently resides with her natural mother at 256 Border Street, Philadelphia, MS 39350, such being within the confines of Neshoba County, Mississippi.

3. Defendant, Deviney Construction Company, Inc., is a domestic corporation organized and existing under the laws of the State of Mississippi, with a principal office address of Post Office Box 6717, Jackson, Mississippi 39282-6717. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

4. Defendant, Ace Utility Boring and Trenching, LLC, is a domestic corporation organized and existing under the laws of the State of Tennessee. Defendant is authorized to do business within this State, with a principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant may be served with process of this lawsuit by serving its registered agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendant, CenterPoint Energy Pipeline Services, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

6. Defendant, CenterPoint Energy Field Services, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

7. Defendant, CenterPoint Energy Resources, Corp., is a foreign corporation organized

0416

and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

8.     Fictitious Defendants 1-10 are unknown defendants, whether individual or corporate, or other entities whose wrongful conduct caused the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be substituted by amendment when ascertained.

## JURISDICTION

9.     This Court has subject matter jurisdiction as this action involves claims for monetary damages for personal injuries that occurred within the confines of Philadelphia, Neshoba County, Mississippi. This Court also has personal jurisdiction as this action is between non-diverse citizens. Further, the Mississippi Long Arm statute provides personal jurisdiction over foreign corporations that commit a tort, either in whole or in part, against another, within the State of Mississippi. The subject explosion occurred in Philadelphia, Neshoba County, Mississippi.

## VENUE

10.     Pursuant to Miss. Code Ann. § 11-11-3, venue is proper before this Court as the actions which produced the injuries in this matter occurred in Philadelphia, Neshoba County, Mississippi. The subject injuries and damages were also sustained in Philadelphia, Neshoba County, Mississippi.

## STATEMENT OF FACTS

11.     On or about September 15, 2007, Plaintiff, Euneika Wells, a minor, was an occupant in Diva Reflections Hair Salon at the time of the subject explosion. Diva Reflections Hair Salon

0417

was one of four businesses that occupied a single building on Holland Avenue in Philadelphia, Mississippi. That beauty salon was the only business occupied at the time of the explosion complained of herein. On information and belief, there were ten (10) occupants, including Plaintiff, Euneika Wells, in the beauty salon at time of the subject explosion.

12. At all times complained of herein, Defendant, CenterPoint Energy, Inc., owned, operated and maintained the pipelines that supplied gas to the beauty salon and which were involved in and/or which contributed to the subject explosion.

13. On or about September 15, 2007, Defendant Ace was performing a boring job to install a telephone cable on Holland Avenue in front of the beauty salon described hereinabove. Shortly thereafter, an operator of Defendant Ace hit a gas main damaging the pipeline owned by Defendant CenterPoint. Prior to hitting the gas main, the boring bit hit a manhole and/or water or sewer line.

14. On information and belief, Defendant Ace was subcontracted by Defendant Deviney to install the aforementioned telephone cable. Prior to September 15, 2007, Defendant Deviney made a telephone call to the Mississippi One Call Center to locate utilities. However, on information and belief, the gas pipeline was marked but there were no markings present for the water or sewer lines.

15. Defendant Ace did not notify any occupants in the beauty salon of the gas main nor manhole and/or water or sewer line being hit. Further, Defendant Ace did not evacuate any of occupants in the beauty salon after hitting the gas main nor manhole and/or water or sewer line .

16. After hitting the gas main, as well as hitting a manhole and/or water or sewer line, Defendant Ace notified the Philadelphia Police Department. The Philadelphia Police Department contacted Defendant CenterPoint to notify CenterPoint of the gas leak. Gas continued to leak for

0418

more than three (3) hours which later resulted in an explosion of the building which was occupied by the beauty salon.

17. A service technician for Defendant CenterPoint arrived at the scene prior to the explosion but still failed to warn Plaintiff, Natalie Woodward, of the gas leak and failed to evacuate Plaintiff from the beauty salon. The service technician was at the scene at the time of the explosion. CenterPoint's repair crew did not arrive at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line were hit.

