# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

## *Deviney Construction Company, Inc.*

### *vs.*

## *Ace Utility Boring & Trenching, LLC and Pennsylvania National Mutual Casualty Insurance Company D/B/A Penn National Insurance Company*

### 3:11cv468DPJ-FKB

### WITNESS REPORT OF VAN E. HEDGES, CPCU, CRM, CIC, ChFC, CLU, AAI

I have been retained by Deviney Construction Company, Inc. (hereinafter "Deviney"), to study and evaluate documents and other information relating to the events whereby Deviney filed a complaint against Ace Utility Boring & and Trenching, LLC (hereinafter "Ace") and Pennsylvania National Mutual Casualty Insurance Company D/B/A Penn National Insurance Company (hereinafter "Penn National") alleging that Ace breached a contract with Deviney and Penn National breached obligations owed to Deviney under an insurance policy.

This is my Expert Report prepared and submitted in accordance with Rule 26 of the Federal Rules of Civil Procedure and Rule 26.1 of the Uniform District Court Rules for the United States District Courts for the Northern and Southern Districts of Mississippi.

The basic facts in Deviney Construction Company, Inc. vs. Ace Utility Boring & and Trenching, LLC and Pennsylvania National Mutual Casualty Insurance Company D/B/A Penn National Insurance Company (the "Case"), as I understand them, are as follows:

Deviney is an underground utility contractor which performs outside plant utility work for various telecommunication companies in several states. On September 14, 2007, Deviney entered into an Independent Contractor Agreement with Ace ("Agreement") under which Ace was to act as a subcontractor for Deviney. Under this Agreement, Ace agreed to maintain certain liability insurance coverages and to have Deviney shown as an additional insured on its insurance policies. Ace also agreed to indemnify and hold Deviney harmless for liability resulting from work performed by Ace



under the Agreement.  On September 15, 2007, while performing work in Philadelphia, Mississippi assigned to it by Deviney, Ace bored into a gas line owned by Centerpoint Energy Resources Corp. This caused natural gas to leak into a sewer line and the gas subsequently exploded. After the explosion, numerous lawsuits were filed against Centerpoint, Ace and Deviney alleging bodily injury and property damage as a result of the explosion. Upon receipt of these lawsuits, Deviney contacted Ace and its insurer, Penn National and demanded that Ace and Penn National defend, indemnify and hold harmless Deviney under the terms of the Agreement. Ace and Penn National refused to do so and Deviney subsequently filed the complaint in this Case.

## Qualifications of the Witness

I have been asked to give my professional opinions based on my education, training and experience as an expert in the field of insurance, with emphasis on insurance industry standards concerning additional insured status and an insurance company's responsibilities to an additional insured, as well as coverage for liability assumed under a contract.  My qualifications to offer this expert testimony are shown by the resume and bio that are attached to this Report as Exhibit "A".

## Data and Other Information
## Considered by the Witness in Forming His Opinions

To assist in the study and the forming of my opinions, I read or reviewed the documents and information listed on Exhibit "B".  I also relied upon my professional education, as well as the training, experience and personal contacts gained from over forty years in the insurance industry.

Since discovery is ongoing as of the date of my report, I reserve the right to supplement my opinion or express additional opinions based on any information obtained from future discovery.  As I plan to attend the trial, I further reserve the right to supplement my opinions or express additional opinions based on any information revealed at the trial.

2

## Statement of the Opinions to Be Expressed by the
## Witness and the Basis and Reasons Therefore

The Case involves arguments related to insurance industry standards and practices, specifically issues related to an insurance company's responsibilities to an additional insured and contractual liability coverages. Based upon the information contained in the documents reviewed and listed on Exhibit "B", the following are my opinions and testimony I will render in this matter:

1.  Deviney qualified as an additional insured under Ace's Commercial General Liability coverage as written by Penn National under policy number CL0631268, with effective dates from 5/15/07 to 5/15/08 ("the Policy"). The Policy included an Automatic Additional Insureds endorsement which reads, in pertinent part:

    This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

    A.  The following provision is added to SECTION II - WHO IS AN INSURED

        5.  Any person(s) or organizations(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

            (1)   Your acts or omissions; or

            (2)   The acts or omissions of those acting on your behalf;

            in the performance of your ongoing operations for the additional insured(s) at the location or project described in the contract or agreement.

