UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DEVINEY CONSTRUCTION
COMPANY, INC.                                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:11cv468-DPJ-FKB

ACE UTILITY BORING & TRENCHING,                                    DEFENDANTS
LLC, and PENNSYLVANIA NATIONAL
MUTUAL CASUALTY INSURANCE
COMPANY d/b/a PENN NATIONAL
INSURANCE COMPANY

CONSOLIDATED WITH

ACE UTILITY BORING & TRENCHING,
LLC, and J.M. DRILLING, LLC                                             PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:13cv60-DPJ-FKB

DEVINEY CONSTRUCTION                                                   DEFENDANT
COMPANY, INC.

ORDER

These consolidated cases are before the Court on a number of dispositive motions.  In the

lead, declaratory-judgment case, Defendants Pennsylvania National Mutual Casualty Insurance

Company ("Penn National") [67] and Ace Utility Boring & Trenching, LLC ("Ace") [69] have

moved for summary judgment, and Plaintiff Deviney Construction Company, Inc. ("Deviney")

has moved for partial summary judgment [71].[1]  For the reasons that follow, Deviney's motion is

granted as to its claims against Penn National but denied without prejudice as to the claims

against Ace; Penn National's motion is denied, though the denial is without prejudice as to the

_____

[1]Plaintiffs in the breach-of-contract member case also filed motions for partial summary
judgment.  Those motions are addressed by separate order.

duty to indemnify; and Ace's motion is granted as to the duty to indemnify but otherwise denied without prejudice.

I.      Facts and Procedural History

In 2007, AT&T contracted with Deviney to install a telephone cable along Holland Avenue in Philadelphia, Mississippi.  Deviney engaged Ace to make pavement borings where the telephone cable would be installed, and on September 14, 2007, Ace and Deviney entered into an Independent Contractor Agreement ("ICA") to that end.  At all relevant times, Ace was insured under a commercial general-liability policy issued by Penn National.

On the morning of September 15, 2007, while making pavement borings, an Ace employee allegedly bored into a natural-gas pipeline owned by Centerpoint Energy.  Before the gas line was repaired, a building on Holland Avenue exploded as a result of the gas leak, causing some minor injuries and a significant amount of property damage.

Following the explosion, a number of lawsuits were filed against Ace, Deviney, and/or Centerpoint.  Deviney selected a lawyer from its general-liability carrier's list of approved lawyers to defend it in the underlying lawsuits.  Believing it was entitled under the ICA to a defense and indemnification from Ace and its insurer, Deviney, through its retained counsel, made demand upon Penn National and Ace for defense and indemnification.  Penn National responded and agreed to accept the tender of defense under a reservation of rights, provided Deviney "waive any conflict in order to allow [Ace's lawyer in the underlying lawsuits] to defend Deviney . . . as well."  Pl.'s Mot. [71] Ex. 8.

Aggrieved by Ace's and Penn National's responses to its demands, Deviney filed this lawsuit on July 28, 2011.  The Second Amended Complaint [24] asserts breach-of-contract

claims against Ace and Penn and seeks a declaratory judgment "that Penn and/or Ace had and has a duty to defend and indemnify Deviney in connection with the lawsuits identified herein." 2d Am. Compl. [24] ¶ 19.  At the close of discovery, Defendants moved for summary judgment and Plaintiff moved for partial summary judgment.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

Defendants have moved for summary judgment on all of Deviney's claims against them, and Deviney has moved for partial summary judgment on its claim that Defendants have a duty to defend it in the underlying lawsuits.  Deviney asserts that (1) certain provisions in the ICA between it and Ace obligated Ace to defend and indemnify Deviney and (2) coverage for Deviney exists under certain provisions of Ace's Penn National policy.  In general terms, the questions before the Court are whether Deviney qualifies as an Automatic Additional Insured under the Penn National policy and/or whether Ace agreed to assume Deviney's liability in an "insured contract" as defined by the policy.  Deviney also asserts that Ace separately breached the ICA.  Defendants assert that Deviney waived any entitlement to defense or indemnity.  The Court will address the issues in turn.

A.       Automatic Additional Insured

The Penn National policy issued to Ace contains an Automatic Additional Insured endorsement, which expands the policy's definition of "insured" to include

> Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> (1) Your acts or omissions; or
>
> (2) The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location or project described in the contract or agreement.

4

Penn National Mot. [67] Ex. B, at 23.  Deviney asserts that it qualifies under this definition

because Ace agreed to name Deviney as an additional insured on the Penn National policy in the

ICA.