18. At all times complained of herein, providers of natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

19. At all times complained of herein, borers working around and/or near gas pipelines, including Deviney and Ace, knew and/or should have known that gas is an extraordinarily dangerous substance.

20. At all times complained of herein, CenterPoint owed to its customers and the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

21. At all times complained of herein, Deviney and Ace owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or water or sewer lines.

22. At all times complained of herein, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the beauty salon involved in the subject explosion.

0419

23. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint took no immediate and/or urgent action to respond to the gas leak.

24. In addition to any other duty, Defendant Deviney owed Plaintiffs: (1) a non-delegable duty to contact the Mississippi One Call Center prior to Defendant Ace performing any boring work at the location and time as specified within Plaintiffs' Complaint; (2) a non-delegable duty to properly identify and mark any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (3) a non-delegable duty to properly verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; and, (4) a non-delegable duty to properly transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace.

25. In addition to any other duty, Defendants owed Plaintiffs a duty to warn them of any and all dangers and/or risks associated with the gas leak.

26. In addition to any other duty, Defendant CenterPoint owed Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safety rules to respond to a report of a gas leak.

## COUNT I

### NEGLIGENCE

27. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-26 of their Complaint as if fully stated herein.

28. Defendant CenterPoint was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in providing and maintaining its gas pipelines.

0420

29. Defendant Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Defendant Ace.

30. Defendant Ace was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in boring and/or working around and/or near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes and/or water or sewer lines.

31. Defendant CenterPoint, individually, and/or acting with unknown defendants:

(a) failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to Plaintiff, Euneika Wells;

(b) failed to warn Plaintiff of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

(c) failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiff at the time of the explosion within a reasonable time of receiving notice of the gas leak;

(d) failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

(e) failed to train employees regarding emergency procedures for gas leaks;

(f) failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and,

(g) failed to adhere to laws, rules and guidelines set by governmental and/or other

agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks.

32. Defendant Ace, individually, and/or acting with unknown defendants:

(a) failed to warn Plaintiff, Euneika Wells, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

(b) failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

(c) failed to train employees regarding emergency procedures for gas leaks;

(d) failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and,

(e) failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during boring procedures.

33. Defendant Deviney, individually, and/or acting with unknown defendants failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during boring procedures.

34. The Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

35. As a direct and proximate cause of the negligent and tortious conduct of Defendants, the Plaintiffs suffered serious injury.

36. Plaintiffs neither caused nor contributed to the gas explosion described herein.

## COUNT II

### RES IPSA LOQUITUR

37. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-36 of their Complaint as if fully stated herein.

38. The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace, subcontracted by Defendant Deviney, was working around and struck to cause a gas leak at the time of the explosion, all of which was in the exclusive control and management of Defendants.

39. The explosion that caused injury to the Plaintiffs would not ordinarily occur in the absence of negligence of the Defendants.

## COUNT III

### GROSS NEGLIGENCE

40. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-39 of their Complaint as if fully stated herein.

41. Defendant CenterPoint failed to warn Plaintiff, Euneika Wells, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiff at the time of the explosion within a reasonable time of receiving notice of the gas leak; failed to take proper precautions to evacuate or advise

0423

Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks.

42. Defendant Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Defendant Ace. Defendant Deviney further failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

43. Defendant Ace failed to warn the Plaintiff, Euneika Wells, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to

0424

w am the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

44. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiff, justifying an award of punitive damages against the Defendants.

## DAMAGES

## COMPENSATORY DAMAGES

45. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-44 of their Complaint as if fully stated herein.

46. As a proximate cause of the acts and omissions of the Defendants, Plaintiff Euneika Wells suffered serious physical injuries; past, present and future pain and suffering; past, present and future mental anguish; shock; past, present and future emotional upset; negligent infliction of emotional distress; past, present and future medical expenses; lost wages; and other injuries and damages to be proven at the trial of this cause.

47. Plaintiffs demand actual or compensatory damages in an amount to be determined by the trier of fact.

## PUNITIVE DAMAGES

48. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-47 of their Complaint as if fully stated herein.