            A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

    The Agreement contained the following clause:

    **22. LIABILITY INSURANCE**

        Independent Contractor shall provide and maintain, at its own expense, the following minimum types and amounts of insurance, with insuring companies and in such form as shall be satisfactory to Company:

        A.  Worker's Compensation Insurance in accordance with the Workers Compensation Law of the state or states in which the subcontract is to be executed, including employer's liability coverage with a liability limit of

3

$100,000 per employee for all workers, employees, servants and others employed by the Independent Contractor.

B. Comprehensive automobile liability insurance, with minimum limits of liability being $500,000 each occurrence, bodily injury or property damage, or both combined.

C. Comprehensive general liability insurance with the "explosion, collapse, and underground exclusions" eliminated, including products – completed operations coverage, with <u>MINIMUM</u> limits of liability of $500,000 each occurrence, bodily injury or property damage, or both combined. The policy shall provide for protective liability insurance with respect to operations of independent contractor, and shall include contractual liability coverage for the following indemnity agreement, which agreement is hereby made a part of the contract between the Company and the Independent Contractor:

IN consideration of the specific sum of Ten Dollars ($10.00), the receipt of which he acknowledges, the Independent Contractor shall indemnify and hold harmless the Owner, Company and Architect, and their agents and employees, from and against all claims, damages, losses and expenses, including attorney's fees, resulting from injury to or death sustained by any person (including Independent Contractor and/or Independent Contractor's employees) or damage to property of any kind, which injury, death or damages arises out of or in any way is connected with the Independent Contractor's performance of or failure to perform the work.

Company and Independent Contractor agree that the liability of Independent Contractor to indemnify and hold Company harmless shall not exceed the sum of $500,000 for bodily injury and property damage arising out of one occurrence.

Company shall be shown as an additional insured as pertains to general liability on automobile insurance coverage.

Certificate for the above insurance shall be furnished to:

Richard Black
Deviney Construction Company, Inc.
Post Office Box 6717
Jackson, MS 39282 – 6717

Although the clause which requires that Deviney be shown as an additional insured states "Company shall be shown as an additional insured as pertains to general liability <u>on</u> *(emphasis added)* automobile insurance coverage" it would clearly be understood within the insurance industry in Mississippi that this is merely a typographical error and it would have been the intent of the parties for the clause to read "Company shall be shown as an additional insured as pertains to general liability <u>and</u> *(emphasis added)*

4

automobile insurance coverage". Not only would this be the requirement seen and recognized as standard within in the insurance industry, it is also clear because "automobile liability" insurance and "general liability" insurance requirements are set out in two separate sections of the clause. Furthermore, these two coverage types are terms of art within the insurance industry and there is no such term as "general liability on automobile insurance". Assuming that the Agreement did, in fact, require Ace to name Deviney as an additional insured under its general liability policy then, without question, coverage should be extended by Penn National to Deviney in this Case.

2. Even if the Court should determine that the Agreement did not require Ace to name Deviney as an additional insured, the Policy should still respond to the claims made against Ace in this Case under the Contractual Liability provision. The Policy reads in pertinent part:

### 3. Exclusions

This insurance does not apply to:

a. **Expected or Intended Injury**......

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for the defense of that party against the civil or alternative dispute resolution proceeding in which damages to which this insurance applies or alleged.

The Policy included an Amendment of Insured Contract Definition endorsement which states in pertinent part:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 9. of the **Definition Section** is replaced by the following:

9. "Insured Contract" means:.....

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

As understood within the insurance community, Paragraph C. of Section 22. of the Agreement as cited above, is an assumption of liability by Ace under an agreement which meets this definition of "Insured Contract". The Agreement also included an entire separate section detailing additional indemnity provisions. Therefore, the Policy owes a defense and indemnity for any liability incurred by Deviney which was caused "in whole or in part" by Ace.

3. According to "The Additional Insured Book"[1], the text most widely recognized on the subject within the insurance industry, "The intent of the contracting parties should be considered when deciphering indemnity and additional insured issues. The two approaches to risk transfer – indemnity under a hold harmless agreement and additional insured status – should be thought of as a belt and suspenders. When one fails, the other should pick up the slack". The text goes on to state, "A commonly asked question is, 'When both additional insured and contractual liability coverages are available, which coverage applies to the claim or suit?' The answer is whichever one covers the loss. Insurers cannot pick and choose which coverage they want to invoke so as to eliminate coverage. If both forms of protection are available the insurer must provide all of the protection possible". It is my opinion in this Case that Deviney wears both the "belt" and the "suspenders" and therefore is entitled to the highest level and limits of coverage or indemnity available under either. However, if one should prove to be unavailable, then the other should provide coverage.