Paragraph 22 of the ICA pertains to insurance and requires Ace to maintain several types

of coverage:

> Independent Contractor shall provide and maintain, at its own expense, the following <u>minimum types and amounts</u> of insurance, with insuring companies and in such form as shall be satisfactory to Company:

> A.  Worker's Compensation insurance in accordance with the Workers Compensation Law of the state or states in which the subcontract is to be executed . . . .

> B.  Comprehensive automobile liability insurance, with minimum limits of liability being $500,000 each occurrence, bodily injury or property damage, or both combined.

> C.  Comprehensive general liability insurance with the 'explosion, collapse, and underground exclusions' eliminated, including products-completed operations coverage, with <u>MINIMUM</u> limits of liability of $500,000 each occurrence, bodily injury or property damage, or both combined.  The policy shall provide for protective liability insurance with respect to operations of Independent Contractor, and shall include contractual liability coverage for the following indemnity agreement, which agreement is hereby made a part of the contract between the Company and the Independent Contractor:

>> IN consideration of the specific sum of Ten Dollars ($10.00), the receipt of which he acknowledges, the Independent Contractor shall indemnify and hold harmless the Owner, Company and Architect, and their agents and employees, from and against all claims, damages, losses and expenses, including attorneys fees, resulting from injury to or death sustained by any person . . . or damage to property of any kind, which injury, death or damage arises out of or in any way is connected with the Independent Contractor's performance of or failure to perform the work.

> Company and Independent Contractor agree that the liability of
> Independent Contractor to indemnify and hold Company harmless
> shall not exceed the sum of $500,000 for bodily injury and property
> damage arising out of one occurrence.
>
> *Company shall be shown as an additional insured as pertains to
> general liability on automobile insurance coverage.*
>
> . . . .
>
> Independent Contractor shall not sublet or subcontract any part of this
> Agreement without assuming absolute responsibility for requiring similar
> insurance from its subcontractors and suppliers. . . .

Pl.'s Mot. [71] Ex. 3, at 10 (final emphasis added).

Deviney asserts that the parties' clear intent to have Deviney listed as an additional insured on Ace's general-liability-insurance policy is evident from the language of paragraph 22. Specifically, Deviney argues that the provision contains an obvious typographical error and must be understood to require Ace to list Deviney as an additional insured "as pertains to general liability [and] automobile insurance coverage." For the following reasons, the Court agrees.

Mississippi law applies to this contract, and its rules of construction frame this dispute. As an initial matter, "[q]uestions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Miss. State Highway Comm'n v. Patterson Enters., Ltd.*, 627 So. 2d 261, 263 (Miss. 1993). The rules for construing contracts were addressed in the oft-cited *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*:

> This Court has set out a three-tiered approach to contract interpretation. Legal
> purpose or intent should first be sought in an objective reading of the words
> employed in the contract to the exclusion of parol or extrinsic evidence. First, the
> "four corners" test is applied, wherein the reviewing court looks to the language
> that the parties used in expressing their agreement. We must look to the "four

corners" of the contract whenever possible to determine how to interpret it.  When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses.  Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy.  Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue.  On the other hand, if the contract is unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent.  Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent.  The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.

Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party.  Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence.  It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract. Of course, the so-called three-tiered process is not recognized as a rigid "step-by-step" process.  Indeed, overlapping of steps is not inconceivable.

857 So. 2d 748, 752–53 (Miss. 2003) (internal citations and punctuation omitted).

Within this general outline, Deviney relies on a more specific rule of construction.  In

*Robinson v. Martel Enterprises, Inc.*, the court held:

A written contract should be *construed* according to the obvious intention of the parties, notwithstanding clerical errors or inadvertent omissions therein, which can be corrected by perusing the whole instrument.  If an improper word has been used or a word omitted, the court will strike out the improper word or supply the omitted word if from the context it can ascertain what word should have been used.

337 So. 2d 698, 701 (Miss. 1976) (emphasis added) (citing 17 Am. Jur. Contracts § 280, now §

373)); *see also Newell v. Hinton*, 556 So. 2d 1037, 1042–43 (Miss.1990) (affirming summary

7

judgment and applying this rule of construction).  In addition to the treatise cited in *Robinson*,

another leading treatise on contract law recognizes the same rule:

> Words may be interpolated or rearranged to make clear the meaning of a contract. Indeed, in order to carry out the contracting parties' intention, the contract's words may be interpolated, transposed, or even rejected.  For the same reason, terms may be supplied by the court.  Similarly, clerical or grammatical errors may be corrected . . . .
>
> These are but a few applications of the same essential principle that a contract will be construed so as to effectuate rather than defeat the parties' intentions and purposes in entering the contract.