0425

49. Pursuant to the Defendants' gross negligence and willful, wanton, and reckless disregard for the life of Plaintiff, Natalie Woodward, Plaintiffs are entitled to an award of punitive damages to be determined by the trier of fact.

## RIGHT TO AMEND

50. Pursuant to Rule 15 of the Mississippi Rules of Civil Procedure, Plaintiffs reserve the right to amend this complaint.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand a judgment against the Defendants, either individually and/or jointly and severally, in an amount as actual or compensatory damages and punitive damages to be determined by the trier of fact together with all costs assessed herein. Further, Plaintiffs request any and all other relief which the Court deems appropriate and just under the circumstances.

RESPECTFULLY SUBMITTED, this the 25th day of _March_, 2008.

**EUNEIKA WELLS, A MINOR, BY AND THROUGH HER MOTHER AND NEXT FRIEND, RHONDA RUSH**, Plaintiffs

BY: THE MARTIN LAW GROUP, PLLC
Their Attorneys

BY: _____
VATERRIA M. MARTIN

**FILED**

MAR 2.8 2008

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

OF COUNSEL:

Vaterria M. Martin (MSB No. 101235)
Kenya R. Martin (MSB No. 101527)
THE MARTIN LAW GROUP, PLLC
5709 Highway 80 West
Jackson, Mississippi 39209
Tele: (601) 923-1577
Fax: (601) 923-1579
E-mail: VMMartin@4MartinsAtLaw.com
       KRMartin@4MartinsAtLaw.com

0426

NATALIE WOODWARD AND MARCUS
WOODWARD                                                                    PLAINTIFFS

VS.                                                      CAUSE NO.: 08-CL-0012-NS-C

DEVINEY CONSTRUCTION COMPANY,
INC.; ACE UTILITY BORING AND TRENCHING,
LLC; CENTERPOINT ENERGY PIPELINE
SERVICES, INC.; CENTERPOINT ENERGY FIELD
SERVICES, INC.; CENTERPOINT ENERGY
RESOURCES, CORP.; AND UNKNOWN
DEFENDANTS 1-10                                                          DEFENDANTS

**FILED**

MAR 2 7 2008

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

## COMPLAINT

### PLAINTIFFS DEMAND TRIAL BY JURY

COME NOW, Plaintiffs, hereinabove, by and through their attorneys of record, and file this

their Complaint against Defendants, DEVINEY CONSTRUCTION COMPANY, INC. (hereinafter

"Defendant Deviney"); ACE UTILITY BORING AND TRENCHING, LLC (hereinafter "Defendant

Ace"); CENTERPOINT ENERGY PIPELINE SERVICES, INC.; CENTERPOINT ENERGY

FIELD SERVICES, INC.; CENTERPOINT ENERGY RESOURCES, CORP. (hereinafter

collectively "Defendant CenterPoint"); and, unknown Defendants 1-10, and for grounds would show

unto this Honorable Court the following, to-wit:

### PARTIES

1.      Plaintiff, Natalie Woodward, is an adult resident citizen of Philadelphia, Neshoba

County, Mississippi and currently resides at 420 Barham Street, Philadelphia, Mississippi 39350.

2.      Plaintiff, Marcus Woodward, is the husband of Plaintiff, Natalie Woodward. Mr.

Woodward is also an adult resident citizen of Philadelphia, Neshoba County, Mississippi and

0427

currently resides at 420 Barham Street, Philadelphia, Mississippi 39350.

3. Defendant, Deviney Construction Company, Inc., is a domestic corporation organized and existing under the laws of the State of Mississippi, with a principal office address of Post Office Box 6717, Jackson, Mississippi 39282-6717. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

4. Defendant, Ace Utility Boring and Trenching, LLC, is a domestic corporation organized and existing under the laws of the State of Tennessee. Defendant is authorized to do business within this State, with a principal place of business at 929 Airways Boulevard, Jackson, Tennessee 38301. Defendant may be served with process of this lawsuit by serving its registered agent, John W. Moore, at 929 Airways Boulevard, Jackson, Tennessee 38301.