---

[1] Donald Malecki, Pete Ligeros and Jack P. Gibson, *The Additional Insured Book*, (Dallas: International Risk Management Institute, Sixth Edition, 2011), 6&115

4.  Penn National states that its position is "that coverage does not apply to Deviney caused by the actual negligence of Deviney. The complaints allege the utilities were not properly marked, which we understand was a duty or obligation retained by Deviney. Thus coverage does not apply due to the alleged direct negligence of Deviney over an alleged failure to properly mark underground lines and/or allegations in failing to properly supervise the project. Subsequent discovery may also reveal other areas of direct negligence attributable to Deviney not currently a kind in the plaintiff complaints. Therefore, based on the plaintiff's pleadings in the direct negligence of Deviney, it appears coverage for Deviney under Ace's liability policy does not presently exist". This is not the proper interpretation of the coverage form as is clearly understood within the insurance industry. Both the General Liability coverage part and the Contractual Liability coverage require only that the liability result from acts caused **in whole or in part** by the insured. It is my understanding that none of the complaints filed against Ace and Deviney allege sole liability on Deviney's part. Therefore, coverage should apply to Deviney under both coverage parts.

"The Handbook on Additional Insureds"[2] in explaining the distinction states, "in 2004 ISO rolled out an amended Additional Insured Form that no longer provided coverage for liability arising out of the insured's work and instead provided coverage for liability for injury or damages caused, in whole or in part, by the named insured's acts or omissions or the acts or omissions of those acting on the named insured's behalf…. The new wording does not appear to have eliminated potential for coverage for the additional insured's own negligence, other than its sole negligence…. Specifically, the additional insured may still be covered for liability caused in part by its own acts or omissions, as long as the named insured also caused in part the injury or damages."

Likewise, in its section on "Caused in Whole or in Part", "The Additional Insured Book"[3] states "Under endorsement CG 28 10, an additional insured has coverage only with respect to injury or damage that is 'caused, in whole or in part', by the named insured's acts or omissions. (Note that the acts or omissions of the named

---

[2] Michael Menapace, Charles Platto, Timothy Diemand, and Joseph Grasso, Editors, *The Handbook on Additional Insureds*, (Chicago: ABA Publishing, 2012), 70-73

[3] Malecki, Ligeros and Gibson, *Additional Insured*, 182

insured that cause the injury or damage need not be *negligent* acts or omissions). In other words, the endorsement responds only in the event of injury or damage for which the named insured and additional insured share the responsibility (if not necessarily the legal liability). The proportion of the shared responsibility is not specified in the endorsement, nor is the method of determining or measuring the named insured's required share. If his little as 1% of the cause of the claimant's injury or damage is some act or omission of the named insured, the requirements of the endorsement have been met."

5. Penn National alleges that "by accepting the certificates of insurance attached as Exhibit "B" to the Complaint, Deviney was on notice that it was not an additional insured under the Penn National/Ace policy". I disagree. The standard Acord Certificate of Liability Insurance reads, "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW". According to "The Handbook on Additional Insureds"[4], "In general, a certificate of insurance with adequate disclaimers or qualifications is insufficient by itself to create coverage in favor of a party named on the certificate". It would not be prudent to depend upon a Certificate of Insurance as to one's status as an Additional Insured, one way or the other. Furthermore, since the adoption by ISO of the Automatic Additional Insured Endorsement in July of 2004, which largely replaced the issuance of individual additional insured endorsements, it has become common for agents to no longer specifically show a certificate holder's additional insured status. This appears to be the case here, as certificates for the year 2004 are the last in which Ace's agent indicates that Deviney is an additional insured under the general liability coverage.

6. In summary, it is my opinion, to a reasonable degree of certainty, that under the customs, standard and practices of the insurance industry in the State of Mississippi, Deviney qualifies as an additional insured and should be provided a defense and indemnity under the Policy. Likewise, the Agreement meets the

---

[4] Menapace et al., *Additional Insureds*, 87

definition of an Insured Contract under the Policy and therefore Ace should be afforded the coverage necessary to meet its obligation to indemnify Deviney for liability incurred in this Case.  On the other hand, I believe Ace's attempt to deny coverage to Deviney falls far below the standards of the industry.