11 Williston on Contracts § 32:9 (4th ed.).  Because these are rules of construction, they are

considered as a matter of law.  *Miss. State Highway Comm'n*, 627 So. 2d at 263.

Based on these rules, the Court concludes that the disputed use of the word "on" in

paragraph 22 was a mistake that was clearly inconsistent with the parties' intent.  Instead, the

contract should be construed as requiring Ace to list Deviney as an "additional insured as

pertains to general liability [*and*] automobile insurance coverage."

To begin, the Court looks to the contract as a whole, attempting to harmonize the contract

language where possible.  *Royer Homes of Miss., Inc.*, 857 So. 2d at 752.  In this case, the parties

clearly intended to provide Deviney with the maximum protection allowed by law.  *See, e.g.*,

Pl.'s Mot. [71] Ex. 3, at 11–12 (agreeing that "[w]here not specifically prohibited by law," Ace

would indemnify and hold Deviney harmless).

Consistent with that intent, paragraph 22 of the ICA requires Ace to obtain three separate

types of insurance:  worker's compensation insurance, "[c]omprehensive automobile liability

insurance," and "[c]omprehensive general liability insurance" ("CGL").  *Id.* at 10.  These

provisions are found in three separately lettered paragraphs A–C.  *Id*.  Significantly, subparagraph "C" relates to CGL coverage, and expressly states:

> The [CGL] policy. . . shall include contractual liability coverage for the following indemnity agreement . . . :
>
> > . . . Independent Contractor shall indemnify and hold harmless the Owner . . . and against all claims . . . resulting from injury to or death sustained by any person . . . or damage to property of any kind . . . .
> >
> > . . . .
> >
> > Company shall be shown as an additional insured as pertains to general liability on automobile insurance coverage.

Thus, as written, subparagraph "C"—*addressing CGL coverage*—lists among Ace's duties, the duty to show Deviney as an additional insured.

It would make no apparent sense for the subparagraph addressing CGL coverage to hinge on listing Deviney as an additional insured on Ace's automobile policy alone.  And if the parties truly intended to limit the additional-insured requirement to the automobile policy, then it would have been addressed in subparagraph "B" and not as a duty under subparagraph "C."

Aside from this structural issue, the phrase "general liability *on* automobile insurance coverage" has no apparent meaning.  Penn National contends that it merely requires "Ace to add Deviney as an additional insured on Ace's automobile liability policy."  Def.'s Mem. [68] at 5.  But Penn National's attempt to paraphrase the clause excludes the term "general liability," and it never explains how "general liability" can modify an automobile policy, or what type of coverage that phrase would actually provide.  The parties inserted the words "general liability" in the ICA for a reason, and the Court is not inclined to simply ignore them.  *See Royer Homes of Miss. Inc.*,

857 So. 2d at 752 (instructing courts to give effect to all contract clauses).  As such, Penn National has not offered a reasonable alternative construction that accounts for the term "general liability."

   If "general liability" is not ignored, then it becomes impossible to harmonize if truly intended to modify the automobile policy.  Neither the ICA as a whole nor paragraph 22 say anything about "general liability" coverage that is somehow part of the "automobile insurance coverage."  Instead, the ICA uses the two terms to describe separate coverages in subparagraphs "B" and "C" of paragraph 22.

   By using "general liability" and "automobile insurance" to describe separate coverages, the ICA complies with industry usage.  *See, e.g.*, 9A Couch on Insurance § 129:1 (3d ed.) (explaining that comprehensive general liability refers to industry-standard policies that originated in 1940); *id*. at 2 § 21:2 (noting that the same standards of construction apply to "general liability insurance, [and] automobile liability insurance" policies); *id*. at 7A § 109:27 (noting that "insuring activities unrelated to vehicle's use for transportation is a function of a general liability policy, not an automobile policy"); *id*. at 8A § 119:26 (noting that insurers use certain standard terms to "determine whether the auto insurer or the general liability insurer would cover a given incident").[2]

---

[2]The only extrinsic evidence in the record is the expert testimony of Van Hedges, who opined that there is no such thing as "general liability insurance on automobile coverage insurance."  The Court may consider expert testimony on terms of art when construing a contract. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611–12 (5th Cir. 2000) (affirming trial court's use of expert testimony and relevant treatise to explain "technical meaning of terms used in the industry [as] prudent") (citation and quotations omitted)).  Penn National produced no countervailing evidence on this point and no argument that something called "general liability on automobile insurance coverage" can be procured.