5. Defendant, CenterPoint Energy Pipeline Services, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

6. Defendant, CenterPoint Energy Field Services, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

7. Defendant, CenterPoint Energy Resources, Corp., is a foreign corporation organized

-2-

0428

and existing under the laws of the State of Delaware. Defendant is authorized to do business within this State, with a principal place of business at 1111 Louisiana Street, Houston, Texas 77002. Defendant may be served with process of this lawsuit by serving its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

8.     Fictitious Defendants 1-10 are unknown defendants, whether individual or corporate, or other entities whose wrongful conduct caused the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time. The names of these Defendants will be substituted by amendment when ascertained.

## JURISDICTION

9.     This Court has subject matter jurisdiction as this action involves claims for monetary damages for personal injuries that occurred within the confines of Philadelphia, Neshoba County, Mississippi. This Court also has personal jurisdiction as this action is between non-diverse citizens. Further, the Mississippi Long Arm statute provides personal jurisdiction over foreign corporations that commit a tort, either in whole or in part, against another, within the State of Mississippi. The subject explosion occurred in Philadelphia, Neshoba County, Mississippi.

## VENUE

10.     Pursuant to Miss. Code Ann. § 11-11-3, venue is proper before this Court as the actions which produced the injuries in this matter occurred in Philadelphia, Neshoba County, Mississippi. The subject injuries and damages were also sustained in Philadelphia, Neshoba County, Mississippi.

-3-

0429

## STATEMENT OF FACTS

11.    At all times complained of herein, Plaintiff, Natalie Woodward, leased a beauty salon ("Diva Reflections Hair Salon"), which was one of four businesses that occupied a single building on Holland Avenue in Philadelphia, Mississippi. That beauty salon was the only business occupied at the time of the explosion complained of herein. On information and belief, there were ten (10) occupants, including Plaintiff, Natalie Woodward, in the beauty salon at time of the subject explosion.

12.    At all times complained of herein, Defendant, CenterPoint Energy, Inc., owned, operated and maintained the pipelines that supplied gas to the beauty salon and which were involved in and/or which contributed to the subject explosion.

13.    On or about September 15, 2007, Defendant Ace was performing a boring job to install a telephone cable on Holland Avenue in front of the beauty salon described hereinabove. Shortly thereafter, an operator of Defendant Ace hit a gas main damaging the pipeline owned by Defendant CenterPoint. Prior to hitting the gas main, the boring bit hit a manhole and/or water or sewer line.

14.    On information and belief, Defendant Ace was subcontracted by Defendant Deviney to install the aforementioned telephone cable. Prior to September 15, 2007, Defendant Deviney made a telephone call to the Mississippi One Call Center to locate utilities. However, on information and belief, the gas pipeline was marked but there were no markings present for the water or sewer lines.

15.    Defendant Ace did not notify any occupants in the beauty salon of the gas main nor manhole and/or water or sewer line being hit. Further, Defendant Ace did not evacuate any of

-4-

0430

occupants in the beauty salon after hitting the gas main nor manhole and/or water or sewer line.

16. After hitting the gas main, as well as hitting a manhole and/or water or sewer line, Defendant Ace notified the Philadelphia Police Department. The Philadelphia Police Department contacted Defendant CenterPoint to notify CenterPoint of the gas leak. Gas continued to leak for more than three (3) hours which later resulted in an explosion of the building which was occupied by the beauty salon.

17. A service technician for Defendant CenterPoint arrived at the scene prior to the explosion but still failed to warn Plaintiff, Natalie Woodward, of the gas leak and failed to evacuate Plaintiff from the beauty salon. The service technician was at the scene at the time of the explosion. CenterPoint's repair crew did not arrive at the scene until after the explosion, which was more than four (4) hours after the gas main and manhole and/or water or sewer line were hit.

18. At all times complained of herein, providers of natural gas, including CenterPoint, knew and/or should have known that gas is an extraordinarily dangerous substance.

19. At all times complained of herein, borers working around and/or near gas pipelines, including Deviney and Ace, knew and/or should have known that gas is an extraordinarily dangerous substance.

20. At all times complained of herein, CenterPoint owed to its customers and the public in general, including Plaintiffs, a duty to use the highest degree of care to safely provide and maintain its gas pipelines.