### Exhibits to be used as a Summary of or Support for the Opinions

I have not prepared any summaries or exhibits to aid in my testimony. However, any of the documents described as having been relied upon in forming my opinions may be utilized in giving my testimony.  Furthermore, if I should create any exhibits to be used in my testimony, I will make them available to all parties as quickly as possible.

### List of all Publications Authored by the Witness Within the Prior Ten Years

Any such publications are shown on Exhibit "C" to this Report.

### Compensation to be Paid for the Study and Testimony of the Witness

Deviney has agreed to compensate me at the rate of $300 per hour for my study and testimony, $150 per hour for travel, plus actual incurred expenses at cost.

### Listing of Cases in Which the Witness has Testified as an Expert At Either Trial or Deposition Within the Prior Four Years

See the Schedule of Cases attached hereto as Exhibit "D".


Van E. Hedges
CPCU, CRM, CIC, ChFC, CLU, AAI

September 17, 2013
Date

9

# *Van Elliott Hedges*

## *Southern Insurance Consulting*
*514 Waldron Street, P.O. Box 1575, Corinth, MS  38835*
*662-287-6116 / Fax – 287-6663 / Home – 287-5144 / Cell – 284-8063*
*www.SIConsulting.net / e-mail: van@hedges.org*

---

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| President – Southern Insurance Consulting | 2000 – |
| Adjunct Professor of Insurance – The University of Mississippi | 2000 – |
| Faculty – National Alliance for Insurance Education | 2011 – |
| President – Magnolia Insurance Company | 1999 – 2007 |
| President – The Southern Insurance Group | 1988 – 2000 |
| Vice-President – Fred Vann & Company Insurance | 1977 – 1988 |
| Licensed Insurance Agent – The State of Mississippi | 1972 – |
| Board of Directors – Independent Insurance Agents of MS | 1997 – |
| Board of Directors – Associated Insurors of Mississippi | 1991 – 2009 |
| Board of Directors – Mississippi Insurance Managers (MIM) | 2003 – 2009 |
| Board of Directors – Blue Goose (Agency Management ASP) | 2003 – 2006 |

---

## PROFESSIONAL DESIGNATIONS

| | |
|---|---|
| Chartered Property and Casualty Underwriter | CPCU |
| Chartered Financial Consultant | ChFC |
| Chartered Life Underwriter | CLU |
| Certified Risk Manager | CRM |
| Certified Insurance Counselor | CIC |
| Accredited Adviser in Insurance | AAI |

---

## EDUCATION

Georgia State University – Atlanta, Georgia
**MASTER OF INSURANCE**                                   AUGUST 1977

The University of Mississippi – Oxford, Mississippi
**BACHELOR OF BUSINESS ADMINISTRATION**               MAY 1975

Honors and Activities:  Hall of Fame; Who's Who; Director of Student Activities; Omicron Delta Kappa; Gamma Iota Sigma; V.P., Alpha Tau Omega; Judicial Council; University Scholar; Summer Session Student Body President; Chairman, College Republicans

Exhibit "A"

# PROFESSIONAL AND CIVIC ACTIVITIES

President – Independent Insurance Agents of Mississippi
Co-Chairman – I.I.A.M. Workers' Compensation Task Force
Co-Author – Mississippi Workers' Compensation Source Book
Chairman – USF&G Mississippi Agents Advisory Council
Chairman – University of Mississippi Insurance Advisory Board
Member – USF&G National Agents Advisory Council
Member – Council of Insurance Agents & Brokers Agency Management Committee
Member – CPCU Society - Consulting, Litigation, & Expert Witness Section*
Member – Society of Certified Insurance Counselors*
Member – The American Association of Insurance Management Consultants*
Member -- The American Risk and Insurance Association*
Member – National Association of Certified Valuation Analysts*