10

And because "general liability" is a term of art that loses meaning when coupled with "automobile insurance," it makes no sense to list Deviney as an additional insured "as pertains to general liability *on* automobile insurance coverage."  In fact, the requirement appears to nullify Ace's duty to list Deviney even on the automobile policy—Penn has never explained what "general liability on automobile insurance" is.[3]  The clause must have some meaning because the parties would not have intended a nullity.  *See Wilson Indus., Inc. v. Newton Cnty. Bank*, 245 So. 2d 27, 30 (Miss. 1971) ("A construction will not be adopted, if it can be reasonably avoided, which will charge the parties with having bound themselves to provisions which are mutually repugnant, senseless, ineffective, meaningless or incapable of being carried out in the overall context of the transaction consistently with all of the other provisions of all of the several contract documents."); *cf. Evans v. Boyle Flying Serv., Inc.*,  680 So. 2d 821, 825 (Miss. 1996) (in statutory construction, "words or phrases may be altered or supplied, where this is necessary to prevent the law from becoming a nullity").

Looking at the ICA as a whole, the Court concludes that a drafting error occurred that frustrated the clear intent of the parties to afford Deviney the maximum protection allowed by law.  As intended, paragraph 22 should have required Ace to list Deviney as an additional insured "as pertains to general liability [*and*] automobile insurance coverage."[4]  Penn National is certainly correct to observe that this construction depends on the Court's willingness to replace

---

[3]It does not appear that either party attached Ace's automobile policy to the record, so it is not known whether Ace complied with paragraph 22(c) in a way consistent with Penn National's interpretation or not at all.

[4]Not requiring Deviney to be listed as an additional insured on Ace's worker's compensation insurance is consistent with Ace's independent-contractor status.

contract language—something the Court does not take lightly.  But this is not a case of rewriting

a policy to create coverage the parties never intended.  Mississippi law allows the Court to alter

the language when construing a contract if it is clear that "an improper word has been used . . . ."

*Robinson*, 337 So. 2d at 701.

As modified, the language falls in full harmony with the structure of paragraph 22,

subparagraphs "B" and "C," and the overall intent to provide Deviney the maximum protection

allowed by law.  It further avoids a nonsensical articulation that actually nullifies the very

protection for which Deviney bargained.  Deviney is an additional insured under the Penn

National policy.[5]

Finding that Deviney was an insured does not conclude the matter.  Under the policy,

Penn National's indemnity for additional insureds is limited to "liability for 'bodily injury',

'property damage' or 'personal and advertising injury' caused, in whole or in part, by [Ace's]

acts or omissions."  Penn National Mot. [67] Ex. B, at 23.  At this stage, on the record before it,

the Court cannot tell whether Deviney has incurred liability in any of the underlying cases for

injuries or damages caused, in part, by Ace's acts or omissions.[6]  A determination on Penn

_____

[5]A word of caution is in order.  Construing contracts in this manner is allowed under Mississippi law, but it rarely occurs, and the Court has some misgivings about doing so now. But under Rule 56, Deviney has demonstrated through unrebutted record evidence and legal authority that it is entitled to judgment as a matter of law.  Defendants had opportunities to directly address Deviney's position, but on the record before the Court, they have not met their burden under Rule 56.

[6]If Ace is held wholly responsible in any of the lawsuits, Deviney can have no liability because Ace was an independent contractor.  *See Chisolm v. Miss. Dep't of Transp.*, 942 So. 2d 136, 141 (Miss. 2006) ("Under the general rule, the independent contractor's principal has no vicarious liability for the torts committed by the independent contractor or its employees in the performance of the contract." (citation omitted)).

National's indemnity obligations necessarily awaits the outcome of the underlying lawsuits. *Cf.*
*Travelers Prop. Cas. Co. of Am. v. Federated Rural Elec. Ins. Exch.*, No. 3:08cv83DPJ-JCS,
2009 WL 2900027, at *4, 9 (S.D. Miss. Sept. 3, 2009) (explaining that a determination of
parties' negligence for underlying accident would fix extent of duty to indemnify). Penn
National's motion for summary judgment is denied without prejudice on the duty-to-indemnify
question.