21. At all times complained of herein, Deviney and Ace owed to the public in general, including Plaintiffs, a duty to use the highest degree of care to safely bore and/or work around and/or near gas pipelines and manholes and not rupture any gas pipelines, manholes and/or water or sewer

-5-

0431

lines.

22. At all times complained of herein, CenterPoint was responsible for the installation, maintenance, control, operation, inspection, repair and/or monitoring of all of its pipelines, including, but not limited to, the pipelines which provided gas to the beauty salon involved in the subject explosion.

23. Although informed of the gas leak three (3) hours prior to the explosion, CenterPoint took no immediate and/or urgent action to respond to the gas leak.

24. In addition to any other duty, Defendant Deviney owed Plaintiffs: (1) a non-delegable duty to contact the Mississippi One Call Center prior to Defendant Ace performing any boring work at the location and time as specified within Plaintiffs' Complaint; (2) a non-delegable duty to properly identify and mark any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; (3) a non-delegable duty to properly verify any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits; and, (4) a non-delegable duty to properly transfer and communicate any and all information regarding the markings and/or verification thereof to Defendant Ace.

25. In addition to any other duty, Defendants owed Plaintiffs a duty to warn them of any and all dangers and/or risks associated with the gas leak.

26. In addition to any other duty, Defendant CenterPoint owed Plaintiffs a duty to use the highest degree of care to respond to any complaint of gas leaks involving any pipelines provided and/or maintained by it and otherwise act in accordance with rules and guidelines implemented by CenterPoint and other pipeline safety rules to respond to a report of a gas leak.

-6-

0432

<u>COUNT I</u>

NEGLIGENCE

27.     Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-26 of their Complaint as if fully stated herein.

28.     Defendant CenterPoint was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in providing and maintaining its gas pipelines.

29.     Defendant Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Defendant Ace.

30.     Defendant Ace was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in boring and/or working around and/or near gas pipelines, manholes and/or water or sewer lines and not rupturing any gas pipelines, manholes and/or water or sewer lines.

31.     Defendant CenterPoint, individually, and/or acting with unknown defendants:

(a)     failed to timely respond to the gas leak when they knew or should have known that a gas leak posed a known, imminent and foreseeable danger to Plaintiff, Natalie Woodward;

(b)     failed to warn Plaintiff of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

(c)     failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiff at the time of the explosion within a reasonable time of receiving notice of the gas leak;

-7-

0433

(d) failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

(e) failed to train employees regarding emergency procedures for gas leaks;

(f) failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and,

(g) failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks.

32. Defendant Ace, individually, and/or acting with unknown defendants:

(a) failed to warn Plaintiff, Natalie Woodward, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks;

(b) failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak;

(c) failed to train employees regarding emergency procedures for gas leaks;

(d) failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and,

(e) failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not

-8-

0434

limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during boring procedures.

33. Defendant Deviney, individually, and/or acting with unknown defendants failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are struck or ruptured during boring procedures.

34. The Defendants further engaged in such other negligent and wrongful acts of commission and omission as shall be disclosed during the course of these proceedings.

35. As a direct and proximate cause of the negligent and tortious conduct of Defendants, the Plaintiffs suffered serious injury.

36. Plaintiffs neither caused nor contributed to the gas explosion described herein.

## COUNT II
## RES IPSA LOQUITUR

37. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-36 of their Complaint as if fully stated herein.

38. The explosion described herein was caused by gas leaking from the pipeline owned by Defendant CenterPoint and in which Defendant Ace, subcontracted by Defendant Deviney, was working around and struck to cause a gas leak at the time of the explosion, all of which was in the exclusive control and management of Defendants.

39. The explosion that caused injury to the Plaintiffs would not ordinarily occur in the

-6-

0435

absence of negligence of the Defendants.

COUNT III

GROSS NEGLIGENCE

40.     Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-39 of their Complaint as if fully stated herein.

41.     Defendant CenterPoint failed to warn Plaintiff, Natalie Woodward, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to make repairs or to turn off the supply of gas to the building occupied by Plaintiff at the time of the explosion within a reasonable time of receiving notice of the gas leak; failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe provision and handling of natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and supplier response to complaint of gas leaks.