Ruling Elder and Trustee – First Presbyterian Church of Corinth*
Chairman – Board of Deacons, First Presbyterian Church of Corinth
President – Corinth Rotary Club / Paul Harris Fellow
President – United Way of Corinth and Alcorn County
President – Corinth Area Arts Council
President – Alcorn County Cancer Society
President – Corinth Business Association
President – Corinthian Capital Corporation
Chairman – Friends of the Siege and Battle of Corinth
Chairman – Corinth Preservation Commission
Chairman – Trustees of Dorothy Garrett Girl Scout Camp*
Chairman – Board of Vino del Sol, Inc.*
Chairman – Board of Emagex, Inc.
Board of Directors – Corinth / Alcorn Area Chamber of Commerce
Board of Directors – Leadership Mississippi
Board of Directors – Mississippi Cancer Society
Board of Directors – Mississippi Business & Industry Political Education Committee*
Board of Directors – George McLean Leadership Institute
Board of Directors – Northeast Mississippi Community Concert Association
Board of Directors – Corinth Theater Arts
Board of Directors – Thinksystems, Inc.
Board of Directors – CrossRoads Access, Inc.
Executive Committee – Mississippi Republican Party
Delegate – 1988 National Republican Convention
University of Mississippi Business Advisory Board
Barksdale Reading Institute Volunteer Tutor

* Current Activities

Exhibit "A"

# VAN E. HEDGES

514 East Waldron Street, Corinth, MS  38834
662-287-6116 / Home-287-5144 / Cell-284-8063 / Fax-287-6663
www.SIConsulting.net / e-mail: van@hedges.org

## Professional Experience

Van is currently President of Southern Insurance Consulting, where he assists insurance agencies with evaluations, planning and mergers & acquisitions. He also provides expert testimony and litigation support.  In 2000, he joined the University of Mississippi faculty as Adjunct Professor of Insurance and teaches Finance 341 – "Risk Management and Insurance".  In 2011, Van joined the faculty of The National Alliance for Insurance Education where he teaches "Legal & Ethical Responsibilities" of agents under the CIC curriculum.

A licensed insurance agent since 1972, Van served as President of the Southern Insurance Group (SIG) from 1988 until 2000. Under his leadership, the agency grew to become the third largest in Mississippi, with locations in six cities and a separate financial services division. In 1995, SIG was selected by the Mississippi Business Journal as one of the 40 Fastest Growing Businesses in the state. The agency was consistently recognized as one of the Leading Insurance Agencies in the United States by the IIAA and Reagan & Associates through their Best Practices Program. From 1985 to 1997, Van was responsible for the acquisition and consolidation of the thirteen agencies that, together with Fred Vann & Company, came to form SIG. From 1997 to 2000, he negotiated the sale of the agencies to Farmers & Merchants Bank, Peoples Bank and Renasant Bank.

In 1991, Van co-founded Associated Insurors of Mississippi (AIM), a state-wide marketing group or "cluster", which consisted of nine large agencies from across the state with combined annual premiums in excess of $200,000,000. He continued to serve on the board of AIM until 2009 and served as President of Magnolia Insurance Company, a Bermuda based captive insurer that the group formed in 1999.

He joined Fred Vann & Company as vice-president and agency manager in 1977. While in that position, he learned all the day to day activities required of an insurance agent and agency. He also served as a producer, writing everything from $25 notary bonds to a PVC manufacturer with plants in six states and annual premiums of over $1,000,000. He was successful in placing all required coverages, including political risk insurance, on the cellular telephone system for the city of Moscow during the breakup of the Soviet Union. He held non-resident insurance licenses in nineteen states.

## Education

In 1975, Van received a BBA from the University of Mississippi, where he was a University Scholar and selected to the Hall of Fame. He earned a Master of Insurance degree (MI) from Georgia State University in 1977.

He is a Chartered Property & Casualty Underwriter (CPCU), Chartered Financial Consultant (ChFC), Certified Insurance Counselor (CIC), Certified Risk Manager (CRM), a Chartered Life Underwriter (CLU) and an Accredited Advisor in Insurance (AAI).

Exhibit "A"

## Professional Activities

Van served as president of the Independent Insurance Agents of Mississippi (IIAM) for 1999-2000 and is currently on their Board of Directors. He served on the Board of Directors of Mississippi Insurance Managers, the state's largest MGA, until its sale in 2009. He has chaired the Ole Miss Insurance Advisory Council and continues as a member. He served on the National USF&G Agents' Council and was chairman of the Mississippi Council. While on the NAC, he helped develop a new agency contract that was implemented nationwide. He was a member of The Council of Insurance Agents and Brokers' (CIAB) National Agency Management Committee and was state chairman of their CouncilPac Committee. As one of the first full time agency managers in Mississippi, he led a team effort in producing an agency policy & procedures manual that is considered to be one of the most comprehensive ever written and has been widely used as a model.