That leaves the issue of Penn National's duty to defend Deviney in the underlying
lawsuits. The Penn National policy provides that Penn National "will have the right and duty to
defend the insured against any 'suit' seeking" "damages because of 'bodily injury' or 'property
damage' to which this insurance applies." Penn National Mot. [67] Ex. B, at 36. "The duty to
defend is broader than the duty to indemnify, and exists if the complaint alleges facts that place
the claim arguably within a policy's coverage." *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n,
Inc.*, 442 F. Supp. 2d 344, 346 n.1 (S.D. Miss. 2006) (citation omitted). Because the underlying
complaints all allege injuries or damages caused, at least in part, by Ace's negligence, the
underlying lawsuits are arguably within the policy's coverage. *See* Pl.'s Mot. [71] Ex. 1
(outlining allegations against Ace in underlying cases). And as explained above, Deviney
qualifies as an insured under the policy's automatic-additional-insured provision. Penn National
has a duty to defend Deviney in the underlying lawsuits.[7]

---

[7]Penn National argues that certain requirements for Deviney's defense costs to be covered
under the Supplementary Payments provision of the policy were not met. Penn National Mem.
[68] at 22 (citing Penn National Mot. [67] Ex. B, at 42–43). But those prerequisites apply only
when Penn National defends an indemnitee seeking defense based on an "insured contract." *See*
Penn National Mot. [67] Ex. B, at 43 (extending defense to indemnitee where "insured has
assumed the liability of the indemnitee in a contract or agreement that is an 'insured contract'").
As the Court has held, Deviney qualifies as an insured under the policy, and Penn National's duty

Two issues remain on the duty to defend:  whether Deviney waived its right to have Penn National defend it in the underlying lawsuits, and whether Deviney is entitled to have Penn National pay for the independent counsel of Deviney's choice.  The two issues are factually related.

Beginning in December 2008, Penn National's claims specialist Brent Moelker purported to offer to assume the defense of Deviney in the underlying lawsuits.  In a December 3, 2008 letter to Deviney's lawyer in the underlying cases, Moelker notified Deviney that "Mr. Jimmy House is defending Ace" in the underlying suits and "ask[ed] that [Deviney] agree to waive any conflict in order to allow Mr. House to defend Deviney . . . as well."  Pl.'s Mot. [71] Ex. 8, at 17. Similar requests were included in letters from Moelker on March 20, 2009, and June 26, 2009. *Id.* at 7, 12.  On November 10, 2010, Deviney's state-court counsel sent a letter to Penn National explaining that Deviney rejected Penn National's proposal that Ace's state-court counsel represent both Ace and Deviney.  Pl.'s Mot. [71] Ex. 11, at 4.  Deviney's counsel stated that Deviney was rejecting the proposal both "because there are inherent conflicts" between Ace and Deviney "which cannot be waived" and because "under Mississippi insurance law, . . . independent counsel is required."  *Id.* at 5.  But Deviney explained that it "continue[d] to demand complete defense and indemnification" including "separate independent counsel fees and expenses."  *Id.* at 6.

These facts do not establish that Deviney waived its right to a defense under the policy. "Waiver usually results when there is an intentional relinquishment of a known right."  *Brent Towing Co., Inc. v. Scott Petroleum Corp.*, 735 So. 2d 355, 359 (Miss. 1999) (citation omitted).

---

to defend Deviney arises from Deviney's status as an insured, not as an indemnitee.

14

The correspondence from Penn National to Deviney's counsel indicates that from late 2008 through November 2010, Deviney consistently sought defense and indemnification from Penn National. And while Deviney refused to acquiesce to Penn National's demand that Deviney waive any conflict between Ace and Deviney, this refusal does not demonstrate Deviney's "intentional relinquishment" of its rights under the policy. There was no waiver.