42.     Defendant Deviney was negligent and/or negligently failed and/or refused to use the highest degree of skill and care in identifying, marking and verifying any and all underground lines, including but not limited to, all electrical, gas, water, sewer and/or other lines and/or conduits, and further in transferring and communicating any and all information regarding the markings and/or verification thereof to Defendant Ace. Defendant Deviney further failed to adhere to laws, rules and

-10-

0436

guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

43. Defendant Ace failed to warn Plaintiff, Natalie Woodward, of the dangers and/or risks associated with natural gas and/or a gas leak or leaks; failed to take proper precautions to evacuate or advise Plaintiff to evacuate the building occupied by her at the time of the explosion until inspection or corrective measures could occur after notification of a gas leak; failed to train employees regarding emergency procedures for gas leaks; failed to maintain an effective system to warn the public, including Plaintiff, of the known dangers and risks of gas, including, but not limited to, natural gas leaks and explosions; and, failed to adhere to laws, rules and guidelines set by governmental and/or other agencies, and/or administrative bodies prescribing procedures and guidelines for the safe handling of and boring and/or working around and/or near natural gas instrumentalities, including, but not limited to, monitoring of gas pipelines and ensuring gas pipelines, manholes and/or water or sewer lines are not struck or ruptured during boring procedures.

44. The acts and omissions of the Defendants set forth above constitute gross negligence and/or wanton, reckless disregard for the safety of the public, including Plaintiff, justifying an award of punitive damages against the Defendants.

## DAMAGES

## COMPENSATORY DAMAGES

45. Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-44 of their

-11-

0437

Complaint as if fully stated herein.

46.     As a proximate cause of the acts and omissions of the Defendants, Plaintiff Natalie Woodward suffered serious physical injuries; past, present and future pain and suffering; past, present and future mental anguish; shock; past, present and future emotional upset; negligent infliction of emotional distress; past, present and future medical expenses; property damages, both business and personal; lost wages; and other injuries and damages to be proven at the trial of this cause.

47.     As a proximate cause of the acts and omissions of the Defendants, Plaintiff Marcus Woodward suffered damages for loss of consortium and services of wife, Natalie Woodward, and also suffered lost wages in assisting with the care of his wife as a result of the subject explosion.

48.     Plaintiffs demand actual or compensatory damages in an amount to be determined by the trier of fact.

## PUNITIVE DAMAGES

49.     Plaintiffs hereby reallege and incorporate by reference Paragraphs 1-48 of their Complaint as if fully stated herein.

50.     Pursuant to the Defendants' gross negligence and willful, wanton, and reckless disregard for the life of Plaintiff, Natalie Woodward, Plaintiffs are entitled to an award of punitive damages to be determined by the trier of fact.

## RIGHT TO AMEND

51.     Pursuant to Rule 15 of the Mississippi Rules of Civil Procedure, Plaintiffs reserve the right to amend this complaint.

-12-

0438

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a judgment against the Defendants, either individually and/or jointly and severally, in an amount as actual or compensatory damages and punitive damages to be determined by the trier of fact together with all costs assessed herein. Further, Plaintiffs request any and all other relief which the Court deems appropriate and just under the circumstances.

RESPECTFULLY SUBMITTED, this the 25th day of March, 2008.

NATALIE WOODWARD AND MARCUS WOODWARD, Plaintiffs

BY: THE MARTIN LAW GROUP, PLLC
Their Attorneys

BY: _____
VATERRIA M. MARTIN

OF COUNSEL:

Vaterria M. Martin (MSB No. 101235)
Kenya R. Martin (MSB No. 101527)
THE MARTIN LAW GROUP, PLLC
5709 Highway 80 West
Jackson, Mississippi 39209
Tele: (601) 923-1577
Fax: (601) 923-1579
E-mail: VMMartin@4MartinsAtLaw.com
        KRMartin@4MartinsAtLaw.com

FILED

MAR 2 7 2008

TIME_____
PATTI DUNCAN LEE
CIRCUIT CLERK

-13-

0439