For several years during Mississippi's workers' compensation "crisis", Van co-chaired the IIAM Workers' Compensation Task Force and also co-authored the *Mississippi Workers' Compensation Source Book*. He annually publishes the IIAM Directory of Self-Insured Workers' Compensation Groups. He was a member of the Banking and Insurance Working Group and drafted the compromise provisions that were eventually adopted as the final regulations under which banks could sell insurance in Mississippi.

Van has served as a speaker and panel member for numerous insurance industry groups and has taught the IIAM Agents' Errors & Omissions Seminar. He has testified before the Mississippi Department of Insurance and before both the Mississippi Senate and House Insurance Committees.

## Civic Activities

Van has been President or Chairman of Corinth Rotary Club, Alcorn County United Way, the Arts Council, Corinth Business Association, the Corinth Preservation Commission, Friends of the Siege & Battle of Corinth, the Dorothy Garrett Girl Scout Camp and the Alcorn County Cancer Society. He has served on the Mississippi Republican Party Executive Committee, the Commission for Mississippi's Future and was a delegate to the 1988 Republican National Convention. He is a Paul Harris Fellow and has served on the boards of his Chamber of Commerce, Leadership Mississippi, the Mississippi Cancer Society and BIPEC.

He is a Ruling Elder and Trustee at First Presbyterian Church of Corinth and served as Chairman of the Board of Deacons and Superintendent of the Sunday School.

## Personal

Van was born June 17, 1953, and grew up in Water Valley, Mississippi. He and his wife, Mary, have two children and one granddaughter. Van enjoys trophy hunting and reading historical fiction, but his most active interest is locating, acquiring and archiving any document that originated in or depicts Corinth during the Civil War.

Exhibit "A"

## Documents Considered by the Witness in Forming His Opinions

*Deviney Construction Company, Inc.*

*vs.*

*Ace Utility Boring & Trenching, LLC and Pennsylvania National Mutual Casualty Insurance Company D/B/A Penn National Insurance Company*

1.   Original Complaint, with exhibits

2.   Amended Complaint

3.   Answer and Defenses of Penn National, with exhibits

4.   Answer and Defenses of Ace

5.   Complaint in EMC Insurance Company and Julius O'Neill vs. Deviney, Ace and Centerpoint

6.   Complaint in Natalie Woodward and Marcus Woodward vs. Deviney, Ace and Centerpoint

7.   The Policy

8.   The Agreement

9.   Correspondence of April 17, 2008, November 25, 2008, November 11, 2008, December 3, 2008, March 9, 2009, March 10, 2009, March 20, 2009, June 18, 2009, June 26, 2009, July 1, 2010, September 14, 2010 (3), September 21, 2010 (2), September 22, 2010 (4), October 20, 2010, October 21, 2010, November 10, 2010, December 3, 2010, January 14, 2011, March 14, 2011, April 8, 2011, April 14, 2011, April 26, 2011, March strike that may second 2011 and July 8, 2013

Exhibit "B"

# Van E. Hedges
## List of Publications

Hedges, V. (2011) Legal and Ethical Responsibilities of Agents. *The National Alliance for Insurance Education and Research*

Hedges, V. (2007) A Directory of Mississippi Workers' Compensation Self Insurance Groups. *The Independent Insurance Agents of Mississippi*

Hedges, V. (2002) Agent's E & O Insolvency Exclusions. *Mississippi Agent.* 22 (3)

Hedges, V. (2001) The Effect of 9/11 on Insurance Pricing and Availability. *Testimony before a joint hearing of the Mississippi House and Senate Insurance Committees.*

Hedges, V. (1999) An Opportunity for Change. *Mississippi Agent.* 19 (3)

Hedges, V. (1999) What is an Independent Insurance Agent? *Mississippi Business Journal.* 12/3/99

Hedges, V. (1999) Changes in Insurance Laws and Regulations. *Mississippi Agent.* 19 (2)

Hedges, V. (1998) Banks and Insurance in Mississippi. *Mississippi Agent.* 18 (3)

Hedges, V. (1998) Regulating Banks in Insurance. *Testimony before a joint hearing of the Mississippi Department of Insurance and Mississippi Banking Department*

Hedges, V. (1997) Directory of Mississippi Workers' Compensation Loss Costs Filings. *The Independent Insurance Agents of Mississippi*

Hedges, V. (1996) Mississippi Workers' Compensation Market Share Analysis. *The Independent Insurance Agents of Mississippi*

Hedges, V. & Taylor, B. (1994) Mississippi Workers' Compensation Source Book – A Concise Guide to Workers' Compensation in Mississippi. *The Independent Insurance Agents of Mississippi*

Hedges, V. & Taylor, B. (1993) Workers' Compensation Task Force Update. *Mississippi Agent.* 13 (3)

Exhibit "C"

# Van E. Hedges - Southern Insurance Consulting
## Schedule of Testimony Within the Prior Four Years

| Case # | Parties | Dates / Party Rep. | P's Attorney | D's Attorney | Venue / Case ID | Subject Matter | Depo? / Trial? | Status |
|---|---|---|---|---|---|---|---|---|
| 124 | Unity Hospitality v. EMC & Bradley Insurance Agcy | 03/13 - Defendant | Tina Nicholson Merlin Law Group | David Barfield Barfield & Assoc. | S.D., Western, MS, USDC 5:12-CV-00122-DCB-JMR | Duties & Obligations of Agent to Process & Procure Policy | Yes No | Settled Prior to Trial |
| 114 | Craig Beaudry v. Farmers Insurance Exc., et al. | 06/12 - 04/13 Defendant | Pierre Levy O'Friel & Levy | Steve Hulsman Lewis & Roca | 1st JDC, Santa Fe, NM D-0101-CV-2011-00646 | Wrongful Termination of Agent Value of Book of Business | No Yes | Pending Ruling |
| 111 | AR-LA-MS Pipe Trades Assn. v. Hartford Casualty Co. | 04/12 - Defendant | John Maxey Maxey Wann | Lawson Hester Wyatt, Tarrant | S.D., Jackson, MS, USDC 3:10cv322 HTW-LRA | Coverage Issues Proper Denial of Coverage | Yes | Pending Trial |
| 108 | Safeco Insurance Company v. Charles Bruce & Bruce Ins Agcy | 11/11 - 12/12 Plaintiff | Wright Hill Page Kruger | Justin Matheny Phelps Dunbar | S.D., Jackson, MS, USDC 3:11cv656 CWR-FKB | Duties & Obligations of Agent to provide accurate Info to Co. | Yes No | Settled Prior to Trial |
| 106 | Safeway Insurance Company v. Lawrence Stinson & C. Thomas | 05/11 - 09/12 Defendant | Goodloe Lewis Hickman, Goza | Justin Cluck Smith Walley | Marshall Co, MS CC 2011-113 | Other Insured Status Under Uninsured Motorists Coverage | Yes No | Settled Prior to Trial |
| 104 | Bonnie Fullilove v. United of Omaha & Cedric Landcaster | 05/11 - 2/12 Defendant | James Kelly Kelly Law Office | Will Vice Massey, HB, Vice | Madison Co, MS CC CI 2010-0025-R | Co's Right to Void Policy for Material Misrepresentation | Yes No | Settled Prior to Trial |
| 100 | Alinda White v. Ms Farm Bureau Federation, et al | 01/11 - 09/11 Defendant | Mitch Tyner Tyner Law Firm | Dale Russell Copeland, Cook | Amite Co, MS CC 08-CV-003-J | Contract Issues Between Agent & Co. / Ownership of Exp. | No Yes | Pending Appeal |
| 98 | Charles H. Thomas, III v. Wayne Stewart | 11/10 - 09/11 Defendant | Robert Spell Latham & Burwell | Philip Gaines Currie Johnson | Noxubee Co, MS CC 206-119 | Duties & Obligations of Agent to Process & Procure Policy | Yes No | Settled Prior to Trial |
| 97 | Nationwide Mutual v. Ernesteen Marsh | 11/10 - 11/11 Defendant | Russell Reviere Rainey,Kizer,Reviere | Minnie Howard NMRLS | N.D., Delta, MS, USDC 2:09-cv154-MPM-SAA | Co's Right to Void Policy for Material Misrepresentation | Yes No | Settled Prior to Trial |
| 85 | A.Trapani & Tropani's Eatery v. David Treutel & Treutel Insurance | 10/09 - 12/10 Defendant | Gerald Maples Maples Law Firm | Paul Delcambre Balsh & Bingham | Hancock Co, MS CC C2301-05-825(1) | Duties of Company & Agent to Advise & Procure Coverage | Yes No | Dir. Verdict for Defendant |

Exhibit "D"