Finally, Deviney asserts that it is entitled to retain independent counsel, at Penn National's expense, under *Moeller v. American Guarantee and Liability Insurance Co.* 707 So. 2d 1062 (Miss. 1996). In *Moeller*, the Mississippi Supreme Court held that where an insurer agrees to defend an insured under a reservation of rights, the insured is entitled to independent counsel at the expense of the insurer. 707 So. 2d at 1070. The crux of Penn National's argument that Deviney was not entitled to *Moeller* counsel is its position that "[a]t the very most, Deviney is an *indemnitee of an insured*." Defs.' Resp. Mem. [76] at 11. Penn National even seems to agree that *Moeller* would apply if the Court found that Deviney is an additional insured under the policy. *Id.* ("[I]f Deviney is not an insured or additional insured under the Penn National policy, it has no rights under the policy and no right to *Moeller* counsel.") But as the Court has already determined, Deviney is an additional insured under the policy. Because of potential conflicts between Deviney and Penn National, Deviney is entitled to its own independent counsel.[8]

In sum, Deviney is an insured under Section II (A) of the Penn National policy, Penn National owes Deviney a defense in the underlying lawsuits, and Deviney is entitled to independent counsel in those cases. But Deviney's right to indemnity in the underlying lawsuits

---

[8]Penn National also argues that Deviney's retained counsel was not independent because he was retained by Deviney's carrier. But Deviney offered unrebutted record evidence showing that it retained and paid its attorney.

cannot be determined until those cases are resolved. Penn National's motion for summary judgment is denied, and that denial is without prejudice as to the duty to indemnify. Deviney's motion for partial summary judgment is granted as to its claims against Penn National. Because the Court's conclusion on the automatic-additional-insured issue answers the questions raised in Penn National's motion, the Court need not address the insured-contract issue.

      B.      Breach of ICA

In its Second Amended Complaint, Deviney asserted that Ace breached the ICA "by failing to indemnify, defend and hold harmless Deviney" from the claims contained in the underlying lawsuits. 2d Am. Compl. [24] ¶ 13. In the briefing on the summary-judgment motions, Deviney appears to have abandoned its claims for indemnity based on its own negligence. *See* Pl.'s Mem. [78] at 7–8. Ace's motion is therefore granted as to the indemnity issue.

Deviney focuses instead on its claim that Ace breached the ICA by refusing to defend Deviney in the underlying lawsuits. Paragraph 23 of the ICA, entitled Indemnity, contains a number of provisions purporting to require Ace to indemnify Deviney. The final sub-paragraph specifically addresses defense costs:

> Independent Contractor shall, at its sole cost, expense, and risk, defend any claim, suit, action or other legal proceeding (collectively "action") arising out of the performance of this Agreement brought jointly against the Indemnitees or any of them and Independent Contractor or against any of the Indemnitees, shall pay and satisfy any judgment or decree which may be rendered against any of the Indemnitees in any such action and shall pay any costs and attorney's fees which may be incurred by the Indemnitees in connection therewith and/or in enforcing the indemnification provisions set forth above. Should Independent Contractor, in judgment of Company, ignore or fail to properly handle or defend any such action, Company may at its option assume and undertake, or join the handling or defense of any such action, and in the event that Independent Contractor will reimburse

> Company for attorney's fees and other expenses incurred by it in handling or
> defending same, including any amounts paid by Company in settlement thereof or
> in satisfaction of any judgment rendered.

Pl.'s Mot. [71] Ex. 3, at 13.

There is no dispute Ace refused to honor this portion of the ICA.  *See* Pl.'s Mot. [71] Ex.

7 (letter from Ace's counsel refusing to assume defense and full indemnification).  Instead, Ace

asserts that the provision runs afoul of the anti-indemnity statute and is therefore void.  Defs.'

Resp. Mem. [76] at 21–22 (citing Miss. Code Ann. § 31-5-41).  That statute states with respect to

construction contracts that any promise to "indemnify or hold harmless another person from that

person's own negligence is void as against public policy and wholly unenforceable."  Miss. Code

Ann. § 31-5-41.

Neither party cites any case law discussing whether the anti-indemnity statute applies to

bar a claim seeking only attorney's fees and defense costs, rather than indemnification.  And

neither party filed a rebuttal in support of its motion, so the Court will deny both Ace's and

Deviney's motions on this issue at this time.  The denial is without prejudice to either side raising

and fleshing out the issue in the future.

IV.     Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed

would not have changed the outcome.  For the foregoing reasons, Penn National's motion for

summary judgment [67] is denied, though denial is without prejudice as to the duty to indemnify.

Deviney's motion for partial summary judgment [71] is granted as to its claims against Penn

National but denied without prejudice as to the claims against Ace.  Finally, Ace's motion for

summary judgment [69] is granted as to the duty to indemnify but otherwise denied without

prejudice.  The parties are directed to contact the Court's courtroom deputy within ten days of the

entry of this order to set the case for a status conference to discuss how the case should proceed

in light of the foregoing rulings.

**SO ORDERED AND ADJUDGED** this the 30th day of June, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE